UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ADAM DEAN FOX,

      Defendant.

      _____/

Case no. 1:20-cr-183

Hon. Robert J. Jonker
Chief United States District Judge

**NOTICE OF IMPUTED DISQUALIFICATION, MOTION TO WITHDRAW,
AND BRIEF IN SUPPORT**

      Undersigned counsel for defendant, Adam Dean Fox, hereby provides notice to this Honorable Court of imputed disqualification in the continued representation of Mr. Fox by attorneys Helen Nieuwenhuis and Sean Tilton of the Office of the Federal Public Defender. This notice is in compliance with Michigan Rule of Professional Conduct 1.10. Absent a finding by the Court, undersigned counsel believes a conflict of interest exists that requires withdrawal from the case. A hearing in this matter is requested to determine whether undersigned counsel may continue to represent Mr. Fox.

      The Office of the Federal Public Defender recently offered Attorney Thomas William Parker Douglas a position as an Assistant Federal Public Defender, which he has accepted.[1]

---

[1] It is understood that Mr. Douglas will not join the Defender's Office until any and all conflict issues with any of his current cases are resolved.

Attorney Douglas represents one of Mr. Fox's co-defendant's, Daniel Joseph Harris. Attorney Douglas has filed a motion to withdraw from representing Mr. Harris. (ECF No. 153).

Undersigned counsel believes that hiring Attorney Douglas requires notice to this Court of imputed disqualification. If undersigned counsel continues to represent Mr. Fox, the Office of the Federal Public Defender intends to create an ethical firewall to screen Attorney Douglas from any participation in this case. However, counsel is concerned that even with a firewall, there could continue to be an appearance of a conflict or an actual conflict of interest. Counsel also believes that hiring Attorney Douglas increases the likelihood of a conflict arising. This is true whether Attorney Douglas withdraws or continues to represent Mr. Harris. Assistant United States Attorney Nils R. Kessler has been advised of the situation and does not believe that a conflict of interest currently exists. Mr. Fox has also been advised of the situation and of potential conflicts of interest that could arise if undersigned counsel continues to represent him. Mr. Fox does not believe there is currently a conflict of interest and wants undersigned counsel to continue to represent him. Counsel has not yet received all discovery in this case. Consequently, counsel has been limited to advising Mr. Fox based upon discovery received and investigation completed to date.

**Facts**

Mr. Fox was initially charged on October 6, 2020, by way of a Complaint, charging him with conspiracy to commit kidnapping. Mr. Fox made his initial appearance on October 8, 2020. At that time, he requested court-appointed counsel. He returned to Court on October 13, 2020, with appointed counsel from the Office of the Federal Public Defender for his preliminary hearing, with his detention hearing being continued to October 16, 2020.

Magistrate Judge Sally J. Berens found probable cause and Mr. Fox waived his detention hearing. Mr. Fox remains in custody.

An Indictment was filed on December 16, 2020, charging Adam Fox, Barry Croft Jr., Ty Garbin, Kaleb Franks, Daniel Harris, and Brandon Caserta with conspiracy to kidnap, along with a forfeiture allegation. Mr. Fox appeared with counsel and was arraigned on December 17, 2020.

The final pretrial conference and jury trial dates are currently scheduled for March 10, 2021, and March 23, 2021, respectively. On January 27, 2021, counsel for defendant Brandon Caserta filed a Motion for Ends of Justice Continuance (ECF No. 145), requesting a continuance of six months. The parties requested at least six months to prepare for trial because of the volume of discovery and complexity of the case. Undersigned counsel has not yet received all of the discovery. Based upon the volume of discovery, counsel anticipates needing months to review and investigate it.

**Brief in Support**

**a) Imputed Disqualification**

The Michigan Rules of Professional Conduct require notice to this Court in this situation. Ms. Nieuwenhuis is licensed in the State of Michigan. Rule 1.10(b) of the Michigan Rules of Professional Conduct states:

> (b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, is disqualified under Rule 1.9(b), unless:
> (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and
> (2) written notice is promptly given to the appropriate tribunal to enable it to ascertain compliance with the provisions of this rule.

Attorney Douglas currently represents co-defendant Mr. Harris, the same matter in which undersigned counsel represents Mr. Fox. In the absence of a waiver from Mr. Harris, Attorney Douglas would be prohibited under Rule 1.9(b) from representing Mr. Fox. The Office of the Federal Public Defender intends to screen Mr. Douglas from any participation in Mr. Fox's case.

Attorney Tilton is licensed in the State of Minnesota. Rule 1.10(b) of the Minnesota Rules of Professional Conduct states:

> (b) When a lawyer becomes associated with a firm, and the lawyer is prohibited from representing a client pursuant to Rule 1.9(b), other lawyers in the firm may represent that client if there is no reasonably apparent risk that confidential information of the previously represented client will be used with material adverse effect on that client because:
> (1) any confidential information communicated to the lawyer is unlikely to be significant in the subsequent matter;
> (2) the lawyer is subject to screening measures adequate to prevent disclosure of the confidential information and to prevent involvement by that lawyer in the representation; and
> (3) timely and adequate notice of the screening has been provided to all affected clients.

