IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

THE UNITED STATES OF AMERICA,　　　　　　　Case No 1:20-CR-183-RJJ

        Plaintiff,　　　　　　　　　　　　　　HON. ROBERT J. JONKER

V

ADAM FOX, et al.

        Defendants.

DEFENDANT ADAM FOX'S MEMORANDUM IN SUPPORT
MOTION FOR SPECIAL JURY INSTRUCTION
BASED ON *BRANDENBURG v OHIO*

# TABLE OF CONTENTS

Table of Contents ...................................................................................................p2

Index of Authorities ................................................................................................p3

General Introduction and Overview........................................................................p5

Law and Argument ..................................................................................................p7

*Brandenburg* Overview............................................................................................p7

*Brandenburg* and Conspiracy..................................................................................p9

Relief Requested.....................................................................................................p16

# INDEX OF AUTHORITIES

Published Decisions

*Bible Believers v. Wayne County*, 805 F.3d 228 (6th Cir. 2015)..........................p9

*Brandenburg v Ohio* 395 U.S. 444 (1969)..........................p4,p8

*Connick v Meyers,* 461 U.S. 138, 145 (1987)..........................p8

*Hess v. Indiana*, 414 U.S. 105, 108-109 (1973)..........................p11

*Dennis v. United States*, 341 U.S. 494, 584 (1951)..........................p13

*Fiswick v United States*, 329 U.S. 211 (1946)..........................p6

*Krulewitch v United States*, 336 U.S. 440 at 446 (1949)..........................p6

*Nwanguma v. Trump*, 903 F.3d 604 (6th Cir. 2018)..........................p9

*United States v. Alvarez*, 567 U.S. 709, 717-718 (2012)..........................p8

*United States v Dellacroce*, 625 F. Supp 1387 (E.D.N.Y 1986)..........................p11

*United States v Livdahl* 459 F. Supp 2nd 1255 (SD Fla. 2005)..........................p11

*United States v. Montour*, 944 F.2d 1019 (1991)..........................p15

*United States v Rahman,* 189 F. 3rd 88 (2nd Cir., 1999)..........................p10

*United States v. Wright*, 747 F.3d 399 (6th Circuit 2014)..........................p6

*Yates v United States* 354 U.S. 298 (1957)..........................p6

Unpublished Decisions

*United States v Stone, Order Granting Judgments of Acquittal* (2012)..........................p15

*United States v Stone, Report and Recommendation on Motion to Dismiss* (2011)..........................p9, p12

Statutes

18 USC 1201(a)..........................p4,16

18 USC 232a(2)(A) and (C)……………………………………………………...………..p4, p16

Constitutional Amendments

USCS Const. Amend. 1…………………………………………………………...………….p8

Now Comes Defendant Adam Fox, by and through Counsel, Christopher M. Gibbons of the Law Offices of Gibbons & Boer, and requests this Honorable Court to grant the Defendant a special jury instruction based on *Brandenburg v Ohio*, 395 U.S. 444 (1969) In support thereof the Defendant states the following:

## **GENERAL INTRODUCTION AND OVERVIEW**

The five defendants in the present action, Adam Fox, Barry Croft, Kaleb Franks, Daniel Harris and Brandon Caserta are charged with conspiracy to kidnap the sitting Governor of Michigan, Gretchen Whitmer, in violation of 18 United States Code 1201(a). In addition, Adam Fox, Barry Croft and Daniel Harris are charged with conspiracy to obtain a weapon of mass destruction in violation of 18 United States Code 2332(a)(2)(A) and (C). Barry Croft and Daniel Harris are charged with possession of an unregistered firearm as an "Unregistered Destructive Device" under 26 United States Code 5845 5845(a)(8) and(f)(1)(A). Harris, individually, is charged with an additional firearms offense, i.e., possession of a shotgun with a barrel less than 16 inches in length. The Superseding Indictment advances that the charged activity was made all in furtherance of a collective agreement to kidnap the Governor of Michigan. (ECF No 172)

Documents, recordings, reports, and records produced by the Government in support of these charges, to date, exceed a terabyte of content, including but not limited to over 250 hours of CHS recordings, over 1100 hours of recorded surveillance and thousands of pages of social media content including but not limited to what appears to be over 400,000 direct electronic messages.

