IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | Case No 1:20-CR-183-RJJ |
| Plaintiff, | HON. ROBERT J. JONKER |
| V | |
| ADAM FOX, | |
| Defendant. | |

### DEFENDANT ADAM FOX'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTIONS TO COMPEL

Defendant Adam Fox, through Counsel, Christopher M. Gibbons, of the law offices of Gibbons & Boer, replies to the Government's Response to the Defendants' Motions to Compel. The Government's Response applies to the Motions to Compel filed by Defendants Franks (ECF#248-1) and Caserta (ECF#226). Adam Fox joined these motions by simple notice, without filing any additional facts, law, and argument (ECF#251). The Government, in its Response, raised Adam Fox's alleged predisposition to commit the crimes alleged in the Superseding Indictment as grounds for seeking a denial of the relief requested by Defendants Franks and Caserta, and Fox by way of joinder. Neither Franks' nor Caserta's Motions addressed the issue of Adam Fox's alleged predisposition to commit that crimes alleged, or lack thereof, during the time relevant to the matters claimed in the Superseding Indictment.

In Reply to those matters raised by the Government in its response, as those matters relate to Adam Fox, and are not present on the initial Motion filings, Adam Fox states as follows:

GENERAL INTRODUCTION AND OVERVIEW

The Government has responded to the Defendants' request for the production of certain information regarding confidential informants, in part, by making the general assertion that the Defendants in this case, particularly Adam Fox, were predisposed to committing the crime of kidnapping, so an entrapment defense is likely to fail.  The Government suggests that its negative impression of the defense theory relegates the production of "informant related discovery" to its own discretion, as it is, therefore, not material to the defense. In addition, the Government argues that the identity of the informants is confidential and privileged.

Adam Fox contends that four government informants, CHS 99252, CHS 97067, CHS 99802, and CHS 99900 were originators of the criminal design in this case, to the extent that a "design" ever existed. Throughout the time alleged in the Superseding Indictment, the informants routinely engaged in tactics and behaviors far outside established standards, protocols and best practices employed in the use of informants during an investigation.  As a result, communications by the informants between themselves, the defendants, and their handlers are not just material, but critical to the defense of Adam Fox.

Mr. Fox specifically seeks the data (messages, tests, photos, voicemail messages, and call history for any cellphone(s) used by CHS 99252, CHS 97067, CHS 99802, and CHS 99900 used during and in the course of their activities during the time relevant to the investigation of the alleged conspiracy.  The identity of the informants is not necessary and undersigned has no objection to the continued protection of the identities of these individuals.  However the data on the phone(s) and laptop computer of CHS 99252, aka "Big Dan," are critical to Adam Fox's defense.  Mr. Fox seeks only that the data related to any of his communications or activities made

as an undercover agent during investigation the Wolverine Watchmen and the Patriot 3% Milia, both on a state and national level.

The Government acknowledges its duty to disclose information and materials pursuant to *Brady*, *Giglio*, and *Jencks* and undersigned accepts the acknowledgement and accepts the established standards for when such disclosures are required. The only dispute lies in the disclosure of materials and records related to the activities and actions of the government's informants which are material to the defense of Mr. Fox.

## LAW AND ARGUMENT

Adam Fox is advancing, along with other defenses, that the Government, primarily through the activities of its paid informants, originated the criminal design in this case. In addition, the informants engaged in a pattern of acknowledged improper inducements to get Adam Fox to engage in certain activities and to trigger verbal and written exchanges, which it now holds against him as evidence of an alleged predisposition to commit the crimes alleged in the Superseding Indictment.

It is said at the outset, Mr. Fox's expression of political opinions are speech protected by the First Amendment of the United States Constitution. *USCS Constitut. Amend. 1; Brandenberg v Ohio,* 395 US 444 (1969). Advocacy for lawless activity can likewise fall under the umbrella of Constitutionally protected speech. *Hess v Illinois,* 414 US 165 (1973) It is also said that speech integral to the commission of a crime is not Constitutionally protected. *United States v Alverez*, 567 US 709 (2012). Adam Fox was *not* predisposed to these commit crimes and the evidence in the case will demonstrate this clearly.

The Courts have established that entrapment is a valid defense, and further, that there are parameters and controls placed on the Government when it chooses to utilize undercover informants in its investigations:

> In their zeal to enforce the law, Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute.

*United States v. Dixon*, 396 Fed. Appx. 183, 186, 2010 (6th Cir.)

