UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                 No. 1:20-cr-183

        vs.                                        Hon. Robert J. Jonker
                                                    Chief United States District Judge

ADAM DEAN FOX,
BARRY GORDON CROFT JR.,
DANIEL JOSEPH HARRIS,
KALEB JAMES FRANKS, and
BRANDON MICHAEL-RAY CASERTA,

        Defendants.
_____/

## GOVERNMENT'S RESPONSE TO DEFENDANTS' SUPPLEMENTS TO MOTION TO COMPEL

The defendants' supplemental pleadings do not alter the analysis with regard to their motions. They allege on the basis of an internet posting that SA Jayson Chambers (FBI) had a financial interest in the outcome of the case, and make unsupported and gratuitous accusations that the government is hiding *Brady* information. Because SA Chambers is not a government witness, the information they seek is not discoverable for impeachment. The information they request is also neither exculpatory, nor in the government's possession.

FACTS

On Thursday night, August 26, 2021, BuzzFeed News posted a story linking Special Agent Jayson Chambers (FBI) to an "internet intelligence company," Exeintel LLC ("Exeintel"). The article linked another person[1] to Exeintel, said someone posted vague tweets predicting

---

[1] Jamie Chanaga, the subject of defendant Caserta's subpoena.

something would happen in Michigan, and implied SA Chambers was the source of the information.

The provenance of BuzzFeed's tip is unknown, but the article was followed straightaway by a lengthy discovery demand from Croft's attorney, on letterhead, at the close of business on Friday, August 27. Without waiting for a response, the defendants cited the BuzzFeed article in a pleading that midnight, then another on Sunday, August 29. (R.315: Defs' Jt Supplement to Motions to Compel, PageID.1864; R.316: Defs' Second Jt Supplement to Motions to Compel, PageID.1881.)

The defendants make the conclusory assertions that SA Chambers controls Exeintel; that he has a financial interest in the outcome of this case; and that "extremely significant *Brady* material exists that has not been shared with the defense." (R.315: Supplement, PageID.1871.) They falsely state the Government has refused to produce the Twitter records, when the Government actually notified Croft's attorney that neither the FBI nor SA Chambers ever controlled the account. (R.317: Motion, PageID.1889). The government is in possession of no information related to Exeintel, other than the articles of incorporation all parties obtained from the internet article.

LAW AND ARGUMENT

The defendants misconstrue both the facts and the law with certitude when they state, "Chambers' financial stake in the investigation, of course, constitutes discoverable material under *Brady v. Maryland*." (R.315: Supplement, PageID.1871.) There are two general categories of material required to be disclosed under the *Brady* rule: (1) material which tends to be exculpatory, and (2) material which may be used to impeach or discredit government witnesses. *United States v. Bagley*, 473 U.S. 667 (1985). *Brady* does not extend to the sort of evidence that

2

is neither impeaching nor exculpatory. *United States v. Mendez-Aguirre*, 666 F. App'x 448 (6th Cir. 2016); *United States v. Baker*, 562 F. App'x 447 (6th Cir. 2014).

Let us take impeachment information first: The defendants cite *United States v. Turner*, 2007 U.S. Dist. LEXIS 24850, *14 (W.D. Wash. 2007) for the unremarkable proposition that "evidence that any government witness has a financial stake in the trial" must be disclosed under *Giglio*. Because the government does not intend to call SA Chambers as a witness, *Giglio* is inapplicable. *United States v. Green*, 178 F.3d 1099, 1109 (10th Cir. 1999), citing *Giglio v. United States*, 405 U.S. 150, 153-55 (1972).

As to non-impeachment information, "the requested information must have more than an abstract relationship to the issue presented; there must be some indication that the requested discovery will have a significant effect on the defense. (citations omitted). Defendants bear the burden to make a prima facie showing of materiality." *United States v. Bulger*, 928 F. Supp. 2d 305, 324 (D. Mass. 2013), citing *United States v. Carrasquillo-Plaza*, 873 F.2d 10, 12 (1st Cir. 1989). They have not met this burden.

The government has already disclosed the internal communications between SA Chambers and CHS "Dan." The defendants attached several examples to their motions, complete with government Bates stamps. (R. 315-1, 315-2, 315-3, PageID.1873-80). Presumably they chose the best examples to support their argument, but the excerpts are unremarkable. It is standard investigative procedure – not entrapment – to "provid[e] the opportunity to commit a crime" to one ready and willing to commit it. *Sosa v. Jones*, 389 F.3d 644, 647 (6th Cir. 2004).

The defendants claim "FBI agents and informants created crimes as an investigative practice and technique." (R.315: Supplement, PageID.1868.) In support they say SA Chambers told the CHS, "Mission is to kill the governor specifically." (*Id.*)  In their telling, "This

3

exchange speaks for itself," that "by issuing this edict, [the CHS] has been charged to develop that plot specifically." (*Id.*) But they did not let the exchange speak for itself: They inserted a period after "specifically", entirely changing the meaning. The omitted context shows it was in fact a question, not an edict, because it was immediately followed by an answer: "That's on the first call." (R. 315-1, PageID.1877.)



In the defendants' confected version of the exchange, this quote would *still* be evidence that the defendants were not entrapped by SA Chambers. After all, the final plot (and the crime they are charged with) was a conspiracy to kidnap the Governor. (R.172: S. Ind., PageID.961.)

Even if SA Chambers had some ulterior motive for these routine communications with an informant, it is unclear how the finances of Exeintel or FBI regulations on outside employment would tend to exculpate the defendants. (Croft, for example, was showing off a bomb and saying he wanted to "terrorize people" and kidnap the Governor before he ever met CHS "Dan.")

The defendants note that they do not yet have the internal communications between FBI and other informants in this case. As stated in the government's original response, these will be provided at the appointed time as required by *Giglio* and the Jencks Act. (R.260: Gov't Br., PageID.1442.) Since those informants were handled by other agents, the information sought regarding SA Chambers would be immaterial in any case.

The government's *Brady* obligation has limits. The "prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). "But the government is not responsible for information that is not in its possession … *Brady* does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel." *United States v. Meregildo*, 920 F. Supp. 2d 434, 445 (S.D.N.Y. 2013), citing *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002). Even material evidence is not "suppressed" if the defendant knew of the evidence and could have obtained it through the exercise of reasonable diligence. *United States v. Walker*, 746 F.3d 300, 306 (7th Cir. 2014).

The assertion that SA Chambers had a financial interest in the case is conjecture based on insinuation in an internet posting. The government is neither in possession of, nor aware of, any evidence supporting their theory. In any event, the defendants have already demonstrated they have the ability to obtain information from non-governmental third parties through the exercise of reasonable diligence. (*See, e.g.,* R.317: Defense Motion for Subpoena Duces Tecum Directed to Twitter, PageID.1883.)

WHEREFORE, the defendants' motions should be denied.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: August 31, 2021            */s/ Nils R. Kessler*
                                                    NILS R. KESSLER
                                                    AUSTIN J. HAKES
                                                    Assistant United States Attorneys
                                                    P.O. Box 208
                                                    Grand Rapids, MI 49501-0208
                                                    (616) 456-2404
                                                    nils.kessler@usdoj.gov