UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ADAM DEAN FOX,
BARRY GORDON CROFT, JR.
KALEB JAMES FRANKS,
DANIEL JOSEPH HARRIS, and
BRANDON MICHAEL-RAY CASERTA,

    Defendants.
_____/

CASE NO. 1:20-CR-183

HON. ROBERT J. JONKER

## ORDER

Defendant Franks moved for use of a supplemental questionnaire for prospective jurors in the case. ECF No. 228. The government did not concur in the Motion. ECF No. 229. The Court granted defendant's Motion to the extent of permitting submission of a draft questionnaire, but reserved a final decision on whether to use any supplemental questionnaire until submission of an actual draft. ECF No. 257, at PageID.1398-99. Defendant Franks, joined by all co-defendants, has now submitted a draft. ECF No. 326. The government has not withdrawn its opposition to the supplemental questionnaire approach, but did participate in the process and noted its opposition to particular proposed questions in the draft. *Id.*

After reviewing the proposed draft, the Court has decided not to use any supplemental questionnaire. The Court recognizes that seating a fair and impartial jury will present special challenges in this case, but the Court does not believe a supplemental questionnaire such as the one proposed is the best way to address them.

In the first place, the proposed supplemental questionnaire covers about 30 pages and goes into intricate detail on many items—more detail than is necessary to determine whether a particular juror can fairly serve on the case. The general topic areas covered are, for the most part, areas the Court would expect normal voir dire to address. Indeed, some of the requested information is not really supplemental at all; it is already covered on the Court's standard questionnaire. To the extent more probing questioning is needed for a particular juror, the normal voir dire process will suffice to identify that need without subjecting the entire venire to a 30-page disclosure.

Second, advance submission of a questionnaire to a jury venire carries its own risks. *United States v. Jackson*, 863 F. Supp. 1449, 1458-59 (D. Kan. 1994) (denying use of proposed questionnaire); *United States v. Ruedlinger*, 1997 WL 752438, *3 (D. Kan. Nov. 25, 1997) (same). The draft directs jurors not to talk to anyone else about filling out the questionnaire, but prospective jurors do not ordinarily receive requests like this, and it would take considerable time to fill it out, inevitably generating inquiries from family and friends who wonder what it is all about. Just receiving a questionnaire like the one proposed will inevitably pique interest and put prospective jurors on high alert. That, in turn may lead people who do not already know about this case to check out one or more of the specific media outlets identified in the questionnaire, thereby amplifying a pre-trial publicity concern the parties already have about the case. A related, but independent risk, is specific identification of the prospective jurors well in advance of the trial itself. And, of course, sending out such a detailed questionnaire and getting back responses from everyone is a time-consuming and uncertain process in and of itself.

In addition to the normal inquires that are part of most every criminal case, the Court expects the need to focus on at least four specific areas of special concern: 1) pandemic; 2) publicity; 3) politics; and 4) planning. People have significantly different assessments of the

personal and community risks associated with the Covid-19 pandemic, and those risk assessments will undoubtedly affect whether certain individuals believe they can safely sit in a large, but still enclosed, courtroom.  In this case, concerns about the pandemic meld into concerns about politics because the case inevitably touches on how people feel about various governmental responses to the pandemic. People have strong and differing views on these issues and about various political figures associated with them.  The case has generated and continues to generate publicity, and many prospective jurors may have already heard or read about the case.  That's not disqualifying by itself, of course, but it will be for prospective jurors who are not able to set aside what they've heard or read and decide the case based just on the evidence presented in court.  And finally, planning practicalities may well disqualify some jurors who could otherwise serve but would face hardship or difficulty because the trial will likely last longer than most criminal trials in the district.

These special areas of concern are reflected in the proposed questionnaire, too, which shows that the parties and the Court are both focused on the same topical areas of special interest.  But at this point, the Court believes the best way to test whether prospective jurors should be disqualified based on these reasons, or any others, is during the ordinary voir dire process.

IT IS SO ORDERED.


Dated:   September 7, 2021            /s/ Robert J. Jonker
                                                           ROBERT J. JONKER
                                                           CHIEF UNITED STATES DISTRICT JUDGE