UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,                      No. 1:20-cr-183

          v.                          Hon. Robert J. Jonker
                                            Chief U.S. District Judge

ADAM DEAN FOX,
BARRY GORDON CROFT JR.,
DANIEL JOSEPH HARRIS,
KALEB JAMES FRANKS, and
BRANDON MICHAEL-RAY CASERTA,

          Defendants.
_____/

**UNITED STATES' RESPONSE TO DEFENDANTS' MOTION IN
LIMINE REGARDING ADMISSION OF OUT-OF-COURT
STATEMENTS**

Defendants conspired to attack and kidnap the Governor of Michigan. Investigators discovered and thwarted their plan through the use of undercover agents and confidential informants who monitored and recorded Defendants online, over the telephone, and in person. Defendants now move to admit more than 258 self-serving, out-of-court statements in part to avoid testifying under oath, subject to cross-examination about those statements. These statements are inadmissible hearsay or are inadmissible because they are irrelevant. The motion should be denied.

The defendants discuss several of the proposed statements in their motion and list 258 statements in an attached chart. The government will not address each of these individually, but notes that they fall into only a few discrete categories: (1) their

own supposed professions of skepticism about the likelihood the plan would succeed; (2) informants' and agents' statements that Defendants characterize as "inducement" to commit a crime; and (3) discussions between informants and third parties (not the defendants themselves) offered to imply an overarching government "plot" against them.

<em>Law and Argument</em>

Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" and "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is inadmissible unless it meets a statutory or evidentiary exception. Fed. R. Evid. 802. As the government noted in its prior motion in limine regarding Defendants' proposed hearsay evidence (ECF No. 368), "Rule 802 is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener." *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005), citing *Williamson v. United States*, 512 U.S. 594, 598 (1994). In contrast, "these dangers are minimized for in-court statements – [because of] the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine." *Id.* (internal quotations omitted.)

The statements that Defendants move this court to admit do not meet any recognized hearsay exemptions or exceptions.  To the contrary, they are exactly the sort of self-serving, unreliable out-of-court statements that the Rules of Evidence prohibit.

I.    Opposing Party's Statement – Federal Agents – Fed. R. Evid. 801(d)(2)(D)[1]

Rule 801 provides that a statement "offered against an opposing party," and "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay.  Fed. R. Evid. 801(d)(2)(D). Defendant seeks to admit two categories of hearsay under this rule – statements made by investigators and statements made by informants.  Neither meets the requisite definition of an "opposing party."

"Rule 801(d)(2)(D) is  designed  to bind the  employer  where  one  of  its managerial employees makes a statement within the scope of the employee's duties as a manager." *Barner v. Pilkington N. Am., Inc.,* 399 F.3d 745, 750 (6th Cir. 2005). The "manager" principle is not directly translatable to the United States government, but courts have found that federal agents and investigators, while employees of the government, are not an opposing party for purposes of Rule 802(d)(2)(D).

---

[1] Defendants reference Fed. R. Evid. 801(d)(2)(C) twice in their brief but do not identify any specific statements that they propose to admit under that rule. Similarly, their chart does not propose to admit any statements under Rule 801(d)(2)(C). Regardless, subsection (C) is not applicable because there is no evidence that any of the declarants were specifically authorized to make particular statements on behalf of the United States government.

Courts have "declined to apply Rule 801(d)(2)(D) to a statement made by a government agent because the statements of individual agents do not bind the sovereign except in rare circumstances." *United States v. Martinez-Saavedra*, 372 F. App'x 463, 464-65 (5th Cir. 2010). "Because the agents of the Government are supposedly disinterested in the outcome of a trial and are traditionally unable to bind the sovereign, their statements seem less the product of the adversary process and hence less appropriately described as admissions of a party." *United States v. Kampiles*, 609 F.2d 1233, 1246 (7th Cir. 1979) (citations omitted), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2923 (1980).

Several courts have made limited exceptions where the government has "manifested an adoption or belief in" the statement by presenting them to a court. *See, e.g.*, *United States v. Kattar*, 840 F.2d 118, 130-31 (1st Cir. 1988). "There is good reason, however, to distinguish sworn statements submitted to a judicial officer, which the government might be said to have adopted, and those that are not submitted to a court and, consequently, not adopted . . . ." *United States v. Yildiz*, 355 F.3d 80, 82 (2d Cir. 2004).

Defendants note that the Ninth Circuit has "assumed that agent statements constitute party-opponent statements," citing *United States v. Clyne*, 752 F. App'x 436, 438 (9th Cir. 2018). This misstates the holding. In *Clyne*, the Court merely said that it would "assume, without deciding, that statements by government agents within the scope of their agency are not treated differently from those of others in a principal-agent relationship." *Id.* at 438. The Court then affirmed the statements'

4

exclusion, finding that they "had minimal probative value, and that the likelihood of delay and confusion was substantial." *Id.*

Defendants also cite *United States v. Branham*, 97 F.3d 835, 851 (6th Cir. 1996), for the proposition that "Rule 801 situates government agents . . . as party opponents in criminal matters." (PageID.2357.) *Branham* simply does not say that. There, "[t]he government concede[d] that Rule 801(d)(2)(D) contemplates that the federal government is a party-opponent of the defendant in a criminal case." While the United States government itself is a party-opponent, this does not mean all of its employees are, all of the time.

