IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | Case No 1:20-CR-183-RJJ |
| Plaintiff, | HON. ROBERT J. JONKER<br>Chief U.S. District Court Judge |
| V | |
| ADAM DEAN FOX,<br>BARRY GORDON CROFT, JR.,<br>KALEB JAMES FRANKS,<br>DANIEL JOSEPH HARRIS, and<br>BRANDON MICHAEL-RAY CASERTA. | |
| Defendants. | |

DEFENDANT ADAM FOX'S REPLY TO THE GOVERNMENT'S RESPONSE
TO THE DEFENDANTS' MOTION IN LIMINE REGARDING THE
ADMISSION OF OUT OF COURT STATEMENTS

Defendant Adam Fox, through Counsel, Christopher M. Gibbons, of the law offices of Gibbons & Boer, replies to the Government's response to the Defendants' Motion in Limine Regarding the Admission of Out of Court Statements (ECF #383) and states as follows:

Counsel for defendant Kaleb Franks has sought permission to file a Reply to the Government's Response to the Defendants' Joint Motion In Limine Regarding Admission of Out-of-Court Statements (EFC#397). Adam Fox concurs with Kaleb Frank's Reply and incorporates those arguments contained therein as if fully set forth herein. Adam Fox seeks permission to file this Reply. Adam Fox seeks to specifically address issues raised in the Government's Response Brief regarding the agency of the Government's CHS's and FBI Special Agents.

1

1. **If the statements of the Government's agents, informants, Adam Fox, and others are put beyond the reach of the defense, the examination required by law cannot occur.**

The Government is requesting that the Court preclude the defendants from introducing out-of-court statements at trial that are critical to demonstrating to a jury there was no agreement between the defendants to kidnap the Governor, and to demonstrate the elements of entrapment. The Government has requested that this Court issue an Order precluding the defendants from introducing any out-of-court statements identified by the defendants in the attachment to their Motion in Limine. Such a broadly construed exclusion of evidence would deprive the defendants of the opportunity to present a meaningful challenge to the Government's case.

In the present case, the body of evidence to be used by the Government in proving the existence of a conspiracy to kidnap the Governor or to acquire a weapon of mass destruction consists primarily of statements made to, by, or in the presence of, Government agents. The statements of the defendants and the CHS's were recorded by key fob devices, recorded phone lines, or via text messaging. As a result, nearly all the evidence to be deduced at trial will consist of out-of-court statements. Statements the Government will freely use to allege that an agreement to kidnap Governor Whitmer was reached between the defendants, and to give context to the defendants' otherwise ostensibly legal activity.[1]

While the Government intends to admit these recorded out of court statements to demonstrate guilt, it also asks the Court to prohibit the defendants from the use of the statements

---

[1] By way of example, on August 29, 2020, the undercover agent known as CHS Dan, picked up Adam Fox and drove him to Elk Rapids. At all times the vehicle remained on public roadways, and CHS Dan and Adam remained only in the vehicle or in public spaces, such as a restaurant, or a public boat launch. These actions are only colorable as "overt acts" by using the statements of the parties, both government agents and defendants. A second more obvious example will be the proofs relating to the Conspiracy to Acquire a Weapon of Mass Destruction charge. In this case, the "bomb" was entirely a fiction. There will be no physical evidence of a bomb introduced at trial because no bomb ever existed, as a prop, or otherwise. No money exchanged hands for the fictional bomb. The case to be made against the defendants charged with this offense will be comprised solely of their out-of-court statements.

contained on these same recordings and messages to defend themselves.  Adam Fox asserts that portions of these same recordings and messages show that there was no agreement between the defendants to commit a crime and that the Government though its informants and agents entrapped the defendants into the limited participation the Government did induce.   Adam Fox was under surveillance and had daily contact with a variety of government agents via his cellphone and in-person for many consecutive months.  The Government has acquired more than 1000 hours of conversation throughout the balance of the investigation.  The Government seeks to deprive Adam Fox of the use of the vast majority of this evidence in his defense at trial.

To prove entrapment, the defendant must show that he was not predisposed to commit the kidnapping.

> Relevant factors for determining predisposition include: (1) "the character or reputation of the defendant, including any prior criminal record," (2) "whether the suggestion of the criminal activity was initially made by the Government," (3) "whether the defendant was engaged in the criminal activity for profit," (4) "whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion," and (5) "the nature of the inducement or persuasion supplied by the government. *United States v. Wilson*, 653 Fed. Appx. 433, 438, (6th Cir) 2016.

