UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                 CASE No. 1:20-CR-183

v.

                                 HON. ROBERT J. JONKER

ADAM DEAN FOX, et al.,

       Defendants.

_____/

## ORDER ON MOTIONS *IN LIMINE*

### INTRODUCTION

The matter is before the Court on four motions *in limine* filed by the parties in this case. (ECF Nos. 368, 369, 370, and 383).[1]  The Court heard argument on January 18, 2022, and thereafter took them under advisement.

The five defendants remaining in this case have signaled their intention to raise an entrapment defense at trial.  To advance its case, both on the entrapment theory and in otherwise defending against the conspiracy charged, the defense seeks to admit approximately two hundred fifty-eight out-of-court statements.  (ECF No. 383).  The statements are taken from proposed transcriptions of recorded conversations and originate either from the defendants themselves,

---

[1] Defendants Franks (ECF No. 397) and Fox (ECF No. 398) also move for leave to file a reply brief with respect to their motion to admit out-of-court statements.  The Court grants the two motions seeking leave to file a reply brief and considers them instanter.  W.D. MICH. LCRIMR 47.2(c).

federal agents, or confidential human sources (CHSs).[2] (See Chart at ECF No. 383-1). The government opposes the admission of these statements both in a responsive brief (ECF No. 396) and in an independent motion. (ECF No. 368). For reasons elaborated below, the Court concludes there is no viable hearsay exception that would permit the defendants to admit their own statements in support of their defense without taking the stand themselves so those statements are subject to cross-examination. The same is true, with minor exceptions, for most of the out-of-court statements identified as coming from confidential human sources (CHSs): those, too, must come in through in-court testimony of the CHS, subject to cross-examination. As to out-of-court statements made by sworn agents in the course of their authorized work on this matter, these statements would qualify as party admissions and therefore be admissible by the defense even if the particular agent does not testify, assuming the relevance of any such statement, standing alone.

In the other two motions, the government seeks advance rulings that would: (1) admit evidence of some defendants' "other acts" under Rule 404(b) (ECF No. 370); and (2) limit or exclude evidence and questioning on: (a) domestic violence charges and social media posts relating to former agent Richard Trask; (b) Exeintel, a security consulting firm linked to Special Agent Chambers; and (c) unadjudicated allegations of perjury made by a defense lawyer in an unrelated case against Special Agent Impola. For reasons detailed below, the Court is satisfied that the 404(b) items identified by the government are admissible as "other acts" evidence, assuming entrapment is part of the case, as the defense contends it should be. The Court would admit the evidence subject to a limiting instruction. On the government's motion to preclude, the requests as to Richard Trask are moot, or not yet ripe, because neither side anticipates using the domestic

---

[2] In a few instances, the declarant appears to be a third party. *See, e.g,*, Chart at ECF No. 383-1, Lines 59, 244-245, 249-256. These third parties appear to be defendants in State Court on charges related to the underlying events of this case.

assault charges alleged against Trask at trial, and neither side has identified a social media post from Trask for the Court to review.  As to the other items, the government is entitled to the relief it seeks.

The Court provides additional detail on these rulings below.  As with all limine rulings, actual developments at trial may open the door to provisionally excluded evidence, or close the door to provisionally admitted evidence.  Accordingly, subject to the actual presentation and admission of the evidence at trial, the Court makes the following indicative rulings on the pending motions *in limine* discussed during the January 18th hearing and fully briefed by the parties.

### DEFENDANTS' OUT-OF-COURT STATEMENTS

The Court begins with the defendants' own statements.  The Court denies the defense motion to admit these statements and grants the government's motion to preclude their admission because these statements are hearsay; none of the cited hearsay exceptions in Rule 803 apply; and the rule of completeness is not implicated.

A. *The Defendants' Out-of-Court Statements are Hearsay When Offered to Support the Defense.*

Rule 802 of the Federal Rules of Evidence creates a general rule prohibiting the use of hearsay statements at trial subject to certain exceptions.  The term "'hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  FED. R. EVID. 801. Thus, as a threshold matter, the Court must determine whether the defendants' statements are hearsay as defined by rule.  They are when offered for truth to support the defense.

Only Defendant Fox contends that some of his own statements are not hearsay because he is not trying to offer them for the truth of the matter asserted.  (See generally Chart at ECF No. 373-1).  As an example, he points to several August 2020 statements wherein he refers to a

"Warden of the North." (Lines 189, 197, 199, ECF No. 383-1, PageID.2612-2613).[3] These statements, Defendant Fox claims, are not being offered for the truth of the matter asserted. There is no "Warden of the North" he says, but the statements are relevant because they demonstrate that Defendant Fox was engaged in "LARPing," or Live Action Role Playing, not part of a real conspiracy. He argues a similar non-hearsay use of the statements to claim he was not predisposed to commit the charged crimes. In a similar vein during the January 18th hearing, counsel for Defendant Fox argued that statements Defendant Fox made with a counterproposal to the idea of kidnapping Governor Whitmer are not hearsay because they are not offered for the truth of the matter asserted, but to suggest Defendant Fox's reluctance to embrace a kidnapping scheme until allegedly induced by the government.

These statements are hearsay because their relevance to Defendant Fox's entrapment defense, or otherwise, depends on the truthfulness of express or implied assertions embedded into these words. Simply uttering, "Warden of the North" is not very meaningful standing alone; its potential relevance depends on the truthfulness of Defendant Fox's assertion that it means he was role-playing. The same is true for statements offering alternatives to kidnapping. Making a counterproposal to kidnapping is potentially relevant to the existence of a kidnapping conspiracy; to Defendant Fox's decision to join such a conspiracy, or not; or to entrapment issues only if Defendant Fox's claim about what the assertion means is true. Without additional information and inference, the mere utterances are not relevant. But if permitted to use the utterances to support the truthfulness of the defense inference, the result would be a trial by hearsay, rather than through evidence presented by testifying witnesses subject to cross-examination.

