IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

THE UNITED STATES OF AMERICA,   Case No 1:20-CR-183-RJJ

        Plaintiff,   HON. ROBERT J. JONKER
v.   Chief District Court Judge

ADAM FOX, et al.

        Defendants.

---

**DEFENDANT ADAM FOX'S MOTION IN LIMINE
REQUESTING ORDER FOR PRODUCTION OF
INFORMATION REGARDING CONFIDENTIAL HUMAN SOURCES**

---

Now Comes Defendant Adam Fox, by and through Counsel, Christopher M. Gibbons of the Law Offices of Gibbons & Boer, and requests this Honorable Court to order the production of specific information with respect to specific Confidential Human Sources. In support of this Motion in Limine defendant states as follows:

Adam Fox is charged with conspiracy to kidnap the sitting Governor of Michigan, Gretchen Whitmer, in violation of 18 United States Code §1201(a). In addition, Adam Fox, is charged with conspiracy to obtain a weapon of mass destruction in violation of 18 United States Code §2332(a)(2)(A) and (C) in furtherance of kidnapping. The Government has advanced in the Superseding Indictment that Defendants' alleged activities were "domestic terrorism" within the meaning of 18 USC §2331(5).  The evidence against Adam Fox consists of recordings of meetings, recordings of conversations during automobile travel, recordings of telephone conversations,

1

social media posts, direct messages (both encrypted and un-encrypted), surveillance videos, and photographs.

During the investigation of these alleged crimes the Government acknowledges the use of nearly a dozen paid confidential undercover informants, most of these individuals being classified as Confidential Human Sources (CHS). A CHS is an individual who is not a member of law enforcement, but a civilian who is employed by the Government to engage in investigative activity on behalf of the Government. In this case the CHSs were working for the Federal Bureau of Investigation.

Defendant has repeatedly requested specific information with respect to the CHS informants that were directly involved in the facts and events leading to his arrest in this case.

Specifically:

1. CHS 99252 (Dan), the "XO" of the Wolverine Watchmen, who had contact with Adam Fox, either in person, by telephone, or text for nearly every day from June 14, 2020 until the date of Adam's arrest on October 7, 2020. CHS Dan attended every FTX that Fox attended, transported Fox in his special order, brand new truck, on both of the alleged "recons" of the Governor's property, and CHS Dan was the informant who was wearing the recording device that captured 38 of the 52 audio files the Government has disclosed for use at Trial with respect to Adam Fox.

2. CHS 97067 (Steve) was a fictional President of the "National Board Member" of the fictional "National Patriot III% Militia", the Head of the fictional "Wisconsin National Patriot III% Militia" and Adam Fox's ostensible "commanding officer" in this fictional organization. It was CHS Steve who informed Adam Fox that he had been elected by the "National Board" to lead the fictional Michigan 3% Patriot Militia. CHS Steve planned and attended every meeting, FTX event, and the "night recon" overt act referenced in the Superseding Indictment. CHS Steve was the informant who was wearing the device that captured 9 of the 52 audio files the Government has disclosed for use at Trial with respect to Adam Fox.

3. CHS 99802 (Jenny) was the "National Board Member" of the fictional "National Patriot III% Militia", head of the fictional "Tennessee National Patriot III% Militia", and a "superior officer" to Adam Fox. CHS Jenny assisted CHS Steve

2

and CHS Dan in planning and preparing for every meeting, FTX event, and the "night recon" overt act event the Superseding Indictment.

Generally, the Government is not required to give the Defendant any advance notice of the witnesses that it intends to call at trial, and it is not obligated to turn over any information regarding a confidential human source substantially in advance of their testimony. In the present case, the Government has made clear that it does not intend to call certain witnesses at trial and that it does not intend to turn over the requested information for individuals that it does not intend to call at trial. The Government has indicated that it will be turning over limited information with respect to CHS Dan only.

