UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ADAM DEAN FOX, et al.,

    Defendants.

_____/

CASE No. 1:20-CR-183

HON. ROBERT J. JONKER

## ORDER

### INTRODUCTION

    A jury trial in this matter is set to begin next week on March 8, 2022. The government asks permission for two of its witnesses to testify using pseudonyms and to preclude the disclosure of the witnesses' true names to the defense. (ECF Nos. 469, 489). The two witnesses are both FBI agents who participated in the investigation of this case in an undercover capacity and who are currently working undercover in a separate investigation. The government says disclosure would both hinder the other investigation and jeopardize the witnesses' safety. The defendants all object to the relief requested. (ECF Nos. 488, 495, 496, 498, 500). After careful review, the Court is satisfied that if the government calls the agents to testify, they must do so using their true names. At this point in the case, the Court believes the balance of interests tips decidedly in favor of openness. It is time for all guise and pretense to end and for the prosecution to present the evidence in an open forum with witnesses testifying using their true identity. The government's concerns are understandable, but they can be reasonably managed with a disclosure sequence prescribed in

this Order.  Disclosure, and the opportunity for the defense to present a meaningful cross examination, will best ensure continuing trust in the judicial process.

## BACKGROUND

In advance of the final pretrial conference ("FPTC"), the government filed a trial brief that detailed anticipated evidentiary issues.  (ECF No. 469).  Among other things, the brief seeks permission to permit two of the government's anticipated witnesses to testify using pseudonyms.  The government wants these witnesses to testify using their pseudonyms of "Mark" and "Red." (ECF No. 469, PageID.3510-3512).  According to the government, the two witnesses are FBI agents who participated in the investigation in an undercover capacity.  They are currently involved in unrelated undercover operations and disclosure of the names, the government says, could undermine ongoing investigations and jeopardize the agents' safety.  The government also has specific concerns about this case.  The government says one of the four defendants—Defendant Croft—has previously disclosed discovery materials to an online podcast in violation of the protective order and that if past is prologue, Defendant Croft is likely to disclose the witnesses' true identities absent the requested relief.[1]  Furthermore, the government says the day the defendants were arrested one of their associates posted on social media with a cash bounty for the identity of the "rat."  The Court heard a brief argument on the issue during the FPTC.  Both sides requested an opportunity to provide further briefing on the matter.

The government has submitted a brief (ECF No. 489) that provides additional detail and expands upon the relief requested.  In addition to requesting the use of pseudonyms, the government asks the Court to: (1) prohibit cross examination questions that would require the two witnesses to disclose their true names; (2) prohibit the sketching of the two witnesses' likenesses

---

[1] The government does not say this concern is present for any of the other three defendants.

2

at trial; and (3) withhold the two witnesses' true names from the defense.  With respect to the latter request, the government states that it will otherwise comply with its *Brady*, *Giglio* and Jencks' Act obligations, and that it does not seek to disguise the witnesses at trial.  At a minimum, the government says these concerns require limiting any disclosure of the true names of "Mark" and "Red" to defense attorneys' only, not to defendants themselves.  Defendant Croft has filed a trial brief and a responsive brief that objects to the government's request.  (ECF Nos. 489, 495).  The other three defendants heading towards trial have filed motions to join in Defendant Croft's objection.  (ECF No. 496, 498, 500).[2]

## LEGAL STANDARDS AND ANALYSIS

The Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"  U.S. Const. amend. VI.  Furthermore, it is well-settled that a defendant has the right under the Confrontation Clause to cross examine a witness regarding the witness' full name and place of residence.  *See Smith v. Illinois*, 390 U.S. 129, 131-32 (1968) ("To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.").  The right, however, is not unqualified.  Trial judges have "wide latitude . . . to impose reasonable limits . . . on cross examination based on concerns about, among other things, harassment, prejudice, . . . or the witness' safety."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also United States v. Rangel*, 534 F.2d 147 (9th Cir. 1976) ("*Smith v. Illinois* . . . 'does not establish a rigid rule of disclosure, but rather discusses disclosure against a background of factors weighing conversely, such as personal safety of the witness.'") (quoting *United States v. Cosby*, 500 F.2d 405, 407 (9th Cir. 1974)).

---

[2] The Court grants these motions for joinder.

