UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ADAM DEAN FOX,
BARRY GORDON CROFT, JR.,
DANIEL JOSEPH HARRIS,
BRANDON MICHAEL-RAY CASERTA,

    Defendants.
_____/

Hon. Robert J. Jonker

Case No. 1:20-cr-00183

## ORDER

This matter is before the Court on Defendant Fox's Motion in Limine for Order for Production of Information Regarding Confidential Human Sources (ECF No. 493) and Defendant Croft's Motion for Joinder in ECF No. 493 (ECF No. 502). Defendant Croft's Motion for Joinder in ECF No. 493 (ECF No. 502) is granted. After a hearing held March 4, 2022, the motion (ECF No. 493) is denied without prejudice in part and denied in part as moot.

Defendants Fox and Croft seek production from the government of information related to three confidential human sources: (1) CHS 99252 (Dan), (2) CHS 97067 (Steve), and (3) CHS 99802 (Jenny). For each of these individuals, Defendants request that the government produce any records of compensation or reimbursement paid by the government to each informant, as well as any admonishments, agreements, or other non-monetary consideration that was provided to the informants as a result of their activities as undercover informants.

As to CHS 99252 (Dan), the only informant of the three that the government intends to call in its case in chief, the government represented that the materials sought would be produced today. Thus, as to that witness, the motion is denied as moot.

As to the other two informants, the government represents that it does not intend to call them as witnesses. Therefore, it argues, it has no obligation to produce their informant files. Nonetheless, it has agreed to produce a portion of the informant file for CHS 97067 (Steve).

Defendant Fox argues that the government is required to produce impeachment material, regardless of who calls the witness because impeachment information is a subset of *Brady* material. Defendant Fox cites *United States v. Bagley*, 473 U.S. 667, 676 (1985), for the proposition that impeachment material is material covered by *Brady v. Maryland*, 373 U.S. 83, 87 (1963). While Defendant is correct that *Bagley* states that impeachment evidence "falls within the *Brady* rule," that case involved the prosecution's failure to produce impeachment evidence for its own witnesses. 473 U.S. at 677. That is consistent with the Supreme Court's holding in *Giglio v. United States*, 405 U.S. 150, 154 (1972).

Where the defense calls the witness, however, the government does not have a general obligation to provide impeachment material related to that witness. *United States v. Kimley*, 60 F. App'x 369, 371 (3d Cir. 2003) ("There is no requirement that the government must disclose to the defense that material which would allow the defendant to impeach his own witness."), citing *Giglio*, 405 U.S. at 154-55; *United States v. Garcia-Martinez*, 730 F. App'x 665, 678 (10th Cir. 2018) (finding defendant "has not cited any controlling precedent, and we are not aware of any, that would have obliged the government under *Brady* to disclose information that is exculpatory—in a purely impeachment sense—with respect to a defense witness."); *cf. In re Sealed Case No. 99-3096,* 185 F.3d 887, 893 (D.C. Cir. 1999) ("In the usual case there is a conceptual difference between the impeachment of a government witness and the impeachment of a defense witness.

Evidence that impeaches the former is almost invariably 'favorable' to the accused, because by making the government's case less credible it enhances the defendant's chances of acquittal. Evidence that impeaches a defense witness, by contrast, is not generally favorable to the accused; by reducing the credibility of the defendant's own witness, such impeachment reduces the probability that he will obtain a not guilty verdict. It is ordinarily the prosecutor rather than defense counsel who wants to use the latter kind of evidence...."); *see also United States v. Johnson*, 581 F.3d 320, 331 (6th Cir. 2009) (prosecutor has a duty to disclose *Brady* material, which "extends to impeachment evidence, but only if the evidence is favorable to the accused in the sense that it would allow him to impeach government witnesses"). Defendants cite *United States v. Thomas*, 2016 WL 6948444, *4 (C.D. Ill. Nov. 28, 2016), for the proposition that "*Giglio* extended *Brady* disclosures to credibility evidence about any witness in the case." However, *Giglio* did not reach the issue of whether the prosecution is required to produce evidence relating to the impeachment of a defense witness. 405 U.S. at 154. And as noted above, other courts have held it did not. Moreover, the *Thomas* court went on to note that the evidence would have to meet a *Brady* standard of materiality "such as when a witness's credibility is an important issue in the case because the witness offers key testimony," and the court "question[ed] whether any evidence contained in the file, whether negative or bolstering, could meet the standard of materiality if the informant testified only for Defendant." *Thomas*, 2016 WL 6948444, *4. For these reasons, among others, that decision is not persuasive on the issue.

