UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ADAM DEAN FOX,
BARRY GORDON CROFT, JR.,
DANIEL JOSPEPH HARRIS, and
BRANDON MICHAEL-RAY CASERTA,

    Defendant.
_____/

Hon. Robert J. Jonker

Case No. 1:20-cr-183

**ORDER**

    This matter is before the Court on the Government's Motion for an Order Concerning News Media Access to Admitted Trial Exhibits (ECF No. 511). The government seeks an order setting out the parties' obligations regarding any release of exhibits to the news media during the trial of this matter, which is set to begin on Tuesday, March 8, 2022. Defendants Fox and Croft have filed responses (ECF Nos. 514 and 516) indicating that they oppose the release of exhibits until after a verdict at trial. The Court orders that the parties not release exhibits to the news media until after a verdict is returned or until further order of the Court. As such, the motion is granted in part and denied in part.

    **1. Legal Standard**

    Although I have previously set out the relevant standard for consideration of this issue (ECF No. 254, PageID.1382-83), it is worth repeating here. While there is a First Amendment right of access to judicial proceedings, that right is not at issue because the trial will be open to the public. The exhibits will be presented in open court, and the press will be free to observe and report

on proceedings. That is sufficient to satisfy the First Amendment. *United States v. Beckham*, 789 F.2d 401, 415 (6th Cir. 1986) (videotapes in question played at a public court proceeding, and the press was free to report on the content of the videotapes); *United States v. Dimora*, 862 F. Supp. 2d 697, 703-04 (N.D. Ohio 2012). There is particularly little concern for any First Amendment issue where the court has made efforts to facilitate public access to the trial proceedings. *United States v. Mitchell*, 2010 WL 890078, at *3 (D. Utah Mar. 8, 2010) (citing *In re Providence Journal*, 293 F.3d 1, 16 (1st Cir. 2002)). Here, in addition to public access to the courtroom, due to the ongoing Covid-19 pandemic, the Court plans to have an open phone line available so that those unable to be in Grand Rapids, Michigan, may listen to proceedings. Because there is "no question of a truncated flow of information to the public," the presentment of exhibits in open court fulfills the Court's First Amendment obligations. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 609 (1978).

What is at issue is the presumptive common-law right of access to judicial records. *Beckham*, 789 F.2d at 414; *United States v. Graham*, 257 F.3d 143, 151-52 (2d Cir. 2001). That is neither a constitutional right nor an absolute right, and "courts in politically sensitive cases have a responsibility to consider both the public's interests and the court's duty of fairness in the administration of justice." *Beckham*, 789 F.2d at 409-10 (citing *Warner Commc'ns*, 435 U.S. at 597-602). The analysis begins with a presumption of access. *Beckham*, 789 F.2d at 413; *Dimora*, 862 F. Supp. 2d at 705. "[W]hile some other courts have held that this presumption can only be overcome by the most extraordinary of circumstances, the Sixth Circuit 'respectfully disagrees that only the most extraordinary reasons justify a restriction on the common-law right' to inspect and copy exhibits." *Dimora*, 862 F. Supp. 2d at 705-06 (citing *Beckham*, 789 F.2d at 414). The decision as to access is left to the sound discretion of the trial court, a discretion to be exercised

considering the relevant facts and circumstances of the case. *Beckham*, 789 F.2d at 409. The interests to be weighed include: (1) the trial court's supervisory powers over its own documents; (2) the benefit to the public from the incremental gain in knowledge that would result from access to the materials in question; (3) the degree of danger to the petitioner or other persons mentioned in the materials; (4) the possibility of improper motives on the part of the media; and (5) any special circumstances in the case. *Id.*

### 2. Analysis

In reviewing the relevant factors, the primary question is whether the special circumstances of the case, namely its high-profile nature and the accompanying, extensive press coverage, render the release of exhibits during the trial prejudicial to Defendants' right to a fair trial and an impartial jury, a fundamental right. *Beckham*, 789 F.2d at 411; *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 431 (5th Cir. 1981) ("The judge's concern was with the rights of a yet-to-be-tried defendant; the provision of a fair and reasonable trial is a necessary and reasonable concern…."); *Dimora*, 862 F. Supp. 2d at 707 (access to exhibits from highly covered trial denied because of "serious danger that widespread release … would serve to taint the jury pool for [a retrial]"); *United States v. Thomas*, 745 F. Supp. 499, 502 (M.D. Tenn. 1990) (weighing potential effect of release of videotape on fair trial rights of defendant). "[S]ensational publicity does not necessarily deprive a defendant of a fair trial, nor does the broadcast of evidence necessarily interfere with a trial." *Beckham*, 789 F.2d at 410 n.3. However, the Court must weigh that potential prejudice against "the amount of benefit to the public from the incremental gain in knowledge that would result" from access to the exhibits at issue. *Id.* at 409. The Court's supervisory powers over its own documents are not at issue. And there is no allegation of improper motives on the part of the press. Certainly, the public's interest in the case is legitimate. The Court must decide, then, whether the