In the absence of a waiver from Mr. Harris, Attorney Douglas would be prohibited under Minnesota Rule of Professional Conduct 1.9(b) from representing Mr. Fox. The Office of the Federal Public Defender intends to screen Mr. Douglas from any participation in Mr. Fox's case. The Minnesota Rule requires that "any confidential information communicated to the lawyer is unlikely to be significant in the subsequent matter." Undersigned counsel is not in a position to evaluate whether Mr. Harris has provided such information to Attorney Douglas. In the event that Mr. Harris has provided such information to Attorney Douglas and Mr. Harris is not willing to waive the conflict in writing, Attorney Tilton will need to withdraw from this case pursuant to Minnesota Rule of Professional Conduct 1.9.

### b) Sixth Amendment Right to an Attorney

In *Holloway v. Arkansas*, 435 U.S. 475 (1978), the Supreme Court held that "requiring or permitting a single attorney to represent codefendants" does not per se violate the Sixth Amendment right to effective assistance of counsel. *Id.* at 482. However, if the court is alerted to a possible conflict of interest, the court must take adequate steps to ascertain whether the conflict warrants separate attorneys. *Id.* at 484; *see also Wheat v. United States*, 486 U.S. 153, 159–60 (1988) (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)).

> *Holloway* reaffirmed that multiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest. Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial.

*Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

In *Holloway v. Arkansas*, 435 U.S. 475 (1978), the Supreme Court stressed that representing clients with conflicting interests engenders special dangers:

> Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. For example, . . . it may well have precluded defense counsel . . . from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable. Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.

*Holloway v. Arkansas*, 435 U.S. 475, 489–90 (1978); *see also Wheat v. United States*, 486 U.S. 153, 159-160 (1988) (quoting *Holloway*).

The Fifth Circuit indicated that the potential for a conflict of interest is lesser when co-defendants are represented by different attorneys in the same defender's office as opposed to the same attorney or attorneys in private law firms.

Typically, the potential for a multiple representation conflict exists when codefendants are represented by the same attorney. The potential for such conflicts, however, does not necessarily exist when, as in this case, codefendants are represented by different attorneys, albeit in the same public defender office. The duty of loyalty runs only to that attorney's client; the attorney is in no way being asked to serve two masters.

Of course, ethical problems may arise, particularly with regard to confidentiality, when members of the same public defender office represent codefendants. But such problems should be avoidable by strict adherence to the rules of professional responsibility.

*United States v. Trevino*, 992 F.2d 64, 66 (5th Cir. 1993).

However, the issue of a potential conflict of interest is not necessarily cured by having two separate attorneys representing co-defendants. In *United States v. Munoz*, 23 F App'x 13 (1st Cir. 2001), the Court held the district court had a duty to make inquiry into the Federal Public Defender's Office's representation of co-defendants with allegedly conflicting interests, even though defendants were represented by different attorneys.

### c) Rules of Professional Conduct

The Rules of Professional Conduct permit multiple representation of co-defendants as long as such representation does not give rise to a conflict of interest and all clients consent after consultation.

<u>Michigan Rules of Professional Conduct 1.7; Conflict of Interest: General Rule</u>

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
> (2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

> (1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Mich. R. Prof'l Cond. 1.7.

<u>Michigan Rules of Professional Conduct 1.10; Imputed Disqualification: General Rule</u>

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9(a), or 2.2.

Mich. R. Prof'l Cond. 1.10.

<u>ABA Rule 1.7 Conflict of Interest: General Rule</u>

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.

ABA Model R. of Prof'l Cond. 1.7.

While Michigan Rule of Professional Conduct 1.7 states that an attorney may represent multiple clients if the attorney reasonably believes the representation will not be adversely affected, and the client consents after consultation, the commentary nevertheless advises

against multiple representation in criminal cases: "The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant." Mich. R. Prof'l Conduct 1.7 cmt.

## Conclusion

A hearing in this matter is respectfully requested to determine whether undersigned counsel may continue to represent Mr. Fox.

                                                Respectfully submitted,

                                                SHARON A. TUREK
Federal Public Defender

Dated: February 4, 2021         /s/ Helen C. Nieuwenhuis
HELEN C. NIEUWENHUIS
First Assistant Federal Public Defender

Dated: February 4, 2021         /s/ Sean R. Tilton
SEAN R. TILTON
Assistant Federal Public Defender

Office of the Federal Public Defender
50 Louis NW, Suite 300
Grand Rapids, Michigan 49503
(616) 742-7420