The evidence advanced against the Defendants consists of recordings of meetings, conversations during car travel, and telephone conversations. In addition there are social media posts, direct messages (both encrypted and un-encrypted), surveillance videos, and photographs. This massive body of recorded and written communication contains primarily speech that is

5

protected by the First Amendment. Certainly, it contains speech and exchanges of ideas that express "anti-government" and "anti-authoritarian" sentiments. It contains advocacy for actions both legal and illegal. In contains discussions of the Defendant's political and ideological convictions, and at times, it contains vulgar, offensive, or satirical communications reflecting these political views. This is all speech and association that is protected by the First Amendment.

The Government will assert that these records *also* contain speech that is "integral to criminal conduct" i.e. speech in furtherance of a *conspiracy* to kidnap and to acquire a weapon of mass destruction. Speech that is integral to the commission of a crime falls outside of the protections of the First Amendment. It is permissible for the Government to use evidence of speech alone as the basis of a conspiracy charge. [1]

Under traditional laws of conspiracy the Government must prove an agreement between all of the defendants to kidnap the Governor of Michigan and prove the existence of a "substantial overt act" made in furtherance of the alleged conspiracy. An overt act may itself be absolutely legal. *Yates v United States* 354 U.S. 298 (1957). In addition, the overt act need only be committed by one member of the alleged conspiracy to convict the other defendants of the conspiracy *Fiswick v United States*, 329 U.S. 211 (1946). In 1949, Supreme Court Justice Robert H. Jackson stated in a concurring opinion:

> The modern crime of conspiracy is so vague that it almost defies definition. Despite certain elementary and essential elements, it also, chameleon-like, takes on a

---

[1] It is undisputed that the Defendants did not engage in an attempted act of kidnapping. It is also undisputed that the Defendant's did not actually acquire or attempt to use or detonate a weapon of mass destruction in furtherance of an attempted act of kidnapping. The Superseding Indictment alleges that the Defendants conspired to commit these crimes. In contrast, the defendants in *United States v. Wright*, 747 F.3d 399 (6th Circuit 2014). were arrested after they placed inert explosives at the base of a bridge along Route 82 in Brecksville, Ohio and attempted to detonate them. They had purchased the inert "bomb" from an undercover FBI agent. Unlike the defendants in *Wright*, the evidence here does not include actions which unequivocally reveal the intention of the Defendants to commit the acts charged by the Government.

special coloration from each of the many independent offenses on which it may be overlaid. It is always "predominantly mental in composition" because it consists primarily of a meeting of minds and an intent.

*Krulewitch v United States*, 336 U.S. 440 at 446 (1949)

This case presents a complex mixture of social and political speech and advocacy for action in the indefinite future (both legal and illegal) that is protected by the First Amendment. In addition, the Government alleges that portions of that speech are integral to a conspiracy that falls outside of the protections of the First Amendment. There is also the "chameleon-like" nature of the law of criminal conspiracy where otherwise legal conduct can become an "overt act." While the First Amendment does not shield the Defendants from prosecution it does demand the imposition of higher standards of scrutiny before guilt of a crime may fairly be determined. This is particularly true when the primary evidence of an alleged conspiracy is a mixture of political speech, social speech and association. Speech on public issues "occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection". *Connick v Meyers,* 461 U.S. 138, 145 (1987)

The protections of the First Amendment entitle Defendant Adam Fox to a jury instruction on the *Brandenburg* imminence standard, and the heightened *Strictissimi Juris* [2] standard for sufficiency of the evidence. *Brandenburg* requires the Government to show that the conduct and speech engaged in by Defendant Adam Fox would likely have resulted in imminent lawless action or violence. Speech and association that discuss or even favors a violation of the law at a remote time in the future falls under the protection of the First Amendment.