The entrapment defense presents a very fact specific inquiry and relevant factors can vary substantially from case to case. Several factors can contribute to improper inducement, such as frequency and duration of contact, and the relationship between the Defendant and the informant. Improper inducement by Government informants has been found when the informants have spent multiple months attempting to facilitate the commission of a crime or manipulated the defendant by using tactics generally considered to be excessive including threats, "dogged insistence", or preying upon a loyalty to a special relationship. *United States v. Hood*, 811 Fed. Appx. 291 at 298 2010 (6th Cir.) The Seventh Circuit referred to these excessive tactics as "plus factors"

> Undisputed evidence shows that several "plus factors" signaling inducement were present in this case. In the course of its undercover operation the government employed "repeated attempts at persuasion." It employed both "fraudulent representations" and "promises of reward beyond that inherent in the customary execution of the crime." It also employed "pleas based on need, sympathy, or friendship.

*United States v. Barta*, 776 F.3d 931, 933, 2015 (7th Cir.)

Access to the complete record of the informants' communications in this case is necessary to present a proper defense for Adam Fox. The Government should not be permitted to cherry pick

the ugliest remarks and messages from Adam Fox[1] and offer them in support of an effort to deny him access to evidence that is critical and material to his defense.

> The predisposition and criminal design of the defendant are relevant. But the issues raised, and the evidence adduced, must be pertinent to the controlling question whether the defendant is a person otherwise innocent whom the government is seeking to punish for an alleged offense which is the product of the creative activity of its own officials. If that is the fact, common justice requires that the accused be permitted to prove it. ***The government in such a case is in no position to object to evidence of the activities of its representatives in relation to the accused***…

*United States v. Eddings*, 478 F.2d 67, at 71, 1973 (6th Circuit) (Emphasis Added)

It is undisputed that the Government informants spent six months contacting and otherwise engaging Adam Fox. They invited and encouraged him to participate in the events that they now claim are overt acts in support of the crimes alleged in the Superseding Indictment. The manner Adam Fox was engaged by the informants in this case can only be described as predatorial. By the end of July 2020, Mr. Fox had routine contact with three undercover informants and an undercover UCE[2] on nearly a daily basis. Mr. Fox specifically seeks the text communication and telephone data relating to the activities of the informants, all of which are germane to his effort to advance an entrapment defense. The Government seeks to deprive Mr. Fox of these communications in the preparation of his defense.

In particular, the communication between "Big Dan" and his handlers is relevant and material to the defense. The FBI, in this case, established its own rules and procedures for handling

---

[1] Ironically, an example of Mr. Fox's statements referenced in the Government's Response were made to an undercover FBI agent. The Government claims that Mr. Fox is only entitled a smattering of the communication this agent engaged in relative to the investigation. Mr. Fox advances that any communication between this agent and his superiors, the other defendants, and the 11 other identified undercover agents is material and necessary to the defense of Adam Fox.
[2] UCE "Mark" also had a fictional "girlfriend" Elise Marie that communicated with Adam Fox on social media.

the informants dispatched to investigate the activities of the Wolverine Watchmen and Adam Fox. These rules pertained specifically to "Big Dan" as an informant working at the behest of the FBI.

To this end, Special Agent Henrik Impola, in a summary FD302 report, dated October 20, 2020, documented that he instructed "Big Dan" not to initiate any ideas, develop attack plans or assist in the control of the subject militia group. To this end, Agent Impola writes in his report:

> During a leadership council meeting on 06 03 2020 at Ty Garbin's house the CHS was placed in the role of "XO/LT" by members of the Wolverine Watchmen. ***The CHS was advised that in this role he/she was not to initiate any ideas help develop any attack plans or help Joe Morrison maintain control of the group as a leader.***[3] (Emphasis added)

Evidence produced to date establishes that "Big Dan" violated all these limitations on his investigative activities. These violations, and evidence of the same, certainly assist in the making of a valid entrapment defense.

To this end, evidence of "Big Dan's" communication by text with Mr. Fox, others, and his FBI handlers will demonstrate that he initiated contact with Adam Fox in May of 2020. Within a short period of time, he was engaged in almost daily contact with Mr. Fox, often multiple times per in a day. Over the course of the following seven months, he routinely contacted Adam by phone and developed a relationship with him, often telling him stories claiming that he had engaged in extended live-fire engagements with enemy combatants, had been shot and wounded while engaged in tactical military actions, and other heroic endeavors he claimed to have experienced in during his military service. He even claimed to have saved the life of Christopher Kyle, the vaunted "American Sniper" when stationed in Iraq. Adam Fox frequently expressed to "Big Dan" and others how looked up to "Big Dan" with respect and admiration. Shortly thereafter, Adam Fox was invited to a National Patriot 3% Militia meeting in Dublin, Ohio where CHS 97067,

---

[3] FBI 302 10/20/2020 Bates No. 00015646

CHS 99802, and CHS 99900 are also in attendance, among others. CHS 97067 and CHS 99802 also fostered relationships with Adam Fox that continued throughout the following months until his arrest in October of 2020. CHS 99252, CHS 97067, and CHS 99802 attended every meeting and FTX referenced in the Government's Superseding Indictment.