*Bellamy v. State*, 403 Md. 308, 320-22 (Md. Ct. App. 2008), is similarly inapt. Not only is *Bellamy* a nonbinding holding from the Maryland Court of Appeals, but it addresses the distinguishable issue of whether government *attorneys'* in-court statements are admissions of a party opponent. *Id.* at 336-37 (emphasis added). It does not hold that investigators' out-of-court statements are, even under the Maryland Rules of Evidence. *Id.*

Defendants offer approximately 34 agent statements under Fed. R. Evid. 801(d)(2)(D).[2] The government has not endorsed or bound itself with any of those statements by including them in search warrant affidavits or court pleadings. The statements were not made under oath or even part of anything as formal as an agency report. Instead, the statements were made over text message or otherwise captured on one of their own recording devices. These were the agents' own statements and

---

[2] Statements # 5, 8, 16-17, 30-33, 57-58, 125-126, 129-130, 148-149, 155, 227-242.

not the statements of the United States government.   Accordingly, they are not admissible under Rule 801(d)(2)(D) as an opposing party's statement.

Additionally, most of the agents' statements that Defendants list in their chart were to informants, not to Defendants, and are therefore not relevant or inadmissible. Fed. R. Evid. 401, 402.  Defendants attempt to offer these statements in furtherance of their proposed entrapment defense.  "A valid entrapment defense requires proof of two elements:  (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity." *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2010).  A government agent's state of mind is not relevant to an entrapment defense.  *United States v. Makhlouta*, 790 F.2d 1400, 1402 (9th Cir. 1986).   Here, the agents' statements to informants at most bear on their state of mind, not inducement.  Improper inducement occurs when the government "repeated[ly] and persistent[ly] solicit[s]" a defendant to commit a crime. *Sorrells v. United States*, 287 U.S. 435, 441 (1932).  Law enforcement agents' actions or statements directly to Defendants may be relevant to inducement, but statements they made to each other or third parties are not.

## II.    Opposing Party's Statement – Informants – Fed. R. Evid. 801(d)(2)

The first and most substantial barrier to admission of the proposed informant statements is relevance.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."   Fed. R. Evid. 401.   Evidence is not admissible if it is not relevant.  Fed. R. Evid. 402.  The informant statements that

6

Defendants offer are not relevant.  For example, Statement #6 – an informant said,

"We're going to smoke one.  Can somebody grab Mike and tell him to come down

quick?"  Neither the informant, Mike, or anyone else known to be present is a charged

coconspirator.  Similarly, the following statements do not include or involve people

charged in the conspiracy.  They are irrelevant to the charged offenses.

| 11 | CHS Steve Frank B. | 8/7/20 | Audio | Media 46 -> 2020-08-07-09 -> 0002 @4:07:53 | CHS Steve tells Frank that if they don't have objectives at this next meeting then he's done with having meetings. CHS Steve tells CHS Jenny and Frank Butler, "If we don't talk about actually doing what the fuck we need to be doing, I'm done with meetings." | Party Admission – FRE 801(d)(2)(D) |
| 12 | CHS Steve CHS Jenny Frank B. | 8/7/20 | Audio | Media 46 -> 2020-08-07-09 -> 0003 @4:16:38 | Frank asks CHS Steve if he's building an army in Virginia, to which CHS Steve replies "absolutely." Frank Butler asks CHS Steve if he's building an army, to which CHS Steve replies, "Absolutely." He then tells Butler, "You're building a forward unit, one that will be ready to go and go do whatever it is. If it ends up being an army with different fucking companies in it, then so be it, better to it, but right now you want fucking 20, 25 fucking people that at the fucking drop of a hat, you can assemble, travel, or _____." | Party Admission – FRE 801(d)(2)(D) |
| 13 | CHS Steve Frank B. | 8/7/20 | Audio | Media 46 -> 2020-08-07-09 -> 0002 @0:02:27 | CHS Steve tells Frank twice that he is not just a state officer, but he is the state lead officer for Virginia and that he's in charge of the whole state. CHS Steve tells Frank Butler, "You're not only a state officer, you're the state lead officer for Virginia. You are in charge of the fucking state of Virginia." He tells him this twice. | Party Admission – FRE 801(d)(2)(D) |
| 14 | CHS Steve CHS Jenny Frank B. | 8/7/20 | Audio | Media 46 -> 2020-08-07-09 -> 0003 @4:09:40 | CHS Steve says that they need objectives and Frank needs to put his plan into action. CHS Steve tells CHS Jenny and Frank Butler, "We have to have objectives and fucking. . . We have to have forward fucking units actively operating." Additionally, he tells Butler, "You know your ideal about what you want to do? You need to find a way to put that into play and say, "This is what I have. This is what I need." | Party Admission – FRE 801(d)(2)(D) |

| 15 | CHS Steve CHS Jenny Frank B. | 8/7/20 | Audio | Media 46 -> 2020-08-07:09 -> 0003 @4:26:30 | CHS Steve and CHS Jenny tell Frank that Barry got scared that the feds were watching them in Ohio, but since the feds are already watching them they should just go for it and do what they are going to do. CHS Steve tells CHS Jenny and Frank that Barry might not, "have the stones to do it, because I don't know, I haven't really talked to him and I don't know where he's really at, but I just know that backing off as hard as he has from other stuff, I have concerns with." CHS Jenny replies, "Well, I think the whole, them saying that they seen the feds there in Ohio, that we can freak the fuck out at him and he just... That's when it changed." Steve then says, "But here's the real fucking ideal of that. If you think the feds ain't watching everything we fucking do anyway, you're nuts." Jenny replies, "So who gives a fuck? Let's do what we got to do." | Party Admission – FRE 801(d)(2)(D) | To show that CHS Steve and CHS Jenny believed that Barry was backing out. Encouraged others to not care about law enforcement and to separate Barry from his reasonable girlfriend. |

The informant statements are also inadmissible because they are hearsay. As investigators are not party-opponents, neither are their informants. "We do not believe that the authors of Rule 801(d)(2)(D) intended statements by informers as a general matter to fall under the rule, given their tenuous relationship with the police officers with whom they work." *Lippay v. Christos,* 996 F.2d 1490, 1499 (3d Cir.1993); *see also Yildiz*, 355 F.3d at 82 ("[T]he out-of-court statements of a government informant are not admissible in a criminal trial pursuant to Rule 801(d)(2)(D) as admissions by the agent of a party opponent.")