An analysis of these elements necessarily requires an examination of the facts and circumstances relevant to activities alleged in the Superseding Indictment.  If the statements of the Government's agents, informants, Adam Fox, and others are put beyond the reach of the defense, this examination, required by law, cannot occur.  Without the use of the statements of the Government's agents' Adam Fox cannot demonstrate to the jury that the suggestion of criminal activity was initially made by the Government, the second predisposition factor identified above.

Adam Fox has no other way to establish the Government suggested the subject crime other than by the introduction of the statements of the Government agents when they suggested the criminal activity in his presence.   The Government seeks to bar the admission of such statements

3

because it is helpful to the defense, and such evidence would diminish the Government's case by lending a basis upon which the jury could conclude that Adam Fox was entrapped or that no agreement to kidnap Governor Whitmer was reached between the other defendants and Adam Fox, as alleged.

The same is true as to Adam Fox and his own statements of reluctance or unwillingness to engage in the illegal activity touted and promoted by the Government's agents.  The Government has requested that these statements also be precluded from consideration by the jury at trial.  If the Court were to adopt the Government's position Adam Fox would be entirely deprived of the ability to show the jury that he "evidenced reluctance" to commit the offense, or that he was "overcome only by repeated government inducement or persuasion".

The Government is asking the Court to preclude the use of statements that are critical to defending the case.  The Government's argument invites the Court to make findings of fact and to assign implied "motives" to the defendants in making exculpatory remarks.  The Government suggests that Adam Fox is an artful dodger, cleverly seeding the undercover recordings and text messages with "self-serving" statements like "back off that plan" and "ixnay the plan-eek", all while harboring the true intent to proceed with the commission of the charged crimes. Therefore, the Government posits that the opportunity to present these "self-serving" statements at trial should be denied.  Defendant submits that the nature of these statements, and the determination of their sincerity should be made by the Jury.

**II.     The CHS's, including CHS Steve are agents of the Government, and their statements should be admitted at trial pursuant to FRE 801(d)(2)(D).**

Second, the Government asserts that CHS Steve's statements, and those of the other CHS's, cannot "bind" the Government as an agent. As a result, the party opponent exclusion the hearsay exception should not apply to the statements of these agents.  The Government has further argued

specifically that CHS Steve was a "double agent". Adam Fox objects to the notion that a "double agent" exception exists with respect to the application of FRE 801(d)(2)(D).

The Government's claim that CHS Steve is a "double agent" is an attempt by the Government to distance itself from the statements made by CHS Steve during the investigation. The Government claims that CHS Steve had to be terminated from his position as a CHS due to misconduct involving his role in the investigation. Among other things, the Government states that CHS Steve's "violations include the following undisclosed and unauthorized acts: - offering the use of 501(c) charity funds to purchase weapons for attacks". (RE 396, Page 2729)

The Government claims that the FBI did not know that CHS Steve was offering the existence of a non-profit charity that could provide funding for weapons to the targets of the investigation. However, during the investigation the FBI special agents responsible for managing the investigation did know that CHS Steve had offered the use of a non-profit as a source of funding to the defendants for purchasing weapons.

On August 9, 2020, the fact that CHS Steve's 501(c) was available as a source of funds for the purchase attack weapons was openly discussed in a recorded phone conversation between CHS Dan and Adam Fox. This phone call took place with SA Impola and SA Chambers present with the CHS as they monitored and supervised the call. Relevant portions of the phone call have been transcribed and are as follows:

The recording opens…

SPECIAL AGENT IMPOLA: This is Special Agent Henrik Impola and Jason Chambers with Confidential Human Source Thor. It is August 9, 2020. Time is approximately 8:03 p.m. Initiating a telephone call with Adam Fox.

*******

The recording continues…

5

> MR. FOX: Yeah, yeah. All right, definitely.  Do we have enough paintball guns we're bringing to this training to utilize?
>
> CHS DAN: Not yet.  But I mean I'm sure if you reach out to Steve he can expedite a card over here and we can get that avenue done.
>
> MR. FOX: Is that already set up or –
>
> CHS DAN: No, right now we're just set up for live – fire capabilities.
>
> MR. FOX: Okay.  No, I'm saying does Steve have the 504 set up to where it's profiting money or raising money yet?
>
> CHS DAN: Yeah.  From my understanding, that's how they got them 300 Blackouts with the suppress on it, and them 37 millimeters.
>
> MR. FOX: Oh, no shit.
>
> CHS DAN: Yeah, I think that's how they got those three was through that 501.