---

[3] According to the Government, "Warden of the North" is the title of a character on the HBO series "Game of Thrones."

4

Accordingly, the Court concludes the defendants' own out-of-court statements, including those identified by Defendant Fox, qualify as hearsay under Rule 801 when offered to support the defense theory.

### B. Exceptions to the Exclusionary Hearsay Rule – Legal Standards Governing Rule 803(1), (2), and (3)

"As a general rule, hearsay is inadmissible in federal court." *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009) (quoting FED. R. EVID. 802), and the party seeking to introduce hearsay must show that it qualifies for an exception to that rule. *See United States v. Thomas*, 105 F. App'x 773, 779 (6th Cir. 2004); *United States v. Day*, 789 F.2d 1217, 1221 (6th Cir. 1986) (noting the proponent of a statement "bears the burden of proving each element of a given hearsay exception or exclusion"). "Rule 802 'is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; [or] his words might be misunderstood or taken out of context by the listener.'" *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) (quoting *Williamson v. United States*, 512 U.S. 594, 598 (1994)). "In contrast, 'these dangers are minimized for in-court statements' because of 'the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine.'" *Id.* (quoting *Williamson*, 512 U.S. at 598). There are some exceptions to the general rule barring hearsay, and the defense relies on three of them under FED. R. EVID. 803(1), (2), (3) to support admission of their own statements.

### i. Present Sense Impressions (Rule 803(1))

"The exception for present sense impression permits the introduction into evidence of a 'statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.'" *United States v. Price,* 58 F. App'x 105, 106

(6th Cir. 2003) (citing FED. R. EVID. 803(1)). Such statements do not trigger the concerns set out in *McDaniel* because "statements about an event and made soon after perceiving that event are especially trustworthy because 'substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation.'" *Navarette v. California*, 572 U.S. 393, 400 (2014) (quoting Advisory Committee's Notes on FED. R. EVID. 803(1)); *see also* 30B CHARLES ALAN WRIGHT & JEFFREY BELLIN, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6801, at 273 (2017 ed.) ("[H]earsay admitted under a Rule 803 exception is, or at least is supposed to be, quite reliable."). The exception, therefore, is of "limited scope." *United States v. Wills*, Case No. 18-0117 (PLF), 2018 WL 6716096, at *2 (D.D.C. Dec. 21, 2018).

### ii. Excited Utterance (Rule 803(2))

"A similar rationale applies to" the exception for excited utterances. *Navarette*, 572 U.S. at 400. Indeed, "[t]he factors for analyzing whether a statement is within the present sense impression exception and whether it is within the excited utterance exception are similar[.]" *Maggard v. Ford Motor Co.*, 320 F. App'x 367 (6th Cir. 2009). Under Rule 803(2), "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" is not excluded by the rule against hearsay. FED. R. EVID. 803(2). Accordingly, "[a] statement relating to a startling event may be admitted as an excited utterance where: (1) the event was startling enough to cause nervous excitement; (2) the declarant made the statement following the event, but before there was time to contrive or misrepresent; and (3) the declarant was still under the stress of the excitement when making the statement." *Price*, 58 F. App'x at 106 (citing *Hagins v. Warden*, 715 F.2d 1050, 1057 (6th Cir. 1983); FED. R. EVID. 803(2)). "Although there is significant overlap between the present sense impression and excited utterance exceptions, '[t]he most significant practical difference will lie in the time lapse allowable

between event and statement.'" *Harrell v Cracker Barrel Old Country Store, Inc.*, Case No. 6:19-cv-00185-GFVT, 2021 WL 5545953, at *2 (E.D. Ky. Sept. 30, 2021) (quoting advisory committee notes).

### iii. *Then-Existing Mental, Emotional, or Physical Condition (Rule 803(3))*

Finally, the exception in Rule 803(3) "allows witnesses to recount hearsay statements . . . when the statement's original declarant is expressing his or her then-existing state of mind." *United States v. Kilpatrick*, 7983 F.3d 365, 386 (6th Cir. 2015). It permits the introduction of a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." FED. R. EVID. 803(3).

To be admissible under the rule, "the statement must have been contemporaneous with the declarant's experience of the mental, emotional, or physical condition referred to when the declarant did not have 'an opportunity to reflect and possibly fabricate or mispresent his thoughts.'" *United States v. Mendez*, 303 F. App'x 323, 325-26 (6th Cir. 2008) (quoting *United States v. LeMaster*, 54 F.3d 1224, 1231 (6th Cir. 1995)). Accordingly, courts typically find that a party seeking to admit a statement under this hearsay exception must satisfy three threshold requirements:

> (1) The statements must be contemporaneous with the . . . event sought to be proven; (2) it must be shown that the declarant had no chance to reflect—that is, no time to fabricate or to misrepresent his thoughts; and (3) the statements must be shown to be relevant to an issue in the case.

*United States v. Jackson*, 780 F.2d 1305, 1315 (7th Cir. 1986); *see also United States v. Srivastava*, 411 F. App'x 671, 684 (4th Cir. 2011) (setting out a similar threshold requirement).

C. *Analysis – The Defendants Fail to Satisfy the Exceptions Set Out in Rule 803(1), (2),*
*and (3).*

The Court need not go page by page, line by line, through the defendants' chart. A few key observations preclude the application of any of the Rule 803 hearsay exceptions to defendants' own statements when offered to support the defense theory.