To date, Defendant Adam Fox has received nearly 7 terabytes of discovery materials, but to date has not received any disclosure regarding the payments, reimbursements, "awards" or other renumerations provided to any of the CHS's above. [1] Trial commences in this case in twelve days. Undersigned has received no disclosure of the payments made to these three individuals, what the payments were for, and nothing about what, if any, admonishments were given to them by the FBI prior to them being collectively unleashed and set upon Adam Fox.

Adam Fox has a Fifth Amendment right to Due Process and a Sixth Amendment right to confront the "witnesses" against him. In the present case the Government has developed a pattern of involving Special Agents and confidential informants for significant investigative purposes, disclosing evidence they have acquired or developed against Adam Fox, only to obscure their involvement by not calling them as a witness in the effort to prosecute him at trial. The Government should provide complete and timely disclosures of fees and any other considerations afforded to

---

[1] The Government has disclosed screenshots of a receipt for a $4300 computer and a smart watch for CHS Dan and a screenshot of CHS Steve requesting $1150 for reimbursement for pizza, hotel, gas, and drinks. If there is any other information in the voluminous disclosure undersigned has not come upon it.

3

the three identified informants when the information goes directly to their credibility, whether they are called by the Government or by the Defendant.

This is especially true of any admonishments given to the CHSs by the FBI. The admonishments relate to activity and behavior that a CHS may engage in, or is authorized to perform, as he or she is tasked by the handling supervising agents throughout the investigation. The Government referred in a recent filing to facts involving CHS Steve having violated his admonishments, ECF No. 396, Page ID 2729. The admonishments, and the alleged violations, are factually driven and relate directly not only the credibility of the witness, but also bears on the integrity of the Government's case in total. While compensation is a simple matter and can be picked up on short notice at trial, counsel is concerned that information concerning admonishments of the referenced CHS is not such a simple matter. Identifying circumstances and occasions upon which the CHS may have violated their admonishments is a task that would require some time. Certainly, more time than would likely be available in the midst of a trial with an empaneled jury.

The Government has disclosed an enormous volume of recordings and evidence. It may be difficult, if not impossible, for counsel to effectively use the requested information if delivered by the Government during the trial. The Court is advised that should the Government elect to not call these CHSs, Adam Fox intends to call them in his case-in-chief and examine them pursuant to FRE 611(c)(2).

The Defendants have worked diligently for over a year to prepare for trial, only to be left without information that is critical to an effective confrontation of government paid informants at trial. Exculpatory and impeachment material must be produced in time for effective use at trial. *United States v. Tyson*, 2020 U.S. Dist. LEXIS 7660, *7-8, 2020 WL 255533 (6th Cir).

4

Defendant Adam Fox is prepared to proceed to trial, but the Government has not provided the requested information regarding these informants, and it should have been provided to the Defendant by now, days from the commencement of the trial.  The information sought does not compromise the safety of the individual informants. The Defendant is requesting the records of what and how these informants were paid by the FBI and what specific terms and admonishments were applied to their activities as they performed their work for the FBI in the investigation of Adam Fox and others during the summer of 2020.

Even if the Government does not call a CHS in question as a witness, the Defendant still has the right to do so, and the information the Defendant is requesting goes directly to the motives and credibility of that witness.

> If Defendant calls the informant as a witness, the Defendant would be entitled to all Giglio material in the informant's file. The rule in Giglio is not limited to evidence about the Government's witnesses. Rather, the Court in Giglio extended Brady disclosures to credibility evidence about any witness in the case.

*United States v. Thomas,* 2016 U.S. Dist. LEXIS 163192, *10, 2016 WL 6948444 (7th Cir).  The requested CHS information, specifically the amounts they were paid, the reasons for the payments, i.e., reimbursement, payments for lost wages, or otherwise directly effects how the jury should consider the testimony of that witness. It is a common practice for considerations to be offered other than the payment of money, such as leniency or immunity from prosecution. As a result, any agreements made with any of the CHS above is material evidence and should be provided to Defendant Adam Fox.  The Sixth Circuit Pattern Jury Instruction 7.06 assumes that the Defendant has been provided with the amount and nature of an informant's compensation stating in part:

> (1) You have heard the testimony of_____. You have also heard that he received money [or_____] from the government in exchange for providing information.
>
> Use Note The bracketed language in paragraph (1) should be used when some consideration other than money has been given.