The Sixth Circuit Court of Appeals has not dealt with witnesses testifying under pseudonyms in a published decision.  However in *United States v. Hendricks*, 950 F.3d 348 (6th Cir. 2020), the Court of Appeals considered a Sixth Amendment challenge where the district court issued a protective order that permitted an undercover FBI agent to testify using a pseudonym and closed the courtroom to the general public during the agents' testimony.  *Id.* at 355. On appeal the defendant only challenged the courtroom closure, and so the Sixth Circuit did not have occasion to consider the pseudonym issue.  On the courtroom closure, however, the Sixth Circuit affirmed, noting that the "balance of interests must be struck with special care."  *Id.* (quoting *Waller v. Georgia*, 467 U.S. 39, 45 (1984).

Courts from outside the circuit have also balanced a defendant's Sixth Amendment rights against the government's interest (including things like witness safety) when defendants raise a Confrontation Clause challenge to witnesses testifying under pseudonym. In weighing these interests, courts consider the particular relevance and significance of the witnesses' identity.  *See United States v. Urena,* 8 F. Supp. 3d 568, 571 (S.D.N.Y. 2014) (finding that "nothing about UC–188's real name goes to his credibility or knowledge regarding the subject of his testimony"); *United States v. Hernandez*, No. S1 12 CR 809 PKC, 2013 WL 3936185, at *3 (S.D.N.Y. July 29, 2013) (same); *United States v. Salemme*, No. 16-CR-10258-ADB, 2018 WL 2465359, at *3 (D. Mass. June 1, 2018) ("No party has argued that the personal identifying information of the inspectors is necessary or relevant to their case.").  Courts also consider whether the threat to the witnesses' safety is "actual and not a result of conjecture." *United States v. Palermo,* 410 F.2d 468, 472 (7th Cir. 1969).  "The appropriateness of using pseudonyms to protect witnesses does not depend on whether the threat to the witness comes directly from a defendant or from another source." *United States v. Celis*, 608 F.3d 818, 832 (D.C. Cir. 2010).

4

Applying these general principles to the case at hand, the Court does not believe the government has demonstrated that it is entitled to the relief it seeks. The identity of the witnesses might not be especially relevant in isolation; but the use of undercover agents certainly is relevant to this case in a way that is not present in most cases. In that regard, the identity of "Mark" and "Red" very much is relevant. This case is not about the role of government generally. But things like the defendants' motive and intent—be it as part of a possible entrapment defense or in prosecuting or defending against the elements of the crimes charged in the Superseding Indictment themselves—will undoubtedly touch on how the defendants felt about the function of government and about the decisions of government actors during the COVID-19 pandemic. There is at least some overlap between these concerns and the ongoing anonymity of government witnesses. Making it crystal clear to the jury and the public that inside the Courtroom, nothing is undercover and everything is out in the open will best ensure fairness during trial and eventual acceptance and respect for whatever the jury ultimately decides.

Furthermore, when weighed against the Defendants' constitutional interests, the concerns articulated by the government on the present record are less concrete and less substantial. The government is understandably vague with respect to the ongoing separate investigation and "Mark" and "Red's" role in that investigation. But the Court cannot identify any concrete harm based on these hazy assertions. With respect to risk to witness safety, the Court is sympathetic, but also cognizant that such risk is inherent in an investigation model that relies on undercover agents. As for the social media post that appeared shortly after the defendants' arrests, the government does not disclose the identity of the author, or suspected author, or whether there have

5

been any efforts by third parties to follow up on the post.[3] At bottom, the risk on the present record is too diffuse and speculative to warrant the government's request.

Accordingly, the government's request to permit two of its agent witnesses to testify using pseudonyms is denied. To the extent the government seeks further restrictions the request is also denied. The Court will, however, sequence disclosure to minimize risks while still giving the defendants access to "Mark" and "Red's" true identities. The government may withhold the true identity of "Mark" and "Red" until the day before the government calls the witness to testify.[4] Prior to that, the government's disclosure obligations (be it *Brady*, *Giglio*, Jencks, or otherwise) need not include the true identities of the witnesses, but should include the content of the *Brady*, *Giglio*, or Jencks disclosure as the case may be.

**IT IS SO ORDERED.**


Dated:     March 3, 2022                    /s/ Robert J. Jonker
                                            ROBERT J. JONKER
                                            CHIEF UNITED STATES DISTRICT JUDGE

---

[3] The government appears concerned only with Defendant Croft on this issue, which would not support withholding the true names of the witnesses from all the other defendants, or from their counsel in any event.

[4] This means that if the government elects not to call "Red" or "Mark," their true identity need not be revealed. The government can weigh the relative importance of their testimony here with the potential risk to ongoing and unrelated undercover investigations. If the government decides not to call them, and one or more defendants wishes to call them on their side of the case, the Confrontation Clause issues would be different and potentially not applicable at all. At minimum, the balance of interests would likely weigh differently on the question of pseudonym status.