      Defendant Croft makes a more nuanced argument: that the informant files are corroborative of the defense theory of the case, rather than merely impeachment. Essentially, he argues that evidence (1) regarding how much the informants were paid and when and (2) admonishments not to disclose information to others about the case, may provide affirmative evidence that the

3

government paid informants to fabricate evidence of the defendants' guilt.[1] In addition, Defendant Fox suggests that CHS 97067 and CHS 99802 constructed a fictional National Patriot III% Militia and made him the leader of it. Defendants cannot state with certainty, however, how these witnesses will testify if called at trial.

Defendant Croft cites *In re Sealed Case No. 99-3096*, for the proposition that the government may be required under *Brady* to produce evidence relating to payments and benefits received by a defense witness. 185 F.3d at 893-94. In that case, the informant had revealed himself to defense counsel and admitted planting evidence in the defendant's home, stating that he was cooperating with police to work off local charges. That made his cooperation agreement relevant. In other words, the prospective witness was offering affirmative evidence of guilt, and the defense request was not entirely speculative. *Id.* Here, the defense argues that, analogously, these two informants manufactured evidence of the Defendants' guilt, essentially planting the evidence. It follows, they argue, that the contents of their informant files are corroboration of the defense theory of the case, not impeachment evidence.

The holding in *Brady v. Maryland* requires disclosure of evidence that is both favorable to the accused and "material either to guilt or punishment." 373 U.S. at 87. It remains unclear at this stage whether the information Defendants seek from the government meets that standard. Before the introduction of any proofs at trial and without a more concrete proffer of evidence from Defendants, it is not clear how that would be so. For example, the argument that one of the

---

[1] Although the government has produced evidence regarding compensation CHS 97067 received, the defense argues it is entitled to additional information that the government has not produced, including dates and amounts of individual payments and reimbursements. In addition, the government has disclosed the existence of a document CHS 97067 signed in December 2020 (after the arrests in this case) informing him that information related to the case was confidential. The Court has reviewed that document in camera. As with other disputed materials, it will reserve judgment on relevance and materiality until after the proofs are developed at trial.

informants the defense plans to call as a witness created a militia meeting and then made it look like Defendants planned it (one of the theories offered at the hearing on this motion) may have some relevance at trial, but the initiation of a meeting at the outset of the conspiracy is unlikely to be particularly relevant where the Defendants' own statements are the central evidence of the conspiracy to commit kidnapping. Likewise, it is unclear what relevance Defendant Fox's status as the leader of the National Patriot III% Militia has to the case.

Until the proofs are developed at trial, Defendants' arguments remain speculative. The *Brady* rule is not an evidentiary rule that grants broad discovery, and there is no general constitutional right to discovery in a criminal case. *United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir. 1992) (abrogated, in part, on other grounds by *Hampton v. United States*, 191 F.3d 695 (6th Cir. 1999)). And mere speculation that information in a government file will constitute *Brady* material is not sufficient to require in camera review or production. *Id.*; *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). Nonetheless, based on the record before the Court, it cannot be ruled out that some or all of the information in the informants' files will be material and favorable to the accused. Therefore, the motion is denied without prejudice.

Defendants argue that waiting to receive the information they seek until mid-trial will prejudice their ability to provide a defense at trial. However, the government has represented that the materials it has for CHS 97067 and CHS 99802 are not copious and can be reviewed in a manner of minutes, not hours, such that there is no prejudice to Defendants in waiting to determine if the materials should be produced based on the development of the proofs at trial.

IT IS SO ORDERED.

Dated: March 4, 2022          /s/ Sally J. Berens
                              SALLY J. BERENS
                              U.S. Magistrate Judge