risk of tainting the jury during the trial outweighs any benefit to the public that would come from releasing the materials in question. *See Belo Broadcasting*, 654 F.2d at 425 (non-publication approved where court would be "severely hampered in selecting a fair and impartial jury").

Here, Defendants argue, persuasively, that daily release of exhibits (particularly audio and video recordings) increases the risk that jurors will hear and be affected by information not presented at trial. One might persuasively argue that, once an exhibit is admitted at trial, a juror hearing or seeing it again on the news is not prejudicial to the defense because it is already in evidence. *See United States v. Berger*, 990 F. Supp. 1054, 1057-58 (C.D. Ill. 1998). However, the news media are likely only to play the most sensational evidence. And the repetition of only that evidence outside the context of other evidence could lend that material inappropriate weight. Moreover, as Defendant Croft notes (PageID.3904), reproduction of trial exhibits would give friends and acquaintances more specific material to be tempted to discuss with jurors in a case that has political overtones for many members of our community.[1]

The incremental benefit to the public's knowledge of the proceedings is less compelling. Obtaining exhibits during the trial would "increase the convenience of…news gathering and increase the vividness of … radio or television broadcasts," and there would be "an incremental increase in the quantity and quality of the transmission of the information." *See Beckham*, 789 F.2d at 413. Of course, "tone of voice, cadence, and other 'live' effects of" audio recordings are part of "what makes the contents of the recording particularly inflammatory or memorable—and thus

---

[1] While some exhibits have been previously released in this case, they are few in comparison to the volume likely to be introduced at trial. Moreover, voir dire will be sufficient to determine if a potential juror is unable to set aside any prior knowledge of the case before being chosen. A daily bombardment of new exhibits played in the news media, by contrast, may make it more difficult to rely on curative instructions. And sequestration is a curative power that would be difficult, expensive, and potentially unfair to the jury in such a lengthy trial.

likely to taint the jury pool and create due process concerns." *Dimora*, 862 F. Supp. 2d at 714 (citing *Application of National Broadcasting*, 635 F.2d 945, 953 (2d Cir. 1980); and *Mitchell*, 2010 WL 890078). However, it is only an incremental improvement, and that vividity is delayed only as long as the pendency of the trial.

While not a primary factor, the Court also notes that requiring counsel for both sides to spend time at the end of each trial day litigating the side issue of which exhibits should be released to the press is an undue burden on counsel, and potentially the Court. That factor also weighs in favor of delaying release until the conclusion of trial.

In *Beckham*, the Sixth Circuit held that the trial court did not abuse its discretion in denying news media permission to copy tape recordings but did abuse its discretion in denying access to copying of documentary exhibits. 789 F.2d at 412. However, in that case, the documentary exhibits were business records that were "not inflammatory," "not inaccurate representations of other evidence," and were unlikely to present a "danger of misinterpretation when viewed outside the courtroom and beyond the court's cautionary safeguards." *Id.* The same cannot be said of documentary exhibits in this case, which will include text and other chat messages. Such exhibits may be highly inflammatory and subject to misinterpretation.

### 3. Conclusion

Considering each of the factors set out in *Nixon v. Warner Communications* and *United States v. Beckham*, as well as the news media's full access to the trial and complete freedom to publish, the Court is of the opinion that the risks to Defendants' right to a fair and impartial jury outweigh the incremental value of the prompt release of the exhibits to the public's right to access judicial records. The parties are ordered not to release trial exhibits to the media until after the conclusion of the trial or further order of the Court.

IT IS SO ORDERED.

Dated: March 7, 2022                                           /s/ Sally J. Berens
                                                                                              SALLY J. BERENS
                                                                                              U.S. Magistrate Judge