## LAW AND ARGUMENT

### *BRANDENBURG* OVERVIEW

---

[2] *Strictissimi Juris* will be addressed in a separate motion and memorandum in support filed contemporaneously with this motion.

7

The First Amendment to the Constitution of the United States provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

After over two centuries of judicial refinement the United States Supreme Court in 2012 provided a practical summary of the acknowledged exceptions to the First Amendment:

> Instead, content-based restrictions on speech have been permitted, as a general matter, only when confined to the few "historic and traditional categories (of expression) long familiar to the bar". Among these categories are advocacy intended, and likely, to incite imminent lawless action, obscenity, defamation, speech integral to criminal conduct, so-called "fighting words," child pornography, fraud, true threats, and speech presenting some grave and imminent threat the government has the power to prevent, although a restriction under the last category is most difficult to sustain. These categories have a historical foundation in the Court's free speech tradition. The vast realm of free speech and thought always protected in our tradition can still thrive, and even be furthered, by adherence to those categories and rules.

*United States v. Alvarez*, 567 U.S. 709, 717-718 (2012) (*citations omitted*). It is within the tension between the right to freely associate and speak and the historically acknowledged exceptions to these rights that the present case against these five defendants exists. As a result, the Defendants are entitled to a greater of level of scrutiny to prevent the abridgment of their First Amendment rights. The cornerstone of this principle was outlined in *Brandenburg v Ohio* 395 U.S. 444 (1969).

In *Brandenburg* an Ohio leader of the Ku Klux Klan was convicted under a proscriptive Ohio statute for advocating violence against African Americans. The statements made by Brandenburg were to a small group of about 12 people and were filmed by a reporter. Brandenburg was encouraging "revengence" against African Americans and Jewish Americans at an indefinite future time. It is notable that Brandenburg's conviction was based on the Courts review of the film footage. Appearing in the film were other items entered into evidence by the State of Ohio

8

including a pistol, a rifle, a shot-gun, ammunition, and a red hood. *Id* at 445 The Supreme Court held that even advocacy directed at inciting the use of force or lawless action is protected by the First Amendment unless it is likely to cause *imminent* lawless action.

The *Brandenburg* court described speech protected by the First Amendment as "…speech which our Constitution has immunized from governmental control." (*id* at 448) A *Brandenburg* jury instruction is unusual because the factual circumstances under which it applies rarely end in a criminal indictment. *Brandenburg* arises when speech and association are the primary basis for a criminal or civil action against a defendant.[3] The *Brandenburg* decision represented a shift toward the expansion of the protections of the First Amendment after several decisions upholding the State's ability to proscribe political speech, for example. making advocacy for communism illegal.

In 2015, the Sixth Circuit Court of Appeals decided a complex First Amendment case, *Bible Believers v. Wayne County*, 805 F.3d 228 (6th Cir. 2015). The Sixth Circuit held that even though the *Bible Believers* message was inherently offensive, it nevertheless was speech protected by the First Amendment. The Court held that the *Brandenburg* test precludes speech from being sanctioned unless (1) the speech explicitly or implicitly encouraged the use of violence or lawless action, (2) the speaker intends that his speech will result in the use of violence or lawless action, and (3) *the imminent use of violence or lawless action* is the likely result of his speech. (*id* at 246) (emphasis added)

## ***BRANDENBURG* AND CONSPIRACY**

In, 2011, *Brandenburg* was raised by defendants charged with conspiracy in the Sixth Circuit in *United States v Stone* (See Exhibit A *Magistrates Report and Recommendation on*

---

[3] *Brandenburg* is applied in civil cases. See *Nwanguma v. Trump*, 903 F.3d 604 (6th Cir. 2018).