The Government specifically argues that Adam Fox was predisposed to use violence based on his statements alone.  However, during the seven-month engagement with the multiple informants listed above, Mr. Fox did not engage in **any** illegal activity - despite "Big Dan's" active encouragement that he should violate the law on any number of occasions, in any number of ways. For instance, on July 27, 2020, in direct violation of Special Agent Impola's instructions "Big Dan" suggested ideas to Adam Fox, which include, but are not limited to, the commission of violent crimes against Governor Gretchen Whitmer and other governors sitting in other states.

On July 27, 2020, at a private meeting with "Big Dan", Adam Fox questioned the value of engaging in acts of violence against the Michigan Governor. "Big Dan" suggested to Mr. Fox that he could go after "brick and mortar" by shooting "a round" into the Governor's Elk Rapids Cottage (referenced by CHS 99252 as "No 2").

> [4]CHS: Fucking place up north. Send a fucking round through the window, you know.

Incredibly, in that same conversation, "Big Dan" goes on to suggest to Mr. Fox that he could amplify his political message of discontent by coordinating with the individuals from other states he'd met at the national militia meetings that "Big Dan" and the other informants had invited him to attend.  "Big Dan" explained that he could act in concert with these individuals by having them engage in a synchronized attack on governors in multiple states by all shooting rounds into the

---

[4] Surveillance Audio File Name: 2020_7_27 0080 Adam_Fox_Mtg.007 Wav 1m48s

homes of their respective Governors at the same time. "Big Dan" also suggested the idea that they could collectively drive home the message by mailing the spent shell casings to the attention of their respective governors.

Again, on August 9, at a Wolverine Watchman outdoor training event, in response to a direct inquiry by Mr. Fox as to how they could send a message short of kidnapping, "Big Dan" suggests to Fox and others they could detonate a binary explosive placed against Governor Whitmer's cottage or on her driveway, or they could target her boat. Here is an excerpt from that exchange:

> [5]Adam: "What else can we do, cause at this point like?"
>
> CHS: "If you don't want to kill anybody or anything or you don't want her to be there, find out number 2, get some tannerite fucking put a dent in her house. Or the driveway. Fix your fucking roads. How about that?
>
> And about a minute later,
>
> Adam "So I don't know, we gotta do something soon, if we just keep going the way we are going dude we're just, we're going to be fucked."
>
> CHS: "Okay, if you want to let them know that your there, find out No. 2 which is an actual structure, her place, you're not going to be killing anybody, she's down here in session okay, put a dent in her house, or her fucking boat, can't take that out if the mother fuckers sunk."

"Big Dan" called Adam Fox that same evening and encouraged him to "take another hit" of marijuana, suggested they go "north" and "check stuff out", suggested to Mr. Fox that he purchase flex cuffs and practice "extraction", suggested that he research the Governor's address and the Governor's husbands name on the internet, and again suggested using Tannerite explosive.[6]

---

[5] Surveillance Audio File Name: 2020-08-09_WW.001.WAV 2h39m36s

[6] Surveillance Audio TX with Adam Fox 8/9/2020

8

The behavior of the informants in this case is rife with "plus factors" that indicate creation and design of the underlying charged offenses, improper inducement, pressure, suggestion, fraudulent representations, and the manipulation of perceived friendships and patriotic duty by the informants involved with the Defendants. The information contained in the phones and computers of the informants, particularly "Big Dan", are critical to accurately assess the extent of these "plus factors". This information bears directly on Adam Fox's entrapment defense and a review of the same is critical to Counsel's ability to demonstrate a lack of predisposition to commit not only the charged offenses but also the numerous other illegal actions that were encouraged and improperly suggested by the Government's agents, undercover, or otherwise.

RELIEF REQUESTED

Wherefore, Defendant Adam Fox respectfully requests that this Honorable Court issue an order requiring the Government to produce the cell phone(s) extractions for CHS 99252, CHS 97067, CHS 99802, and CHS 99900 no later than August 27, 2021.

Dated August 12, 2021                                             Respectfully Submitted,

*Christopher M. Gibbons*
GIBBONS & BOER
Christopher M. Gibbons
2404 Eastern Ave SE
Grand Rapids MI 49507
616-460-1587
cgibbons0003@gmail.com