Defendants concede that "[o]nly the Sixth Circuit allows for presentation of informant statements as party admissions." (PageID.2358, quoting *United States v. Rodriguez-Landa*, No. 2:13-cr-484-CAS-1, 2019 WL 1755518, at *4 (C.D. Cal. Apr. 19, 2019); citing *United States v. Branham*, 97 F.3d 835, 851 (6th Cir. 1996). But even that overstates *Branham*'s holding. In that case, the Court carved out a narrow exception for an informant's statements made "to establish a trusting relationship" with the defendant. *Branham*, 97 F.3d at 851. *Branham* is a singular decision not only amongst other circuits, but even within the Sixth Circuit, which has carefully

limited its scope and application.  For example, in *United States v. Reed*, 167 F.3d 984 (6th Cir. 1999), the defendant asserted his innocence in a recorded conversation with a government informant. The informant "generally responded 'yeah' or 'I understand.'" *Id.* at 987. The defendant moved to admit that recording at trial, arguing that the informant's affirmative responses to his claims of innocence were statements by a party opponent.  The Sixth Circuit affirmed the district court's exclusion of this evidence, finding that the informant's responses were not statements.  *Id.* at 989.

The informant statements that Defendants offer were not made "to establish a trusting relationship," as allowed in *Branham*.  For example, in Statement #18, the informant told Fox, "He [Caserta] wasn't at the last training so he's kinda outta the loop;" Statement 35 – "I think militia sounds more… so take it a step back, I think it sounds more professional than if people say we are part of this boog;" Statement #42 – "So, like, Adam is Michigan's representative.  For like a big movement that's going on with 15 states involved;" Statement #104 – "Put rounds through windows;" Statement #109 – "I didn't know if you wanted to write shit down?  If we should start writing shit down, get a whiteboard or something."  A plain reading of these statements shows they had little to do with building a trusting relationship, but were simply day-to-day communications amongst the conspirators.

The statements that Defendants offer from "CHS Steve" are equally inadmissible.  CHS Steve was a noncompliant informant and an unreliable declarant. As with all informants, before cooperating with the FBI, he agreed to a number of

rules and terms.   Those included following agent direction, not committing unsanctioned crimes, candid disclosure to his handling agents, and others.   CHS Steve violated those rules, ending his cooperation and relationship with the FBI.  His violations included the following undisclosed and unauthorized acts:

- offering use of 501(c) charity funds to purchase weapons for attacks;
- obtaining and possessing weapons while prohibited from doing so because he was a felon;
- offering personal equipment, like the use of a drone, to aid in acts of domestic terrorism.

CHS Steve also failed to record, and to disclose the presence of existing recordings of, pertinent conversations and events.

Further, CHS Steve attempted to obstruct the Defendants' arrest and continue the kidnapping plot.  In defiance of agents' instructions, CHS Steve contacted at least one of the defendants shortly before their arrest and said he had been stopped by the "feds."  After, he contacted another informant (not knowing he/she was an informant), to ask him/her to delete the in-car recording of their surveillance of the Governor's home.  CHS Steve told the informant that he would act as the leader in coordinating attacks in multiple states going forward.  Because CHS Steve's actions were so far outside the bounds of the cooperation agreement, it was terminated and he was charged with, and convicted of, being a felon in possession of a firearm in the Western District of Wisconsin (21-cr-24-WMC).  In summary, CHS Steve was a "double agent," often working *against* the interests of the government. His statements cannot, therefore, be considered binding admissions of the government itself.

III.   <u>Present Sense Impression – Fed R. Evid. 803(1)</u>

"The exception for present sense impression permits the introduction into evidence of a 'statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.'" *United States v. Price*, 58 F. App'x 105, 106 (6th Cir. 2003), quoting Fed. R. Evid. 803(1).  "In evidence law, we generally credit the proposition that statements about an event and made soon after perceiving that event are especially trustworthy because 'substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation." *Navarette v. California¸* 572 U.S. 393, 400 (2014) (internal quotation omitted).  "Contemporaneousness may indicate that statements were truthful only where the speaker would not have had time to fabricate a story. Indeed, that is the spirit behind the traditional 'present sense impression' and 'excited utterance' exceptions to the hearsay rule." *Miller v. Stovall*, 742 F.3d 642, 650 (6th Cir. 2014).

An out-of-court statement may be admitted as a "present sense impression" under the following circumstances: "(1) the declarant must have personally perceived the event described; (2) the declaration must be an explanation or description of the event rather than a narration; and (3) the declaration and the event described must be contemporaneous." *United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir. 1998). "[T]he declarant must also have personal knowledge of what she describes." *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995), citing Fed. R. Evid. 803 advisory committee's note ("In a hearsay situation, the declarant is, of course, a witness, and

neither this rule nor Rule 804 dispenses with the requirement of firsthand knowledge.").

Courts look critically at defendants' attempts to admit self-serving statements under this rule.  For example, in *United States v. Penney*, 576 F.3d 297, 302, 313-14 (6th Cir. 2009), the defendant sought to admit his statement to police ten to fifteen minutes after he shot a police officer who was attempting to execute a search warrant at his home, "[Y]ou guys don't understand, I thought I was being robbed."  The Sixth Circuit affirmed the district court's exclusion of this statement, reasoning that the statement was "unreliable" because the defendant "knew what was at stake at the time he made the statement," nor was it made during or immediately after the event. *Id.* at 313-14.