These FBI Special Agents were present when CHS Dan detailed to Adam Fox the alleged availability of CHS Steve's non-profit funds for the purchase of supplies and *previously acquired weapons*.  The use of the 501(c) non-profit in this manner was advanced by CHS Steve and other government agents in the months of June, July, August, and September of 2020, on multiple occasions, many of which are documented on surveillance recordings produced by the Government.

And CHS Steve's relationship with the Government was not "tenuous" or "remote" as the informant relationship observed in *Lippay v Christos,* 996 F.2d 1490, 1499 (3rd Cir. 1993), the authority advanced and relied upon by the Government in attempting to suppress CHS Steve's statements.  While the Government attempts to minimize his involvement and its knowledge of the same, the FBI maintained an intimate knowledge and control of CHS Steve and his activities.  He worked as a confidential human source for FBI from October 20, 2019, until October 27, 2020.[2]

---

[2] Bates #00179893

As a CHS, Steve organized and paid for the "anti-government" meeting in Dublin, Ohio on June 6, 2020. (Superseding Indictment RE 172 P 963) This meeting was recorded for the FBI by CHS Steve. Other CHS's were present at this, and other events organized or attended by CHS Steve. Because the other CHS's were present with their own recorders, the FBI has multiple sources of information concerning these events, beyond that provided by CHS Steve alone. CHS Steve's recordings of these events were made for the benefit of the FBI and were given to the FBI by CHS Steve. The FBI provided CHS Steve with his recording device, taught him how to use it, and how to properly record an event with timestamping and the like for forensic purposes.

Accordingly, the activity of CHS Steve was known to the FBI, through its field agents, throughout the spring, summer, and fall of 2020. On July 10-12, 2020, Steve hosted an "FTX" in Cambria, Wisconsin. (Superseding Indictment RE 172 P 963) Special Agent Impola and other FBI Agents were monitoring the event in real time in Wisconsin. CHS Steve and CHS Dan attended the FTX. Each wore a recording device, and each fully debriefed their FBI handling Agents.

On July 18, 2020, Steve held and paid for another "National" group meeting in Peebles, Ohio. Steve provided pizza, moonshine[3], and paid for attendee's hotel rooms at the meeting. During the meeting Steve, and others, were wearing recording devices for the FBI and provided those recordings to the FBI. On September 11-13, 2020, Steve attended the "FTX" in Luther, Michigan and assisted CHS Dan in marshalling as many of the defendants as possible into vehicles for the alleged "night surveillance" of the Governor's vacation home. (Superseding Indictment RE 172 P965). CHS Steve attended quarterly reviews with the FBI on January 24, 2020, June 5, 2020, July 22, 2020, and November 3, 2020. Steve was paid $19,328.79 for his efforts on behalf of the FBI[4].

---

[3] Media 049 CHS Recording, CCR 0004
[4] Bates #00179894

As previously argued, the 6th Circuit has held that the statements of an undercover informant are admissible as a party opponent under FRE 801(d)(2)(D). *United States v. Branham*, 97 F.3d 835, 851 (6th Cir. 1996). The Government contends that the holding in *Branham* is very narrow, and only applies to conversations that "establish trust".  The 6th Circuit however, used the phrase "*whatever*" the informant said during his conversations was within the scope of his agency with the Government.

> We disagree. Arguably, Cordle conversed with Branham on a regular basis in order to establish a trusting relationship. Whatever Cordle said during these conversations was in furtherance of that goal, and thus within the scope of the existing agency. (Id at 851)

The *Branham* Court also held that the statements were not hearsay at all, because they bore directly on the Defendants entrapment defense stating:

> Furthermore, conversations concerning Branham's entrapment defense would not constitute hearsay…Here, defense counsel was attempting to offer the parties' conversations as evidence of Branham's state of mind in support of his entrapment defense. Accordingly, the truth of the conversations would be irrelevant for purposes of the defense because the conversations' significance would exist solely by the fact that they were made. *(Id at 851)*

The 6th Circuit has also held that the statements of confidential informants on a recording are testimonial in nature and subject to the confrontation clause of the Sixth Amendment.

> We have held that statements by a confidential informant are "testimonial" and thus, subject to the Confrontation Clause. *United States v. Deitz*, 577 F.3d 672, 683, 2009 U.S. (6th Cir.)