First, the exceptions in Rule 803(1) and (2) both contemplate a specific event or condition to be perceived: either a statement "describing or explaining" or "relating" to the event or condition. As the government points out, however, the defendants' statements detailed in their motion are not describing, explaining, or relating to an event or condition that was being perceived or while a defendant was under the stress of the condition. For example, defendants point to a July 7, 2020, conversation where a statement was made about kidnapping. Someone (either a defendant or someone else) responded they were "not cool with offensive kidnapping" and Defendants Franks and Harris agreed. (ECF No. 383, PageID.2569-2570). These statements are not describing, explaining, or relating to an event or condition that the defendants are perceiving; rather, they are expressing beliefs about the viability, advisability, or desirability of a particular tactic. Similarly, there has been no showing that any event was startling enough to cause excitement, or that the defendants were under any stress from any event when the statement was made.

Other statements fail to fall under the exceptions in Rule 803(1) and (2) for similar reasons. Line 63, for example, relates to a statement from Defendant Harris that "We are all on the same page, like hopefully [we] do not ever have to actually point our guns at another American." (Line 63, ECF No. 383-1, PageID.2592). Later at Line 70, Defendant Harris allegedly remarks "No Snatch and Grab. I swear to fucking God." (Line 70, ECF No. 383-1, PageID.2592). Defendants claim this statement relates to Defendant Harris' present sense impression of the topic being

discussed, that is, the alleged kidnapping plot. (*Id.*).  In the Court's mind, that stretches the rule too far.  It would essentially treat the heart of the dispute—whether there was a kidnapping conspiracy; whether the defendants joined it; and, if so, whether the government induced the decision without any predisposition on defendants' part—as the "event or condition" that defendants were perceiving as it evolved over the entire period of investigation.  If the exception permitted such a broad swath of hearsay, it would swallow the rule.

The Court does not see a meaningful difference under Rule 803(3).  That rule has been described as "essentially a specialized application" of the present sense impression exception. (Advisory Committee Note to FED. R. EVID. 803(3)).  "A person's 'then-existing' feelings or plans under [Rule 803(3)] can be characterized as an 'event or condition' under [Rule 803(1)]." WRIGHT & BELLIN, *supra* at § 6832, pg. 302.  But most of the statements the defense wants to use go well beyond a personal statement of what the declarant was feeling, planning or intending at a specific point in time.  Many of the standalone statements are more accurately characterized as a statement of preference or belief, which the exception does not permit.  Statements about "No Snatch and Grab. I swear to fucking God;" or "not cool with offensive kidnapping" express beliefs about particular means of responding to government action the defendants found offensive or improper. Their relevance depends on the truthfulness and reasons for such stated beliefs and preferences and the particular time and context in which they were uttered.  All that calls for normal cross examination, not trial by hearsay.

The Court recognizes "[t]he most significant statements admitted under Rule 803(3) arise in a subset of cases where the motive for action is disputed, such as when defendants claim a lack of criminal intent, entrapment, duress or self-defense.  In these circumstances, evidence of the defendant's state of mind becomes tactically important and legally relevant." WRIGHT & BELLIN,

*supra* at § 6833, pg. 303-04.  And this is what the defense claims it should be able to do here.  For example, one of the statements Defendant Croft seeks to introduce is a July 14, 2020, statement to a CHS that "I'm trying to rebuild and restore the country to what was intended."  (Line 10, ECF No. 383-1, PageID.2578).  Defendant Croft seeks to use this statement to show that his intent or plan was to restore the United States to its constitutional roots.  (*Id.*).  But to meaningfully fall within the exception of Rule 803(3) a statement must be tied to a specific time and place, in the heat of the moment with no time to reflect or fabricate.  WRIGHT & BELLIN, *supra* at § 6832, pg. 302 ("The immediacy that the present sense impression exception draws upon to ensure reliability is also found in statements that correspond to a 'then-existing state of mind.'").  Here the statement Defendant Croft seeks to introduce is one of generalized intention covering a broad spectrum of time and events, not to a particular state of mind at a particular point in time.  To adopt the broad view of the exception the defense pushes here would be to "devour[] the rule."  *United States v. Hernandez*, 176 F.3d 719, 727 (3d Cir. 1999).

When it comes to relevance of Defendant Croft's statement and others like it, the generalized statements are not relevant without additional information to contextualize the statement and test its meaning.  That is the proper function of in-court testimony, subject to cross-examination.  Perhaps the defense will be able to provide a foundation sufficient to demonstrate both relevancy and admissibility under Rule 803(1), (2), or (3) of a particular assertion but on the present record, the Court does not see it.[4]  Thus the Court finds defendants cannot use the exception in Rule 803(1), (2), or (3) to support admission of their own out-of-court statements.

---

[4] Perhaps the clearest example in defendants' chart of a genuine present sense impression or statement of then-existing mental condition is Line 46 of defendants' chart.  It is not a statement of any defendant, but rather of a CHS.  The CHS says: "I'm pissed" which on the face of things would seem to be a statement of the CHS's then-existing state of mind.  But the statement, standing alone, has no real relevance.  The defense says it is relevant because the reason the CHS was

    D. *The Rule of Completeness Does Not Provide an Independent Basis to Admit Defendants' Statement.*

Finally, the defense at least alludes to FED. R. EVID. 106 (sometimes called the rule of completeness) as an additional basis for admitting the defendants' statements.[5]  "The 'rule of completeness' allows a party to correct a misleading impression created by the introduction of part of a writing or conversation by introducing additional parts of it necessary to put the admitted portions in proper context." *United States v. Holden,* 557 F.3d 698, 705 (6th Cir. 2009).  However, in this Circuit, the rule of completeness does not provide an avenue for admission of otherwise inadmissible hearsay even if the Rule would otherwise apply.[6]  *Id.*; *United States v. Shaver*, 89 F. App'x 529, 532-33 (6th Cir. 2013).  *Cf. United States v. Adams*, 722 F.3d 788, 826-27 (6th Cir. 2013) (recognizing and applying *Holden* as the established law of the Circuit but suggesting the issue could be re-visited someday by the *en banc* Court).  In other words, the rule of completeness

---

"pissed" is because the group, including some or all defendants, failed to come up with a concrete plan of action.  But to establish that, other evidence is needed, most or all of which is itself precluded by the hearsay rule.  This illustration demonstrates the interplay of relevance and hearsay exceptions in this case.