The disclosure of this type of information is presumed. Defendant Adam Fox is entitled to the prompt disclosure of this information. The disclosure of the information will not compromise the safety of the individual informants involved, nor will it otherwise compromise the way the FBI conducts undercover investigations.  Collectively, the first three informants above were directly involved in every aspect of this case, every meeting, every FTX and every significant event from the day the investigation commenced in March of 2020 until the Defendant's arrests on October 7, 2020.  CHS Dan had contact of some kind with Adam Fox every day, sometimes dozens of text messages a day. CHS Steve and CHS Jenny were the genesis of the fictional "National Patriot III% Militia" that Adam Fox joined, and his "membership" in this group is now the basis for the Government's allegation that his conduct is "domestic terrorism".

And the Defendant's request cannot be characterized as a "fishing expedition".  As to one witness, CHS Steve, the Government has admitted that there exists a "nondisclosure agreement". *See* Kessler Letter, Ex. A.  Somehow the Government asserts that while CHS Steve's lawyer didn't know about the agreement, he doesn't believe that the agreement impacted CHS Steve's decision to do exactly what the agreement apparently required: not to speak to others about the case.  To the extent that the Government has contracted to make a witness unavailable to the defense during the preparation of this case for trial, the defense in entitled to explore this on cross examination and is entitled to a copy of the agreement.

This nondisclosure agreement is particularly concerning considering the Government's prior thinly veiled threat to prosecute CHS Steve should he cooperate with the defendants at trial.  *See* ECF No. 419, PageID.2885 (stating that "Second, Steve has already risked prosecution to help the defendants avoid accountability.  With use immunity, he could falsely testify that he deliberately attempted to entrap them.  If the defendants were acquitted based on such fabrication, the

6

government would have no recourse but to try Steve for perjury, while the kidnappers walked away without being held accountable for their actions.")

The Defendant is entitled to evidence that he can use to impeach these witnesses or challenge the credibility of the Government's case. The *Brady* doctrine applies not only to exculpatory evidence, but also to evidence which a defendant could use at trial to impeach witnesses. *United States v. Bagley*, 473 U.S. 667, 676, (1985). In addition, the government must disclose agreements with a testifying witness, whether the agreement is express or "less formal, unwritten or tacit." *Jefferson v. United States*, 730 F.3d 537, 550 (6th Cir. 2013). Defendant Adam Fox is entitled to the information he is seeking, the Government is not entitled to the delay in production of such information to the extent that it plainly impairs the ability of counsel for Adam Fox to effectively use the information to examine the above referenced informants. The information is directly related to the CHSs' credibility, the integrity of the investigation supporting the charges advanced in the Superseding Indictment and the ability to effectively confront the Government's operatives in the Trial, presently scheduled to commence on March 8, 2022.

## RELIEF REQUESTED

Defendant Adam Fox requests that this Honorable Court order the Government to produce records of the payments, reimbursements, awards, or any and all other sums paid to CHS 99252 (Dan), CHS 97067 (Steve) and CHS 99802 (Jenny), any admonishments, agreements, or any other non-monetary considerations that were granted or otherwise provided to the Informants for their participation as undercover informants in this matter no later than Monday, February 28, 2022, which would afford counsel one week to consider and process the material for use at trial.

Dated February 24, 2022,            Respectfully Submitted,

*/s/ Christopher M. Gibbons*
Christopher M. Gibbons

7

Attorney for Adam Fox

Business Address:
GIBBONS & BOER
2404 Eastern Ave., SE
Grand Rapids, MI 49507
(616) 460-1587
cgibbons0003@gmail.com