9

*Motion to Dismiss* Jan 12, 2011). In that case, the Government indicted a group of nine individuals, primarily members of the Stone family, with seditious conspiracy and conspiracy to obtain and use a weapon of mass destruction. The defendants in *Stone* filed a motion to dismiss the indictment based on the argument that the indictment itself did not meet the *Brandenburg* standard that imminent lawless action would likely occur because of the statements and actions of the defendants.

In *Stone* the defendants were members of a self-styled Militia called "Hutaree." The Hutaree believed that all State and Federal Law enforcement officials were engaged in overreaching control and referred to them as "The Brotherhood". The Hutaree discussed in detail a plan to target and kill a local law enforcement officer, attack the officers who attended his funeral, and then engage in armed combat the Federal law enforcement. The Hutaree defendants were also accused of attempting to obtain a weapon of mass destruction, via email, in preparation for this event.

The Court in *Stone* initially held that *Brandenburg* did not apply stating that the defendants were charged with *conspiracy to use* violence, as opposed to *advocacy for the use of* violence. The *Stone* Court relied heavily on *United States v Rahman,* 189 F. 3rd 88 (2nd Cir., 1999) to support the conclusion that *Brandenburg* simply does not apply to a conspiracy case. This reasoning is flawed.

As a first step, the reasoning of the *Rahman* Court must be considered in the context that it was made. The *Brandenburg* standard was raised in a post-conviction facial challenge to the federal seditious conspiracy statute as unconstitutional. *Brandenburg* had not been raised by the *Rahman* defendants at trial and they did not request that the jury be instructed on the *Brandenburg* imminence standard. At the time of the *Rahmen* Court's opinion the defendants had already been convicted of a conspiracy that had resulted in multiple convictions. Convictions that included

conspiracy to murder the President of Egypt, attempted bombing (of the World Trade Center), two counts of attempted murder, one count of murder, two counts of assault on a Federal Officer, and three counts of the use of a firearm in relation to a crime of violence. *Id* at 103. The defendant's guilt of the conspiracy and the actual resulting violence and damage had been established. In short, the conspiracy had advanced far beyond speech and otherwise legal conduct. *Brandenburg* had absolutely no application under the facts before the *Rahman* Court because violence had, *in fact*, already occurred, so the question of imminence was moot.

The *Rahman* Court, however, held that one must *conspire* to use force or violence to violate the federal seditious conspiracy statute, as opposed to *advocate* for use of force or violence, which would be protected by the First Amendment. *id* at 115. Following this line of reasoning, other courts, like the Court in *Stone,* concluded that the *Brandenburg* standard simply does not apply to *any* allegation of conspiracy, because conspiracy and advocacy are two different types of expression[4] It is irrational to apply a subjective label like "advocacy" as the determining factor for whether speech is protected by the First Amendment or whether *Brandenburg* should be employed. For example, if John Smith stands up on a public street on a soapbox and shouts "Hey! Let's burn our draft cards!" he has engaged in "advocacy", so his speech protected by the First Amendment. However, if John Smith attends a back-yard barbeque and says to his friends, "Hey, Let's burn our draft cards" his speech if alleged to be conspiratorial is unprotected by the First Amendment. Both are political expressions, and outside of a conspiracy framework, both would be legal.

---

[4] It is worth noting that the entire line of cases cited by the Magistrate in *Stone* involved conspiracies that had advanced well beyond mere speech including a Florida conspiracy actively selling botulism as a beauty product and a prosecution against the Gambino/Gotti crime organization in New York. See *United States v Livdahl* 459 F. Supp 2nd 1255 (SD Fla. 2005) and *United States v Dellacroce*, 625 F. Supp 1387 (E.D.N.Y 1986) respectively.

It is important to note that the Supreme Court has not confined the application of *Brandenburg* to "advocacy" only. In 1973 in *Hess v Indiana* the defendant was convicted of disorderly conduct after shouting "We will take the fucking street later" as the police were clearing a demonstration from a Chicago Street. The Supreme Court held that his speech was not advocacy, and still applied the *Brandenburg* standard, reversing the defendant's conviction for disorderly conduct.