In *United States v. Ramos*, 397 F. App'x 767, 770 (3d Cir. 2010), the defendant attempted to admit a statement made by his codefendant.  After police found heroin, and approximately 20 minutes after being arrested, the codefendant said the defendant "had nothing to do with that . . . this is all mine."  *Id.* at 768, 770.  The Court affirmed the exclusion of this statement because the codefendant had time to "reflect," "fabricate," and "misrepresent thoughts."  *Id.* (internal quotation omitted).  Similarly, in *United States v. Canales-Fuentes*, 176 F. App'x 873, 875 (9th Cir. 2006), the defendant attempted to admit his custodial statement as a present sense impression.  Those statements were properly excluded because they "did not describe or explain an event, but rather provided an 'excuse' . . . ."  *Id.* at 875.

12

Defendants offer two statements under Rule 803(1) in their memorandum. First, on July 24, 2020, Garbin said of Fox, "Captain autism can't make up his mind."[3] (PageID.2369.)   Garbin and the informant were together and called Fox.   Fox explained that the phone he was on was not secure, but that he had many other secure phone lines and would send them the number of one to call.   Garbin became frustrated waiting for him to send the number and made the proposed statement.   This statement has little or no relevance to any issue at trial.   Moreover, it does not say what Defendants purport that it does – "Adam Fox had no actual disposition toward truly committing wrongdoing."   (PageID.2369.)   It is also not a present sense impression because there was no event.   Nor Garbin personally observe Fox being indecisive; he was speculating as to why it was taking a long time for Fox to text him back with a phone number to call.

Defendants also seek to admit an exchange on July 7, 2020 from a meeting at Paul Bellar's house.[4]   (PageID.2367-68.)   During their recorded conversation, an attendee not charged in the case said he was "not interested in taking people out of their homes" or "black-bagging politicians," and wanted the group to take a "defensive" posture.   Harris and Franks expressed agreement in that setting, which included individuals they could not fully trust.   Their statements were not a present sense impression.   First, there was no "event," just a conversation about a topic

---

[3] Defendants describe this statement as occurring on July 20, 2020.  It was actually July 24, 2020.

[4] Bellar was not charged with a federal crime.  He was charged by the State of Michigan with providing material support for terrorist acts, gang membership, and felony firearm.

(kidnapping) that members of the group routinely discussed.  Second, Franks and Harris were not describing an event or even the preceding statement.

The statements that Defendants offer as present sense impressions in their chart similarly fail to meet the necessary foundation, as laid out in *Mitchell*, 145 F.3d at 576.[5]  Most basically, none of them have a requisite "event," and therefore are not descriptions of events, *e.g.,* Statement # 54 – "Beaker probably wouldn't;" Statement #194 – "I mean like, what else can we do;" Statement #221 – "I'll buy you food."  Most of the statements are also prospective or retrospective and not contemporaneous with their topic, *e.g.*, Statement #65 – "I've got an idea . . . we hit the news station right [sic] the CNN building;" Statement #66 – "Well that was a waste of gas for us;" Statement #71 – "Shall I do some digging around."

IV.   Excited Utterance – Fed.  R. Evid. 803(2)

"Under Rule 803(2) of the Federal Rules of Evidence, a court may admit out-of-court statements for the truth of the matter asserted when they 'relat[e] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.'" *United States v. Arnold*, 486 F.3d 177, 184 (6th Cir. 2007), quoting Fed. R. Evid. 803(2).  "First, there must be an event startling enough to cause nervous excitement.  Second, the statement must be made before there is time to contrive or misrepresent.  And, third, the statement must be made while the person is under the stress of the excitement caused by the event."

---

[5] Statements # 39, 43, 54, 59-66, 68-72, 172-173, 183, 193-196, 211-213, 215, 221, 223-224, 245.

14

*Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1057 (6th Cir. 1983). "'[T]he ultimate question is whether the statement was the result of reflective thought or whether it was a spontaneous reaction to the exciting event.'" *Id.*, quoting *McCormick's Handbook of the Law of Evidence* § 297 at 705-06 (2d ed. 1972).

As with present sense impressions, this rule may not be used to admit self-serving statements by a defendant.  For example, in *United States v. Sewell*, 90 F.3d 326, 326-27 (8th Cir. 1996), immediately after police found a gun in the trunk of the defendant's car, he said that it was not his and he did not know it was there.  At trial, he attempted to admit that statement as an excited utterance, arguing that he made it while under the "shock" of the police finding the gun.  *Id.*  The district court declined to do so, which the Eighth Circuit affirmed – "[w]here incriminating evidence is discovered in one's possession, it requires only the briefest reflection to conclude that a denial and plea of ignorance is the best strategy. This hardly comports with the spirit of disinterested witness which pervades the rule."  *Id.* at 327.

In their brief, Defendants again seek to admit the exchange on July 7, 2020 in which Harris and Franks expressed agreement with a person who said he was "not interested in taking people out of their homes," or "black-bagging politicians," as an excited utterance.  (PageID.2367-68.)  First, the initial statement about "taking" or "black-bagging" people was not an exciting event.  It was the continuation of a conversation that members of this group had been routinely discussed for more than a month.  Second, Franks and Harris had sufficient cause and time to "contrive" and "misrepresent" their stance.  Franks, Harris and their coconspirators were very

15

concerned about federal agents or informants infiltrating their group and had specific concerns about the people at that particular meeting.  Bellar had admitted sharing details of their tactical plans with his girlfriends.  Another attendee had earlier incited suspicion by naming his phone's Bluetooth connection "LE undercover."[6]  In the same conversation, the participants discussed the possibility that "feds" could slip into an improperly vetted group.  As in *Sewell*, 90 F.3d at 327, when a person believes that law enforcement has caught them, it takes only the "briefest reflection to conclude that a denial and plea of ignorance is the best strategy."