The Government suggests that CHS Steve was acting as a "double-agent" and asks this court to prohibit the use of his statements by the defendants under FRE 801(d)(2)(D).  In support of its argument, the Government attempts to minimize the extensive contact and control it exercised over the actions and person of CHS Steve throughout the investigation. In contrast, the FBI recruited, supervised, and paid CHS Steve to organize, attend, and clandestinely record the meetings and

8

events that are the backbone of the Superseding Indictment levied against Adam Fox in this case. The argument that CHS Steve was not acting as an agent of the Government should be firmly rejected.

### III. FBI Special Agents are, in fact and law, Government Agents and statements made in that capacity are admissible pursuant to FRE 801(d)(2)(D).

The Government has made a similar contention with respect to the statements made by the Special Agents in charge of the case. The Government contends that the Agents are "disinterested in the outcome of a trial" and defendants should not be permitted to use their statements. (RE 396 P2723) The defendants have provided statements made by the Agents that demonstrate that not only were they closely monitoring the conduct and actions of the CHS's involved in the case but were also directing and scripting their day-to-day actions and interactions with the individual defendants. These statements evidence that the Agents were instructing the informants they managed to prompt Adam Fox and others into performing incriminating acts or into making incriminating statements they would otherwise not make in the absence of that inducement.[5]

It seems apparent, that with the professional designation "Special Agent" that a per se agency relationship exists between the special agents and the Government in this case. The Government has now stated that three of the primary special agents assigned to this case will not be relied upon for testimony at trial, and that their statements made during the investigation should be precluded from use by the defendants at trial. The Government asks that the Court prohibit the defendants from admitting the special agents' statements because they "were not made under oath" or otherwise "endorsed" by the Government. (RE 396 P 2724). The fact that the Government has

---

[5] For instance, SA Chambers text to CHS Dan on 8/29/20, instructing "have him post his pictures", RE 366-2, Page 2415, or on 9/18/20, "hey quick thought. We should bug Adam for the pictures from last weekend's surveillance.". RE366-2, Page 2416.

9

not endorsed the statements of the acting special agents that managed the underlying investigation does not have any bearing on whether the agents out-of-court statements are admissible.

Undersigned, on behalf of Adam Fox, contends that the law places limits on how far the Government should be permitted to distance itself from the behavior, statements, and conduct of its acting operatives. The FBI agents at issue are employees of the federal government and were all clearly acting as agents for the government in their official capacities at the time the proposed statements were made. There isn't any legal requirement that these statements be "endorsed" by the Government to be admissible under 801(d)(2)(D).

Lastly, it is not necessarily a novel situation presenting itself before the Court. In *United States v. Ramsey*, 220 F. Supp. 86, (6th Cir.) (1963) three defendants were convicted of illegally trafficking liquor in Tennessee. The District Court granted the defendants new trials because the Government withheld a key informant, Stokes French, from testifying at trial. The Court opined:

> French was close enough to the moonshiners to serve as bait, near enough to the criminal design so that the defendants would embrace him as a confidante, but too close to it for the Government to vouch for him as a witness. *Id at P*

The Government's Alcohol Tobacco and Tax Agents used French to entrap the defendants, then deliberately caused him to be "unavailable" to testify at Trial. The Court reversed the defendants' convictions because the "activities by federal law enforcement officers raise serious questions in the Court's mind of fair play." (Id at 90). The Court also stated that federal trial courts have the "duty to protect Defendants from unfair conduct on the part of representatives of our government in furnishing evidence of crime". (Id at 90). In the case at bar, the Government consistently relied on a specific cadre of agents and confidential informants from as early as October 2019 to October of 2020 in establishing its case against these defendants. The Government now seeks to distance itself from the very same group agents and informants, and their inconvenient actions and

10

statements during the upcoming jury trial. Adam Fox has a right to confront his accusers and should be permitted to introduce the statements of the CHS's and the Special Agents in support of his defense at trial.

## RELIEF REQUESTED

The Government is consistently seeking to exclude material evidence that is favorable to the defendants. With respect to the out of court statements made by the informants and the agents in this case, the Court should permit the Adam Fox and the other defendants to introduce them at trial as the admissions of a party opponent pursuant to FRE 801(d)(2)(D).

Dated January 10, 2022.                              Respectfully Submitted,

*/s/ Christopher M. Gibbons*
Christopher M. Gibbons
Attorney for Adam Fox

Business Address:
GIBBONS & BOER
2404 Eastern Ave SE
Grand Rapids MI 49507
616-460-1587
cgibbons0003@gmail.com