[5] The rule is not expressly referenced on defendants' chart for any of the two hundred fifty-eight statements the defendants seek to admit.  The defense did briefly touch on Rule 106 in its motion, noting that the issue would need to be explored "once the government has announced the recordings and statements it will seek to present at trial."  (ECF No. 383, PageID.2556).  And in its brief responding to the government's motion, the defense expressly stated it has not advanced the rule as a basis for the admission of any of the statements on its list, though the defense reserved the issue should it come up for trial.  (ECF No. 390, PageID.2699).  The Court did, however, discuss the rule of completeness with the parties at the January 18th hearing both with respect to the Defendants' statements, and those of FBI agents or CHSs.  Accordingly, the Court discusses the rule here too.

[6] There is at least one other reason the Rule might not apply.  The statements at issue appear to be oral, not written, and some authority suggests the Rule applies only to written statements.  *See United States v. Allen*, 242 F. App'x 303, 308 (6th Cir. 2007) (noting that "by its terms Rule 106 applies only to 'writing[s] or recorded statement [s].'").  *But see United States v. Ford*, 761 F.3d 641, 652 (6th Cir. 2014) (quoting *Holden* for the proposition that Rule 106 was "extended to oral statements through interpretation" of FED R. EVID. 611(a)).

"is not designed to make something admissible that should be excluded." *United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982).

Even if there were a pathway to apply the rule of completeness, the Court does not see it here, at least yet and not for the purposes the defense suggested it might apply during the hearing. Moreover, the rule—when it applies—is for both sides.  The government has indicated, for example, that the rule of completeness is implicated in a text conversation between Special Agent Chambers and a CHS wherein Agent Chambers allegedly remarks "[t]he mission is to kill the governor specifically."  The defense says this shows the government was calling shots and pushing an agenda.  But the government states that the complete conversation demonstrates this is a question from Agent Chambers, rather than a directive.  Moreover, the government says the conversation dealt with a different Governor in a different State; not Governor Whitmer of Michigan.  Assuming that's correct, the government may well be able to use Rule 106 to prevent a misleading impression, though if what the government says is true, the conversation might not be relevant to this case at all.  In any event, the Court sees this potential use of Rule 106 as fundamentally different than the purposes for which defense counsel want to use the rule, which would be to explain or minimize disconnected oral statements of the defendants made on different occasions and in different contexts.

For all the above reasons, then, the Court finds the government's motion in limine (ECF No. 368) should be granted to the extent specified in this Order and the portion of the defense motion (ECF No. 383) seeking to admit the defendants' out-of-court statements denied.

### GOVERNMENT AGENTS' STATEMENTS

The second tranche of out-of-court statements listed in the defense's chart consists of statements originating from FBI special agents.  These are different than statements coming from

confidential human sources, which the Court discusses next.  The defense says some of the agents' statements do not count as hearsay because they are not offered for truth.  To the extent those statements are offered for truth, the defense says they are admissible as party admissions under Rule 801(d)(2)(C) and (D) of the Federal Rules of Evidence.[7]

Rule 801(d)(2) creates a series of exclusions to the definition of hearsay for statements that are considered "an opposing party's statement."  Under Rule 801(d)(2)(D), an admission by a party-opponent can be a statement "by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]"  Unlike its counterpart, Rule 801(d)(2)(C), Rule 801(d)(2)(D) does not require that a declarant be "authorized by the party to make a statement" before the statement can be attributed to the party.  *Nekolny v. Painter*, 653 F.2d 1164, 1171-72 (7th Cir. 1981) (noting that Rule 801(d)(2)(C) requires authority to speak but 801(d)(2)(D) does not); *see also* FED. R. EVID. 801(d)(2)(D) advisory committee's note suggesting that subsection D can cover statements that are "damaging" to employers because there is no requirement that the declarant-employee be authorized to speak).  Instead, Rule 801(d)(2)(D) requires only that (1) the declarant is the party's agent or employee at the time the statement is made, and (2) the statement is "on a matter within the scope" of the declarant's agency or employment relationship.

There has been some debate whether Rule 801(d)(2)(D) reaches government agents.  The government points to a line of cases suggesting that it does not, the reason being that agents and employees of the government are supposed to be "disinterested" and are traditionally "unable to bind the sovereign."  *United States v. Kampiles*, 609 F.2d 1233, 1246 (7th Cir. 1979); *see also United States v. Martinez-Saavedra*, 372 F. App'x 463, 464-65 (5th Cir. 2010) (citing *United*

---

[7] The defense further says some statements fall under Rule 804(b)(3)'s exception for statements against interest.  It is not necessary to work through this possibility because Rule 801(d)(2)(D) is sufficient to resolve the matter.