> ...the uncontroverted evidence showed that Hess' statement was not directed to any person or group of persons, it cannot be said that he was advocating, in the normal sense, any action. And since there was no evidence, or rational inference from the import of the language, that his words were intended to produce, and likely to produce, imminent disorder, those words could not be punished by the State on the ground that they had a tendency to lead to violence.

*Hess v. Indiana*, 414 U.S. 105, 108-109 (1973) [5]

In addition, it is both illogical and arbitrary to permit the indictment alone, which charges a conspiracy, to be the dispositive factor in whether *Brandenburg* applies. This is especially true when one understands that *Brandenburg* is not an avenue to constitutional immunity from prosecution but rather it calls for the imposition of a higher evidentiary standard to protect the lawful exercise of speech and association from erosion. This is the distinction that differentiates the proposed application of *Brandenburg* in this case from the treatment of *Brandenburg* in *Rahman* and its progeny.

---

[5] In addition, the *Hess* Court applied *Brandenburg* not to determine if a statute was unconstitutional on its face, but rather if the application of an otherwise constitutional statute (disorderly conduct) was unconstitutional as it was being applied. In this case the Defendant is not challenging as unconstitutional either of the statutes in question, rather he is raising the First Amendment implications of their application in this case.

The allegation of conspiracy alone should not strip away the protections of the First Amendment, particularly when the primary basis for the alleged conspiracy is speech with little or no other illegal conduct. It is of note that the Magistrate in *Stone,* indicated

> To be sure, if the government is unable to prove that defendants conspired to actually use force, *Brandenburg* would be applicable. And defendants are entitled to have the jury properly instructed that they may "not be convicted on the basis of [their] beliefs or the expression of them-even if those beliefs favored violence."

*United States v. Stone*, 2011(Exhibit A) Adam Fox asserts that the point to be drawn from *Brandenburg* is that its application is triggered by the presence of constitutionally protected activity. The line of inquiry should not be the label applied to the underlying criminal charge i.e. sedition, disorderly conduct, or conspiracy, rather it should be nature of the conduct alleged and whether it falls within the orbit of the First Amendment,

In 1951, Supreme Court Justice William O. Douglas recognized the inherent danger in the notion of an alleged conspiracy involving speech alone. In a dissenting opinion, when the Supreme Court upheld the convictions of individuals teaching and distributing communist texts under the Smith Act[6], Justice Douglas described treating speech as the equivalent of an overt act in a conspiracy as a "vice" and further stated:

> The doctrine of conspiracy has served divers and oppressive purposes and in its broad reach can be made to do great evil. But never until today has anyone seriously thought that the ancient law of conspiracy could constitutionally be used to turn speech into seditious conduct. Yet that is precisely what is suggested. I repeat that we deal here with speech alone, not with speech plus acts of sabotage or unlawful conduct. Not a single seditious act is charged in the indictment. To make a lawful speech unlawful because two men conceive it is to raise the law of conspiracy to appalling proportions.

*Dennis v. United States*, 341 U.S. 494, 584 (1951)

---

[6] The Smith Act prohibited membership in the Communist Party and was found to be unconstitutional six years later in 1957.

13

When speech and association are the primary foundation of a criminal conspiracy charge, as they are in this case, the Jury should be instructed on the *Brandenburg* imminence standard. This requires the Government to prove that imminent violence or unlawful action is likely to occur because of the defendant's speech and conduct. This is particularly true when the charge is conspiracy standing alone without other violent action.

In this case it is undisputed that the defendants discussed political and social reform, and discontent with their respective State governments. The Governor of Michigan was a point of discussion because she was, and is, a political figure. Accepting the indictment, on its plain assertions as true, the Defendants are being accused of conspiring to commit a crime that was political in nature, designed to make a broader political statement. Because the Government alleges that the defendants' political convictions contributed to their motive in the Superseding Indictment (i.e. referencing their political movement and militia affiliations) and the Government's use of clandestine recordings of the Defendants speech, social media, and text messages as the evidentiary framework for the alleged criminal conspiracy, it should trigger the strictest levels of constitutional scrutiny.