Defendants offer one additional statement (Statement #46) as an excited utterance in their chart.  On July 18, 2020, at a meeting in Peebles, Ohio, an informant said that he was "pissed" because the group did not accomplish anything. The purpose of the meeting was to make plans to overthrow what they believed to be tyrant state governments; the informant was frustrated that they were not as productive as he hoped in doing so.  Again, this comes nowhere near the level of "an event startling enough to cause nervous excitement."  *Haggins*, 715 F.2d at 1057.

The statements Defendants provided are not excited utterances and should be excluded.

## V.     Then-Existing Mental, Emotional, or Physical Condition – Fed. R. Evid. 803(3)

"Rule 803(3) allows witnesses to recount hearsay statements . . . when the statement's original declarant is expressing his or her then-existing state of mind." *United States v. Kilpatrick*, 798 F.3d 365, 386 (6th Cir. 2015).  "In order to be

---

[6] He was not actually an undercover law enforcement agent or source.

admissible under Rule 803(3), the statement must have been contemporaneous with the declarant's experience of the mental, emotional, or physical condition referred to when the declarant did not have 'an opportunity to reflect and possibly fabricate or misrepresent his thoughts.'" *United States v. Mendez*, 303 F. App'x 323, 325-26 (6th Cir. 2008), quoting *United States v. LeMaster*, 54 F.3d 1224, 1231 (6th Cir. 1995).

> The threshold requirements for invoking this hearsay exception are that (1) the statement must be contemporaneous with the mental state sought to be proven; (2) there must be no suspicious circumstances suggesting a motive for the declarant to fabricate or misrepresent his or her thoughts; and (3) the declarant's state of mind must be relevant to an issue in the case.

*United States v. Srivastava*, 411 F. App'x 671, 684 (4th Cir. 2011).[7]  As it relates to the third element, "the court must determine if the declarant's state of mind at the time of the declaration is relevant to the declarant's state of mind at the time at issue." *United States v. Ponticelli*, 622 F.2d 985, 991 (9th Cir. 1980) (overruled on other grounds).

> [T]he state-of-mind exception does not permit the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind. If the reservation in the text of the rule is to have any effect, it must be understood to narrowly limit those admissible statements to declarations of condition – "I'm scared" – and not belief – "I'm scared because [someone] threatened me."

---

[7] The government also cited the similar foundational elements from the Seventh Circuit in their prior motion in limine (ECF No. 368) – "(1) the statements must be contemporaneous with the . . . event sought to be proven; (2) it must be shown that the declarant had no chance to reflect—that is, no time to fabricate or to misrepresent his thoughts; and (3) the statements must be shown to be relevant to an issue in the case." (PageID.2427, quoting *United States v. Jackson*, 780 F.2d 1305, 1314 (7th Cir. 1986) (internal quotation omitted).)  It does not appear that the Sixth Circuit has articulated a particular foundation for Rule 803(3).

*United States v. Cohen*, 631 F.2d 1223, 1225 (5th Cir. 1980).

Like with present sense impressions and excited utterances, defendants may not shoehorn inadmissible self-serving statements into evidence under this rule.  In *United States v. Jackson*, 780 F.2d 1305, 1314 (7th Cir. 1986), an FBI cooperator recorded the defendants professing their innocence after their criminal conspiracy had ended.   The district court excluded those statements as "self-serving . . . consistent statements."  *Id.* at 1313.  The Seventh Circuit affirmed that ruling on several grounds, including finding that the recordings were not a then-existing state of mind.  *Id.* at 1315.  The Court also highlighted the importance of the qualifying condition included in Rule 803(3) – "but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will."  *Id.*   "[T]his exclusion 'is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind.'"  *Id.*, quoting Advisory Committee Note to Fed. R. Evid. 803(3).

Most of the statements that Defendants offer under this rule do not meet the requisite factors.  In Statement #4, as the cars were departing on September 12, 2020 to surveil the Governor's vacation home, an undercover officer asked Croft where they were going.  Croft responded, "Destination unknown, destination unknown."  Even if Croft did not actually know where they were going (the government's evidence will establish he did), this would not be "state of mind" testimony. Rather, his reluctance

18

to tell a newly introduced associate the destination indicates consciousness of guilt. Similarly, in Statement #9, an informant asked Croft if he was going to discuss his "school idea" at the meeting in September. This is not an expression of the informant or Croft's state of mind.

Neither is Statement #69. At an August 9, 2020, FTX in Munith, Michigan, Fox asked, "So, I got a question, for some of the new people. I know where most of you stand here, but uh, how's everyone feel about kidnapping tyrants?" Harris responded, "No.  Shut up.  We're not Frank."[8]  Harris' statement does not describe his then-existing mental, emotional, or physical condition, and is therefore inadmissible under the state of mind exception.  Harris replied, "No, shut up," not because he disagreed, but because he was concerned that there could be law enforcement present and that continuing the conversation would endanger the success of their kidnapping plan.

In Statement #46, which Defendants also offered as an excited utterance, an informant expressed frustration that the meeting in Peebles, Ohio was not more productive.  His state of mind, however, is not relevant to the charged offenses.  The same is true of another informant, in Statement #49, when he said they did not want to attract attention.  Similarly, in Statement #59, Paul Bellar said, "We're not going to be fucking black-bagging fucking politicians out of their cars, getting fucking warrants and arresting them, we're not dealing with that."  Bellar is not alleged to have been Defendants' coconspirator and is not charged with any federal crimes in this case, so his state of mind is not relevant.

---

[8] The reference is to a subject in Virginia, not Kaleb Franks.

Defendants offer a number of statements under the guise of "intent."[9] However, "Rule 803(3) is properly utilized in cases where intent *per se* is at issue." *Cincinnati Fluid Power, Inc. v. Rexnord, Inc.*, 797 F.2d 1386, 1394-95 (6th Cir. 1986). And, as with the rest of Rule 803, it "does not apply to situations . . . where the declarant's statement of intent is used 'to prove the fact remembered or believed.'" *Id.*, quoting Fed. R. Evid. 803(3).