*States v. Garza*, 448 F.3d 294, 298-99 & nn.14-16 (5th Cir. 2006), and declining to apply Rule 801(d)(2)(D) to statement of government agent).  Only rarely will agents' statements be admissible under this rule, the government says, and in much different circumstances than those present here. *See United States v. Kattar*, 840 F.2d 118, 130-31 (1st Cir. 1998) (indicating the Department of Justice, rather than the entire federal government, is a party-opponent of a defendant); *United States v. Ballou*, 59 F. Supp. 3d 1038, 1073-75 (D.N.M. 2014) (same); *see also United States v. Bakshinian*, 65 F. Supp. 2d 1104, 1106 (C.D. Cal. 1999) (party-opponent rule applies to government prosecutors); *United States v. Yildiz*, 355 F.3d 80, 81-82 (2d Cir. 2004) (distinguishing statements originating from government attorneys from other employee statements).  Indeed, those courts have been inclined not to apply Rule 801(d)(2)(D) at all, and instead use the exception found in Rule 801(d)(2)(B) as statements of which the Department of Justice has "manifested its belief in the substance[]" by, among other things, submitting them to a federal court to show the truth of the matter therein.  *Kattar*, 840 F.2d at 131; *see also* Wright & Bellin, *supra* at § 6776, pg. 200-01 (noting that "courts have been unsympathetic to arguments that police officers . . . constitute agents of the government" but concluding "[c]ourt's, however, may permit the admission of more formal statements proffered by police or government attorneys to courts as adoptive admissions . . . under Rule 801(d)(2)(B).").[8]

The Sixth Circuit has not commented, at length, on the issue.  But in *Branham v. United States*, 97 F.3d 835, 851 (6th Cir. 1996), the Sixth Circuit wrote that "the federal government is a party-opponent of the defendant in a criminal case."  That statement, albeit based on a government concession, has been cited by outside courts as indicative of a broad view in this Circuit of the

---

[8] As one court has commented, "judicial interpretation of Rule 801(d)(2)(D)" as applied to government agents "has actually been colored by Rule 801(d)(2)(B)."  *Bagcho*, 151 F. Supp. 3d at 68.

party-admission rule applied to government agents. *See, e.g.*, *United States v. Bagcho*, 151 F. Supp. 3d 60, 68 (D.D.C. 2015)). Commentators have also expressed doubt about the continued validity of restricting Rule 801(d)(2)(D)'s application to statements from government agents. CHRISTOPHER B MUELLER & LAIRD C. KIRKPATRICK, 4 FEDERAL EVIDENCE § 8:56 (4th ed. May 2021).

The Court is mindful of the well-founded cautions in *Kampiles* and other authority against reading Rule 801(d)(2)(D) too broadly. Of course, the Court is bound by circuit authority, including the *Branham* decision. Applying that decision, and looking at the language of the rule, the Court believes the statements of the government agents, made within the scope of their duties as FBI agents on a matter within the scope of their official duties are admissible for the defense under Rule 801(d)(2)(D). Relevancy, again, is a separate issue and the government says there is good reason to believe statements made to informants are irrelevant to an entrapment defense or for any other purpose. *Cf. United States v. White*, 815 App'x 27, 30-31 (2020) (finding no abuse of discretion where, in criminal case involving entrapment defense, district court excluded as irrelevant evidence concerning genesis of government's investigation). And to the extent some of the agents' statements might come in, the government says Rule 106 may be implicated to prevent the jury from coming away with a misleading impression. The Court need not make a call on relevancy or Rule 106 now. But the Court is satisfied that the hearsay rule is not a barrier to the out-of-court statements of the sworn agents working on this case.

Accordingly, the Court grants this portion of the defendant's motion.

### *CONFIDENTIAL HUMAN SOURCES' STATEMENTS*

The third and final batch of statements the defense seeks to admit are those statements originating from CHSs. As with the government agents, the defense says that some statements

15

from the CHSs are not offered for truth and other statements are admissible as party admissions. The record in this case demonstrates that the CHSs were closely monitored, the defense says, and the Sixth Circuit's decision in *Branham* holds that statements from informants may be admissible under Rule 801(d)(2)(D). The government responds by arguing that the government's relationship with at least one of the informants was "tenuous." For example, it contends one CHS acted as a "double agent" against the government's interests. It seeks to distinguish the *Branham* decision on this basis, and otherwise limit the case. The Court concludes that except for a narrow category of statements where the CHSs acted as a mere conduit for the words of the government agents, the statements from the CHSs are inadmissible hearsay. Such statements come in, if at all, only when the declarant is testifying in Court.

Begin with whether the CHS statements are hearsay at all. The defense contends some of the statements of the CHSs are not hearsay because the significance and relevance of the statements lies not in the truth of the matter asserted, but rather in the fact that someone made the statements. (ECF No. 383, PageID.2560; ECF No. 398-1, PageID.2779). The defense again cites *Branham*. There the Court of Appeals found that conversations between a confidential informant and the defendant were not inadmissible hearsay because the defense counsel was "attempting to offer the parties' conversations as evidence of [the defendant's] state of mind in support of his entrapment defense." *Branham*, 97 F.3d at 851. The Court finds *Branham* distinguishable on its facts for hearsay purposes. As the Court commented above in examining the defendants' own statements, it appears to the Court that the entire relevancy of the statements depends on the truth of the matter asserted. To the extent the statements will not be offered for the truth, additional testimony and evidence will be necessary to place the statements into context and establish their relevancy which

will require more out-of-court statements and result in a trial by hearsay. Thus, the Court would find the CHS statements irrelevant if they were not being offered for the truth.