The Government will certainly assert in response that the Defendants in this case did more than "just talk." The Government will assert that they also held meetings, participated in trainings, and engaged in the reconnaissance the Governor's vacation home from public roads. The Government will assert that these actions amounted to overt acts in furtherance of a criminal conspiracy. The Government has produced hundreds of hours of recorded communications, and hundreds of thousands of communications over social media and cell phones. This is all speech in one form or another. Taking the Superseding Indictment, on its face, this group of defendants is, at a minimum, engaging in a mixture of protected legal activity and allegedly unprotected illegal

14

activity. The Supreme Court describes this as a "bifarious" group, a group engaged in both legal and illegal purposes and conduct, and its activities fall within the shadow of the First Amendment. *United States v. Montour*, 944 F.2d 1019 (1991). Again, respect for the First Amendment requires the imposition of the highest, and most cautious legal standards when adducing the facts when determining guilt.

To be clear, Defendant Adam Fox does not contend that the application of *Brandenburg* prohibits the Government from charging a crime that has been committed through statements. Rather, Defendant Fox asserts that the application of *Brandenburg* raises the Government's burden to include evidence that establishes beyond a reasonable doubt that violence or criminal action was imminent.

The District Court in *Stone* ultimately dismissed the conspiracy charges against the Hutaree defendants on directed verdict following the trial. The District Court specifically noted:

> The Government has consistently maintained that this case is not about freedom of speech or association, but about the specific acts of violence alleged in the Indictment. The Court relied upon these representations in denying Defendants' pre-trial motions for a jury instruction on the *Brandenburg* case, and the heightened *strictissimi juris* standard for sufficiency of the evidence. However, much of the Government's evidence against Defendants at trial was in the form of speeches, primarily by Stone, Sr., who frequently made statements describing law enforcement as the enemy, discussing the killing of police officers, and the need to go to war.

*United States v. Stone 2012* (See Exhibit B *Order Granting Judgments of Acquittal*)

While it must be inferred, it seems the District Court in *Stone* was indicating that if the Court had been aware that the evidence in the case was primarily speech, and not the alleged acts of violence, it would have granted the request for a jury instruction on the *Brandenburg* imminence standard. As it stood the Court in *Stone* found there was insufficient evidence submitted to support

the conspiracies alleged and the Court dismissed the seditious conspiracy and the weapons of mass destruction charges.

Like *Stone*, the evidence in this case consists almost exclusively of political and social speech between the Defendants and government actors[7], i.e. text messages, phone calls, and audio recordings of training events and conversations in vehicles. The fact that the primary basis of the conspiracy indictment is speech and otherwise legal conduct does not preclude the Government from advancing their case, however, it does place the matter entirely in the orbit of the First Amendment of the Constitution. As a result, the Defendants respective individual guilt or innocence should be determined only under the most rigorous constitutional standards.

## **RELIEF REQUESTED**

Wherefore, Defendant Adam Dean Fox requests that this Honorable Court grant the Defendant a special jury instruction regarding the *Brandenburg* standard[8] and require that the Government prove that violent or unlawful action was imminent in order to support a conviction of guilt for conspiracy to commit kidnapping in violation of 18 USC 1201(a) and for conspiracy to use a weapon of mass destruction in violation of 18 USC 232a(2)(A) and (C).

Dated July 11, 2021                                    Respectfully Submitted,

<p style="margin-left: 50%;">
Christopher M. Gibbons<br>
GIBBONS & BOER<br>
Christopher M. Gibbons<br>
2404 Eastern Ave SE<br>
Grand Rapids MI 49507<br>
616-460-1587<br>
cgibbons0003@gmail.com
</p>

---

[7] Including, but is not limited to, at least six confidential human sources and two undercover employees working for the Government.

[8] Defendants attached proposed instruction was adapted from the US Department of Justice Criminal Tax Manual Jury Instruction No. 374