Many of the proposed statements do not actually contain statements of intent.[10] For example, Statement #10 – "I'm trying to rebuild and restore the country to what was intended;" Statement #171 – "I'm not saying we're going to go out and just be reckless and lawless, but if shit pops off;" Statement #188 – "Like this is going to take months dude;" Statement #207 – "Sorry to do this and put you through this shit;" Statement #216 – "Copy that with the FBs."

Statements of plan or intent are not admissible under Rule 803(3) to prove things that did not ultimately happen. "[H]earsay statements reflecting a declarant's intentions or future plans are admissible to prove subsequent acts." *United States v. DeJesus*, 806 F.2d 31, 35 (2d Cir. 1986); *see also* Fed. R. Evid. 803 Notes of Committee on the Judiciary, House Report No. 93-650 ("[T]he Committee intends that the Rule be construed to limit the doctrine of *Mutual Life Insurance Co. v. Hillmon*, 145 U.S. 285, 295-300 (1892), so as to render statements of intent by a declarant admissible

---

[9] Statements # 6, 10, 19-29, 168-171, 174-182, 185-188, 190-191, 198, 200-210, 212, 214, 216-220, 222, 225-226, 244, 246, 248, 257-258.
[10] Statements # 10, 169, 171, 176, 177, 178, 179, 181, 182, 184, 187-190, 201, 204-208, 210, 212, 216-218, 222, 225, 257-258.

only to prove his future conduct, not the future conduct of another person."). Similarly, statements of conditional intent are not admissible unless the proponent can show that the conditions were satisfied. *United States v. Williams*, 704 F.2d 315, 322 (6th Cir. 1983) (affirming exclusion of statement of the defendant's intent, which was conditioned on "the sale of his mother's house and a gift or the proceeds received," neither of which occurred).

Many of the plans mentioned in the proposed "intent" statements did not occur or were conditioned on events that did not occur, and are therefore inadmissible.[11] For example, Statement #168 – "We go to the capitol with arms and we get our house to listen and to end the stay at home order and then we have a tyrannical governor fucking undo that and not honor the checks and balances of our State Government but yet we are called domestic fucking terrorists even though not one violent fucking thing happened there that day;" Statement #175 – "Here's another route I am trying to go that's more legal. It's just a matter of getting people on board . . . but if we could find a . . . constitutional Judge or Sheriff;" Statement #185 – "If we do this, it's going to have to go down like, it's going to have to be like movie-type shit, man. And we come in on motherfucking boats and get the bitch, take her on a boat in the middle of the lake load her up on a helicopter and get her to the middle of that fucking area."[12]

---

[11] Statements # 168, 175, 185, 186, 191, 198, 200, 202, 203, 209, 243, 244, 248.

[12] Defendants add that this proposed plan was evidence of role playing as Fox did not have access to a boat or helicopter. In fact, Garbin volunteered his boat, which he would camouflage in black paint, for the group to use in the kidnapping plot. Shawn Fix, who represented that he was an active-duty Navy SEAL, said that he could steal a helicopter for the group to use. As discussed later, the group later learned that Fix lied about being in the military.

21

As noted in the plain language of Rule 803(3), and in the Judiciary Committee note on the rule mentioned above, a statement about someone else's intent is not admissible.  Several of Defendants' proposed statements purport to do exactly that.[13] For example, Statement #7 – "They (the WW) are going to do Michigan;" Statement #170 – "I've got a guy right now drawing up the paperwork to fucking legitimatize this shit and actually charge Whitmer with her charges that she violated the Constitution. How she has violated our constitutional rights and the fucking laws that she has broken. So I have a guy working on that right now."

The second factor articulated in *Srivastava*, 411 F. App'x at 684, regarding whether there are suspicious circumstances that might cause the declarant to misrepresent his thoughts, is especially pertinent in this case.  Defendants were members of a terroristic conspiracy that went to great lengths to not share its details with outsiders, even those that were otherwise members of one of their "militias." They were even skeptical of people within their group, repeatedly attempting to confirm that they were not working with law enforcement.  They constantly preached the importance of "operational security," or "OPSEC."  Fearing the presence of "feds," Defendants carefully screened people before meeting with them, used codewords, demanded confirmatory identification paperwork, used scanners to check for covert recording devices, recorded license plates, made impromptu video calls to verify people's whereabouts, etc.  At times they even suspected people in their circle with no specific or articulable reason.  Because of these constant concerns, Defendants

---

[13] Statements # 6, 7, 16, 19-29, 170, 174, 179, 180, 220, 243.

always had a motive to misrepresent their thoughts and plans for fear that law enforcement was listening or that an informant might later share their discussions with law enforcement.  For example, in Statement #69, discussed above, Fox asked "the new people" at the August 2020 FTX, "How's everyone feel about kidnapping tyrants," and Harris told him to "shut up."  Discussing the plan with new members violated their operational security protocols.[14]  These are exactly the sort of suspicious circumstances that would cause the declarant to misrepresent his thoughts, barring the statements' admission under Rule 803(3).  *Srivastava*, 411 F. App'x at 684.

## VI.   Statement Against Interest by an Unavailable Declarant – Fed. R. Evid. 804(b)(3)

Rule 804(b)(3) allows for the admission of an out-of-court statement by an "unavailable" declarant, provided that "a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability."[15]  Fed. R. Evid.

---

[14] For example, on May 18, 2020, in an online chat amongst Wolverine Watchmen leadership, which Harris was participating in, Garbin warned, "[W]e're too small to get a undercover attached to us.  But in the case we did, it would me [sic] smart to leave bomb making and threats of violence out of the general conversation."