The main pathway that the defense seeks to utilize to admit the CHSs' statements is the party-admission exception found in Rule 801(d)(2)(D). The defense says the statements are admissible under a straight-forward application of *Branham*. *See United States v. Rodriguez-Landa*, Case No. 2:13-cr-00484-CAS-1, 2019 WL 1755518, at *4 (C.D. Cal. Apr. 19, 2019) ("Only the Sixth Circuit has permitted the statements of a government informant to constitute a party admission under Rule 801(d)(2)(D)."); *see also United States v. Reed*, 167 F.3d 984 (6th Cir. 1999) (noting that co-conspirators cooperating with the government "were acting as agents of the government" and commenting that the Sixth Circuit "has interpreted a 'matter within the scope of the agency' broadly enough that 'statements' of [the cooperating co-conspirators] would be admissible against the government.'").[9]

The *Branham* court's application of the rule to informants stands apart from the decisions of other courts and the insights of commentators. *Yildiz¸* 355 F.3d at 82; *Rodriguez-Landa*, 2019 WL 1755518, at *4; MUELLER & KIRKPATRICK, *supra* at § 8:56 ("Usually statements by informants should not be viewed as admissions by the government. Unlike the more usual government agents and employees, the scope of an informant's responsibility is hard to define. Moreover, informants are expected to deal in and report rumor, speculation, suspicion, and opinion, and often they themselves are implicated in criminal ventures and labor under a mix of motives that is hard to unravel. Informants more closely resemble independent contractors than typical agents."). These

---

[9] The court in *Reed* nevertheless went on to conclude the district court did not commit plain error in excluding the recorded conversations. The informants had not made "statements" signaling agreement with the defendant. Rather, responses of "yeah and "I understand" were merely utterances indicating attentiveness and participation in the conversation. *Reed*, 157 F.3d at 987-88.

discussions provide reasons to be cautious in the application (and any expansion) of *Branham*.[10]
After all, informants are basically independent contractors, not agents or employees.   And
statements of independent contractors are not ordinarily treated as party admissions of the party
they serve.  *See* MUELLER & KIRKPATRICK, *supra* at § 8:56 (noting that informants "more closely
resemble independent contractors than typical agents."); *see also Dora Homes, Inc. v. Epperson*,
344 F. Supp. 2d 875, 885 (E.D.N.Y. 2004) (quoting *Weinstein's Federal Evidence*, 801.33[2][b]
at 801-74 (2d ed. 2004) for the proposition that "statements of a party's independent contractors
typically do not come within Rule 802(d)(2)(D).").  Moreover, as the court in *Reed* would later
note, "[t]he fact that the *Branham* court held that 'anything said' by the informant was within the
scope of the agency does not imply that 'anything said' would be admissible."  *Reed*, 167 F.3d at
989 n.4.

The Court believes the best reading of *Branham* and *Reed* is that Rule 801(d)(2)(D) covers
only those situations where an informant's words and actions are directly and expressly authorized
by a government agent.  Thus, where the informant's statement merely regurgitates words that
were fed by a government agent, then (provided the offering party can establish relevance) the
statement might be admissible.  During the January 18th hearing, the Court referenced the film
THE TRUMAN SHOW (Paramount Pictures 1998) as a simple illustration.  In one memorable scene,
the character Marlon tries to convince the main character Truman Burbank that everything and
everyone he knows is not part of an elaborate façade.  Marlon who is in fact in on the reality-
television charade, recites an emotional script fed to him, word-for-word, by the producer Christof

---

[10] The Court notes that the defendant in *Branham* took the stand and testified in his case.  He was
testifying on the witness stand when his counsel sought to admit the conversation with the
informant.  That alone provides a cautionary clue to how broadly the Court should apply or expand
*Branham*.

to dissuade Truman of his suspicions.  If they were true, Marlon argues, then he (Truman's best friend) would have to be a part of the ruse too. The scene culminates with the line: "And the last thing I would ever do is lie to you."

Scripted words such as these, which are directly authorized and closely supervised by government agents fairly fall within the party-opponent exception.[11]  Other statements from the CHSs, even if made in the scope of their role as informants, do not.

### GOVERNMENT'S MOTION IN LIMINE TO ADMIT OTHER ACTS EVIDENCE

The government separately moves *in limine* to admit evidence of three defendants' criminal history or other prior bad acts.  (ECF No. 370).  The government seeks to admit this history under FED. R. CRIM. 404(b) as "other acts" evidence to establish the defendants' criminal predisposition, which will be part of the government's case rebutting an anticipated entrapment defense.  The specific incidents the government seeks to introduce are:

1. Defendant Croft's 1994 charges and convictions for conspiring to steal cars and burglarize an apartment complex in Newark, Delaware.

2. Defendant Croft's April 1997 guilty plea to possessing a firearm during the commission of a felony.

3. Defendant Franks' 2013 conviction for Home Invasion, Second Degree.

4. An August 14, 2020, incident wherein Defendant Harris sawed the barrel off his 12-gauge pump-action shotgun, making it a prohibited weapon.

5. Defendant Franks and Harris' September 2020 alleged conspiracy to manufacture unregistered "ghost guns" to sell to a convicted felon.

---

[11] Few, if any, such statements appear on the defendants' chart so far.

(ECF No. 370, PageID.2442).  Defendants Croft (ECF No. 380), Franks (ECF No. 387) and Harris (ECF No. 389) have responded in opposition.  The Court grants the government's motion.

Under FED. R. EVID. 404(a), evidence of a person's character trait is not admissible to prove that on a particular occasion the person acted in accordance with that character or trait. Likewise, under Rule 404(b)(1), evidence of other acts is "not admissible to prove a person's character in order to prove that on a particular occasion the person acted in accordance with the character." Rule 404(b)(2), however, provides that such evidence may be admitted for another purpose, such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Rule 404(b)(2) is thus often referred to as a rule of inclusion rather than exclusion. *See, e.g., United States v. Dunnican*, 961 F.3d 859, 874 (6th Cir. 2020) (referring to Rule 404(b)(2) as one of inclusion).  However, "[b]efore evidence of such other crimes, wrongs, or bad acts may be introduced, a district court must assure itself that: "(1) the 'other act' actually occurred, (2) the evidence is offered for a permissible purpose, and (3) its probative value is not substantially outweighed by unfair prejudice." *United States v. Carter*, 779 F.3d 623, 625 (6th Cir. 2015) (citing *United States v. De Oleo*, 697 F.3d 338, 343 (6th Cir. 2012)).