[15] Fed. R. Evid. 804(a) defines the various circumstances in which a declarant is considered "unavailable."  No declarant has been found to be unavailable yet in this case, but Defendants seemingly allude to subsection (1) – the declarant "is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies."

804(b)(3)(A).  The statement must also be "supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability."  Fed. R. Evid. 804(b)(3)(B).  "To determine whether a statement is sufficiently trustworthy for admission under Rule 804(b)(3), the court is not to focus on whether other evidence in the case corroborates what the statement asserts, but rather on whether there are 'corroborating circumstances which clearly indicate the trustworthiness of the statement itself.'" *United States v. Franklin*, 415 U.S. 537, 547 (6th Cir. 2005), quoting *United States v. Price*, 134 F.3d 340, 348 (6th Cir. 1998).

The "most faithful reading of Rule 804(b)(3) . . . is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *Williamson v. United States*, 512 U.S. 594, 594 (1994).  "The Supreme Court has adopted a narrow definition of the word "statement" for the purposes of Rule 804(b)(3)." *United States v. Price*, 134 F.3d 340, 346-47 (6th Cir. 1998), citing *Williamson*, 512 U.S. at 594.  "[E]ach individual declaration or remark made by a declarant constitutes a 'statement.'" *Price*, 134 F.3d at 346-47.  "[O]nly those declarations or remarks within the confession that are individually self-inculpatory" are admissible under Rule 804(b)(3).  *Williamson*, 512 U.S. at 594.  "Collateral statements, even ones neutral as to interest, should be treated the same as other hearsay statements that are generally not admissible." *Price*, 134 F.3d at 347.

Defendants do not identify any statements against interest or discuss the relevant rule or case law in their motion and memorandum, but list two in the attached chart.  In the first (Statement #6), an informant said, "We're going to smoke one.  Can somebody grab Mike and tell him to come down quick."  The second sentence can be immediately discarded as collateral and therefore not against interest.  Defendants argue that the first sentence shows that the informant used marijuana with targets of the investigation.  That is based entirely on Defendants' assumption that the informant was going to smoke marijuana and not a cigarette or something else legal.  Moreover, the statement is prospective; it does not indicate that the informant smoked anything with anyone, only that one time he mentioned that he was going to in the future.

In the second statement (Statement #17), Agent Impola texted an informant and told him, "Best thing to do is deny and accuse somebody else like Trent."  Because Defendants were engaged in an illegal conspiracy, they were constantly concerned about law enforcement infiltrating their group.  In this statement, the agent advised the informant that if he was accused of being an informant, he should suggest that another person in the group, like Trent, was working with police.  Defendants do not suggest how this was in any way against Agent Impola's penal interests.

Rule 804(b)(3) is narrowly construed, allowing only specific statements that are unequivocally against the declarant's interest.  The two statements identified do not meet that standard.

VII.   <u>Non-Hearsay Statement Not Offered for the Truth of the Matter Asserted</u>

"[I]f the significance of a statement 'lies solely in the fact that it was made,' rather than in the veracity of the out-of-court declarant's assertion, the statement is not hearsay because it is not offered to prove the truth of the matter asserted." *United States v. Cantu,* 876 F.2d 1134, 1137 (5th Cir.1989), quoting *United States v. Bobo,* 586 F.2d 355 (5th Cir.1978).

To admit an out-of-court statement as evidence for a purpose other than its truth, "the proponent must satisfy Federal Rules of Evidence 401 and 403, that is, (1) the non-hearsay purpose for which the evidence is offered must be relevant and (2) the probative value of the evidence for this non-hearsay purpose must not be outweighed by the danger of unfair prejudice." *United States v. Paulino*, 445 F.3d 211, 217 (2d Cir. 2006). "[T]he mere identification of a relevant non-hearsay use of such evidence is insufficient to justify its admission if the jury is likely to consider the statement for the truth of what was stated with significant resultant prejudice." *United States v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994).

Defendants offer a number of statements, made mostly by investigators, suggesting that they show the investigators' plan to entrap the defendants. For example:

- July 11, 2020: Agent Impola told an informant, "Best thing to do is deny and accuse somebody else like Trent."
- On August 9, 2020: Agent Chambers told an informant, "Bring B-Puff in."
- On August 27, 2020: Agent Chambers said, "I default to getting as many other guys as possible, so whatever works to maximize attendance."
- On August 29, 2020: Agent Chambers directed an informant, "Have him post his pictures."

(PageID.2369.)  Defendants also include an informant saying, on June 6, 2020, "You can't just grab brick and mortar.  Without a fucking human to go with it, you've done nothing but grab brick and mortar."  (PageID.2370.)

These statements are not offered for a proper non-hearsay purpose.  "[U]nder the law of entrapment, 'it is not the state of mind of the government agent that is important . . . it is the 'predisposition of the defendant' to commit the offense . . . that counts.'"  *United States v. Makhlouta*, 790 F.2d 1400, 1402 (9th Cir. 1986), quoting *United States v. McClain*, 531 F.2d 431, 435 (9th Cir. 1976).  "A valid entrapment defense requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity." *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002).  In *United States v. White*, 815 F. App'x 27, 27-28 (6th Cir. 2020), the defendant "gave an undercover law enforcement agent a makeshift explosive device that he created."  The defendant sought to admit evidence about the reasons that the government was investigating him.  *Id.*  The district court excluded that evidence.  *Id.*  The Sixth Circuit affirmed that ruling as the proffered evidence was "unrelated to White's inclination to build, possess, or transfer pipe bombs; therefore, it is irrelevant."  *Id.* at 31.

The statements that Defendants offer are not relevant to their claim of entrapment.  They do not show law enforcement "inducing" Defendants to commit the charged crimes, nor do they undermine Defendants' predisposition to commit those crimes.  Even the informant's statement is not "inducement."  Improper inducement

occurs when the government "repeated[ly] and persistent[ly] solicit[s]" a defendant to commit a crime. *Sorrells v. United States*, 287 U.S. 435, 441 (1932).