The government says this evidence of defendants' criminal histories or other wrongful behavior is probative of their criminal predisposition, a key issue on entrapment.  (ECF No. 370, PageID.2445).  And in *United States v. Blankenship*, 775 F.2d 735 (6th Cir. 1985), the Sixth Circuit pointed out that this is a "permissible use." *Id.* at 739 ("A defense of entrapment is often countered by evidence of other crimes and wrongs in order to show the defendant's predisposition to commit the offense or offenses charged."). Defendant Franks says the government "hardly needs this evidence" and so Rule 403 militates against admission.  But to the contrary, if the defense satisfies its initial burden of putting entrapment in play, the burden will be on the government to

demonstrate the defendants' predisposition. Criminal history is very much a factor in this calculus. *Cf. United States v. McLernon*, 746 F.2d 1098, 1112 (6th Cir. 1984) (noting, in case finding entrapment as a matter of law, the "government presented no evidence of the character or reputation of [the defendant], including any prior criminal record.").

To ensure that the introduction of the evidence will not run afoul of Rule 404(b)(1), evidence of the other crimes, however, must be "substantially similar to the offenses charged." *Blankenship*, 775 F.2d at 739. In subsequent decisions, the Sixth Circuit has "rejected a 'narrow' interpretation of the similarity required for a prior conviction to support predisposition for entrapment." *United States v. Wilson*, 653 F. App'x 433, 438 (6th Cir. 2016). It has "'decline[d] to endorse [a] narrow and hyper technical view. . . . Predisposition evidence must be based on conduct near enough in kind to support an inference that the defendant's purpose included offenses of the sort charged, although it is not necessary that the past conduct be precisely the same as that for which the defendant is being prosecuted.'" *Id.* at 438-39 (quoting *United States v. Al-Cholan*, 610 F.3d 945, 951 (6th Cir. 2010) (second alteration and ellipsis in *Wilson*)).

The "other acts" evidence the government seeks to introduce satisfies the above framework. In *Wilson*, for example, the government sought to establish predisposition where the two defendants—Davis and Wilson—were charged with conspiring to murder a federal employee as part of a drug robbery. At trial "the government presented evidence that Davis had previously shot a man from behind during a neighborhood scuffle and participated in an armed home invasion during which he or a co-defendant pointed a shotgun at a six-year-old victim. Wilson had convictions for domestic violence, unarmed robbery, and aggravated drug trafficking." *Id.* at 438. The Sixth Circuit found this to be "persuasive evidence" that the defendants were predisposed to commit violence, robbery, and drug-related offenses. The same holds true here. In a charged

conspiracy to kidnap Michigan's Governor from her home, the evidence the government seeks to introduce would show the defendants were predisposed: to commit home invasion; to use violence; and to use guns in an unlawful way.  This is similar enough, and the defense's attempt to distinguish the specific details of their prior history from the allegations is unavailing.  The issues go to weight, but not admissibility, assuming entrapment is in the case.

The remaining defense arguments fare no better.  Defendant Croft contends the fact he received a pardon for his earlier offenses should render the convictions inadmissible.  (ECF No. 380, PageID.2544-2545).  Defendant Franks makes a similar argument regarding a juvenile conviction. But Rule 404(b) is not limited to convictions. It also includes other "wrongs" or "acts." *United States v. Kelley*, 981 F.2d 1464, 1472-73 (5th Cir. 1993). Thus, the fact that the convictions were expunged does not place them outside of Rule 404(b)(2).  Defendants Franks and Croft also both argue the other acts evidence is too temporally remote to be admissible.  It is true not all of the other acts evidence is especially close in time to the events of this case.  The span of time in Defendant Crofts case is especially remote—approximately twenty-five years.  In *Blankenship*, the Sixth Circuit cited *United States v. Ring*, 513 F.2d 1001, 1005 (6th Cir. 1975), for the general proposition that evidence offered for a permissible purpose under Rule 404(b)(2) must be both "substantially similar" and "reasonably near in time to the offense for which the defendant is being tried." *Id.* at 739.  But the Court did not reach the temporal issue in its decision, finding only that the evidence the government sought to use did not satisfy the substantial similarity requirement. *Id.* at 740.  *United States v. Zelinka* did not involve an entrapment defense, and the Court of Appeals concluded the government had not shown the relevance or the necessity of the other acts evidence.  862 F.2d 92, 99 (6th Cir. 1988).  The other case cited by Defendant Croft, *United States v. Marren*, did involve entrapment but it was the defendant, not the government, who sought to

introduce evidence on predisposition (or the lack thereof) namely in recorded comments he made

two years after the events leading to his charges.  The Seventh Circuit did not discuss Rule 404(b)

in its decision and found the post hoc comments to be "too remote to have any reasonable bearing

upon predisposition."  890 F.2d 924, 931 (7th Cir. 1989).  The procedural posture of this case is

much different and the Court is satisfied the other acts evidence is permissible for the purposes in

which the government seeks to use it.[12]

### *EVIDENCE AND IMPEACHMENT REGARDING FBI AGENTS*

The final motion discussed at the hearing is the government's motion *in limine* to exclude

evidence on certain matters with respect to Special Agents Trask, Chambers, and Impola—three

FBI agents the government does not presently intend to call in its case in chief.  (ECF No. 369).