Defendants identify 14 additional out-of-court statements that they purport to offer for non-hearsay purposes in their chart. None of those statements, however, meet the criteria for admission under that theory either.

For example, in Statements #189, 197, and 199, Fox referenced an undercover agent whom he calls his "Warden of the North." Defendants offer this for the supposed non-hearsay purpose of showing Fox was engaged in fantasy role playing, rather than a real conspiracy.[16] The defendants themselves often pushed this same subterfuge in their discussions. For example, on September 4, 2020, a member of the defendants' group chat wrote "They're officially picking bois up. We're all just larpers, right?" (See, R. 306, PageID.1815.)[17] In other words, the defendants offer the "Warden of the North" comment for precisely the "truth" of the matter, the self-serving falsehood that the plot was only a game.

Statements # 42 and 44 do not support an entrapment defense either as they do not show enticement or undermine Defendants' predisposition to commit the charged offenses. In Statement #42, an informant said, "So, like, Adam is Michigan's representative. For like a big movement that's going on with 15 states involved."

---

[16] "Warden of the North" is the title of a character in the HBO fantasy series "Game of Thrones."
[17] "Bois" is shorthand for "Boogaloo Bois" or adherents of the anti-government Boogaloo ideology. "LARPing" is slang for Live Action Role Playing, a type of interactive game in which the participants portray characters through physical action, often in costume and with props.

Defendants suggest that this is non-hearsay and describe the purpose of the statement as showing the informant "referring to Adam Fox as Michigan's leader." That purpose is irrelevant to any of the charged offenses and Defendants do not offer any explanation otherwise. To the contrary, any relevance stems only from the truth of the hearsay statement.

Similarly, in Statement #44, two of the informants described Michigan's policies as "against the law . . . against your constitutional state law, much less your federal constitution" and "a lot of the stuff she's been doing is against the constitution." These statements were made at an FTX in Cambria, Wisconsin on July 12, 2020. The informants were echoing sentiments expressed by Defendants and many others in their groups over the preceding months. Defendants suggest that these statements are offered to show that the informants were "gaslighting the group," but do not explain how that is possible given that they had all previously made similar statements in person and online.

Defendants also offer a number of statements (Statements # 249 – 256) in which Shawn Fix lied to the group about his military experience and the military supplies that he could obtain for the kidnapping plot, *e.g.*, a helicopter, guns, explosives.[18]   Defendants argue that these statements show that the group was engaged in role playing. Fix was not a role player; Fix was a liar. If Fix was role playing with Defendants, they would have made and identified their own similarly

---

[18] Fix was not charged with a federal crime. He was charged by the State of Michigan with providing material support for terrorist acts and felony firearm.

fantastical statements; they did not.  Fix exaggerated his military bona fides to join Defendants.  When they found out about his deception, they expelled him from the group precisely because they were *not* playing a game.

Finally, Defendants offer a statement by Joe Morrison criticizing Fox's militia credentials (Statement #245).[19]  Purportedly the non-hearsay purpose is that it proves Fox was not a member of the Wolverine Watchmen, though one cannot reach that conclusion without considering the truth of the statement.  Moreover, it is irrelevant to the charged offenses.  The Superseding Indictment does not allege that Fox was a member of the Wolverine Watchmen or that Joe Morrison was a co-conspirator in the kidnapping plot.

None of the statements that Defendants offer meet the criteria to be admitted for non-hearsay purposes.

## VIII.   Hearsay Within Hearsay – Fed. R. Evid. 805

Many of the listed statements also include "double hearsay."  Hearsay within hearsay is only admissible "if each part of the combined statements conforms with an exception to the rule."[20]  Fed. R. Evid. 805.  For example, in Statement #25, an informant told others that "Steven from Wisconsin" has gotten them a credit card to use; Statement #25 – "[Fox] was wanting to go up and like check out where the Governor stores her boat;" Statement #67 – "They did offer us a card;" Statement

---

[19] Morrison was not charged with a federal crime. He was charged by the State of Michigan with threat of terrorism, gang membership, providing material support for terrorist acts, and felony firearm.
[20] Statements # 2, 15, 20, 25-28, 67-68, 100, 103, 107, 146, 156, 162, 166, 170, 179, 242, 247, 253-254.

#179 – Fox said, "5 sheriffs only one willing to see what I have documented to charge with . . . they agree agree agree but won't do anything to help us Maybe get this meeting and see what's really up."  In each of these statements, there are multiple levels of inadmissible hearsay, barring their admission.

Moreover, there are additional statements in which the declarant is speaking on behalf of others.  The foundation is not provided but the declarant is presumably relaying what others have said, *i.e.* hearsay.[21]  For example, Statement # 7 – "They [the Wolverine Watchmen] are going to do Michigan;" Statement #61 – "We're definitely divided; Statement #202 – "[O]ur main direction atm is prepare for possible bug out plan."  In the hearsay context, "the declarant must also have personal knowledge of what she describes."  *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995), citing Fed. R. Evid. 803 advisory committee's note ("In a hearsay situation, the declarant is, of course, a witness, and neither this rule nor Rule 804 dispenses with the requirement of firsthand knowledge.").  When that personal knowledge is based on hearsay, the statements are hearsay within hearsay, and also barred by Rule 805.

WHEREFORE, the United States respectfully requests that this Court deny Defendants' motion.

---

[21] Statements # 7-8, 24, 61, 63-64, 75-76, 173, 202, 210.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated:    January 6, 2022            */s/ Jonathan Roth*
JONATHAN ROTH
NILS R. KESSLER
Assistant United States Attorneys
United States Attorney's Office
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404