The government seeks to exclude the evidence under Rule 403 and further to prevent impeachment

(should the defense call the agents as part of its case) on the topics.  The government summarizes

its concern as follows:

> The government does not intend to call [Special Agents] Chambers,
> Impola, or Trask as witnesses.  But, a defendant might call them for
> an ostensibly proper purpose – for instance, to ask them "Did you
> direct [CHS] Dan to entrap my client? "When the witness gives an
> adverse response, counsel might attempt to impeach them by asking
> if they hoped to make money off this case, had been accused of
> perjury, beat a spouse, or disliked the last president.

(ECF No. 369, PageID.2438).  The defense responds that it should be permitted into ask Special

Agent Impola about his past testimony because it is relevant to his truthfulness.  Similarly it insists

it should be permitted to asks Special Agent Chambers about any financial motives he may have

had in the case.  (ECF No. 388).  The Court grants the government's motion.

---

[12] As the government recognized at the hearing, the other acts evidence likely would not be
admissible without the entrapment defense in play.

Rule 402 of the Federal Rules of Evidence creates a general rule of admissibility for relevant evidence.  Evidence is relevant under Rule 401 if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the evidence."  Even relevant evidence of any type must still be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Rule 607 provides that "[a]ny party, including the party that called the witness, may attack the witness's credibility."   However, a party "cannot impeach a witness that it knows will give adverse testimony merely to get in evidence that would be otherwise inadmissible." *United States v. Moore*, 495 F. App'x 680, 686 (6th Cir. 2012).

A.     *Special Agent Trask*

The Court begins with the evidence concerning Special Agent Trask whose employment was terminated by the FBI last year.  The government seeks to exclude under Rule 403 evidence related to a domestic violence assault tied to Special Agent Trask and a social media post Special Agent Trask may have made regarding a former President.  Neither side plans to introduce evidence regarding the domestic assault at trial, and so that aspect of the government's motion is moot.  Furthermore, neither side has identified a specific social media post from Agent Trask.  The government says it learned of a post from local news media, but does not have the post in its possession. The defense also has not identified a social media post it seeks to use at trial.  Thus the government's request as this juncture is not yet ripe.

B.     *Special Agent Chambers*

The government next seeks to preclude the introduction of evidence regarding a security consulting firm ("Exeintel") linked to Special Agent Chambers.  According to the government the

evidence has limited probative value—there is nothing to indicate Chambers had a financial stake in the outcome of this case—and it would confuse the issues and prolong trial.  The defense sees things differently and argues that the evidence, and questions about it, survive Rule 403.  The government has the better argument.

The Court has reviewed the materials attached to the defense brief.  They demonstrate a business proposal of some kind that involves internet vetting that has nothing to do with what's at issue in this case.  The proposal is clearly in its exploratory stages, and the best read is that there is a desire to become a sub-contractor to an existing security company in one narrow niche.  The entire thrust of the proposal in Exhibit A is forward looking and hypothetical without any concrete event or client in view.  Moreover, there's no indication from the proposal that Chambers is trying to leverage his existing role as FBI agent, or the resources of the FBI more broadly, in any way.  Exhibits B and C present a broader picture that suggests a desire to grow into a full-scale business—but only after Chambers leaves the FBI.  In fact, it reflects to his potential capital source that he's already worked to make sure the FBI's work will not be disrupted by his departure.  Chambers' resume is a fairly plain summary of his work experience with very basic information about the kind of work he's been doing.  The resume doesn't list anything that has to do with this case at all.

Overall, the relevance of these materials and the subject matter they pertain too is minimal, if any.  The potential prejudice of delay and distraction substantially outweighs whatever evidentiary value it might have.

C.     *Special Agent Impola*

The defense seeks to ask Special Agent Impola under Rule 608(b) about previous testimony in an unrelated case that led to a defense attorney to make a complaint about perjury.  Rule 608(b)

permits a court to allow a party to question a witness on cross-examination about specific instances of conduct that are probative of the witness's character for truthfulness.  On this basis, the defense argues that it should be permitted to ask Special Agent Impola about perjury allegations that have been lodged against him.  (ECF No. 264-6).  The government says this evidence is inadmissible under Rule 403 because it will needlessly lengthen trial, confuse the jury, and misdirect from the issues in this case to unrelated policy and political questions regarding the FBI.

The Court finds that the evidence regarding Special Agent Impola's prior testimony is inadmissible under Rule 403. The issues referenced in the complaint against the agent inherently involve mixed questions of fact and law, and the Court sees little that is probative of a character for truthfulness.  What little value there is in the evidence is substantially outweighed by the chance of confusing the jury and needlessly lengthening trial into a minitrial on public perceptions of the FBI.

## CONCLUSION

**ACCORDINGLY, IT IS ORDERED:**

1. The Government's Motion *in Limine* to Preclude Defendants' Statements (ECF No. 368) is **GRANTED.**

2. The Government's Motion *in Limine* to Exclude Evidence and Preclude Improper Impeachment (ECF No. 369) is **GRANTED.**

3. The Government's Motion *in Limine* to Admit Other Acts Evidence (ECF No. 370) is **GRANTED.**

4. The Defense Motion Regarding Admission of Out-of-Court Statements (ECF No. 383) is **GRANTED** to the extent the Defense Seeks to admit the statements of FBI Agents

and CHSs (but only when acting as a conduit for an agents' words) under Rule 801(d)(2).  The motion is **DENIED** in all other respects.

5.  The motions of Defendants Franks (ECF No. 397) and Fox (ECF No. 398) seeking leave to file reply briefs are **GRANTED** and the reply briefs (ECF Nos. 397-1 and 398-1) are deemed as filed instanter.

**IT IS SO ORDERED.**


Dated: <u>   February 2, 2022   </u>      <u> /s/ Robert J. Jonker                    </u>
                                                ROBERT J. JONKER
                                                CHIEF UNITED STATES DISTRICT JUDGE