UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

**UNITED STATES OF AMERICA**
                Plaintiff,

v.

**ADAM FOX,** and
**BARRY CROFT,**
                Defendants.

Case No. 1:20-cr-00183-RJJ

Hon. Robert J. Jonker
Chief United States District Judge

---

## JOINT MOTION TO COMPEL TESTIMONY

Mr. Croft and Mr. Fox, by their counsel, requests for the following reasons that the Court compel the testimony of Stephen Robeson over his threatened invocation of the Fifth Amendment privilege against self-incrimination.

## STATEMENT OF FACTS

Mr. Robeson has a prolific history of being a snitch. He has been involved with the government as a confidential human source since the early 2000s and has continued in that capacity to the present investigation in becoming an informant against the defendants. Testimony shows that between late 2019 and May 2020, Robeson worked as a snitch with the Milwaukee, Norfolk, Baltimore, and Detroit field offices.

Discovery disclosed by the government shows that Mr. Robeson appointed Mr. Fox as the commanding officer of the fake "Michigan chapter of the Patriot III%ers". Following the sham appointment, Mr. Robeson announced the appointment on the Michigan Patriot III%ers page that was created by the government:



In addition, his role within the investigation has ranged from arranging meetings and providing conference rooms to coordinating FTXs for the defendants to attend and transporting weapons, defendants and explosives across the country. His handling agents knew of his role within the group and acquiesced in his actions under the guise of maintaining access and credibility within the group.

Robeson is a, or in most cases the only, direct link that the defendants have to the alleged conspiracy because of his actions, coordination, and planning on

behalf of the government. Robeson initially contacted defendant Croft and targeted him for the government. Additionally, Robeson would take defendants to riots and protests in an effort to get them worked up; then, using the recording device provided by the FBI, he would record them reacting to the situation in a state of anger. Robeson would also plan FTXs across the country and invite defendants to attend and encourage them to participate while he himself would sit out and record the entire event. Robeson would also plan meetings that took place in Ohio and provide rooms, food, conference areas, and other amenities to bring defendants and others together in an attempt to rile them up and place them in a compromising situation. Furthermore, in his role as the "founder" of a fake national militia, he would routinely give defendants and other targets "charters", place them in charge of a state militia, and actively encourage them to recruit likeminded people; going so far as to create fake business cards to give to defendants in order to sell the ruse.

      The government and Robeson's handlers were aware of his actions and acquiesced in allowing him to do so. They did not close him as a source but continued to provide him with compensation in the form of money, tires, and reimbursement for expenses. They also continued to provide him with access and recording materials despite his repeated problems as a source.  Despite that his actions were undertaken on behalf of the government with their knowledge and encouragement, Robeson now wishes to avoid testifying by invoking the Fifth Amendment privilege against self-incrimination. He wishes to hide behind a threat of prosecution that has no basis as he was acting under the authority and

authorization of his handlers and the FBI therefore does not provide a basis or "well-founded" fear of prosecution.

## LAW AND ARGUMENT

I. **A witness must have a "substantial" and "real" cause to apprehend danger from criminal prosecution to invoke 5th Amendment protections.**

The Fifth Amendment provides, "[n]o person… shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amend. V. This protection extends not only to outright inculpatory statements, but also to those statements that would "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *United States v. Koubriti,* 297 F. Supp. 2d 955, 962 (E.D. Mich. 2004) *quoting Hoffman v. United States*, 341 U.S. 479, 486 (1951). However, this protection is only afforded to those witnesses that have a "reasonable cause to apprehend danger" from criminal prosecution. *Koubriti*, 297 F.Supp.2d at 962. This reasonable cause must be both "substantial" and "real" incrimination, not merely "trifling or imaginary". *Id.* Nor does the protection extend to remote and speculative possibilities of incrimination. *Zicarelli v. New Jersey State Comm'n of Investigation,* 406 U.S. 472, 478 (1972). Additionally, a witness cannot meet the reasonable fear of prosecution prong by simply making a blanket assertion of the privilege. *United States v. Gibbs*, 182 F.3d 408, 431 (6th Cir. 1999).

In *United States v. Ballard*, the defense attempted to call a witness who could provide exculpatory information but invoked his Fifth Amendment protection. The witness was questioned outside the presence of the jury and the trial judge

4

ultimately refused to allow the defense to call him as a witness. *United States v. Ballard*, 280 Fed.Appx. 468, 469 (6th Cir. 2008). The court cited to a Supreme Court decision that said, "[i]f it appears that a witness intends to claim the [Fifth Amendment] privilege as to essentially all questions, the court may, in its discretion, refuse to allow him to take the stand. Neither side has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege either alone or in conjunction with questions that have been put to him." *Id.* at 470 *quoting Namet v. United States*, 373 US 179, 186 (S.C. 1963).

An important distinction is that if a witness does not intend to invoke the privilege on all questions, then he is not excused from taking the stand. In fact, the law of the Sixth Circuit is that a subpoenaed witness *must* take the stand and invoke his privilege in response to specific questions posed to him. *Gibbs*, 182 F.3d at 431. In that case, two defendants charged with drug crimes intended to call two witnesses who invoked the Fifth Amendment. The court reiterated that a blanket assertion of the right against self-incrimination is insufficient to meet the reasonable-fear-of-prosecution threshold unless the witness intends to invoke on every question asked. *Id.* The court held that it was error to allow the witness to invoke without taking the stand, even if the blanket assertion would become acceptable once he was upon the stand. *Id.* Lastly, while *Koubriti* states the best way to adjudge whether a witness' invocation is through an *in camera* proceeding, it nonetheless says that "a witness is not exonerated from answering questions merely because he declares that in so doing he would incriminate himself-his say-so does

5

not itself establish the hazard of incrimination. . . It is the role of the court, not the witness, to evaluate the witness's claim of incrimination and determine whether it is reasonable." *Koubriti,* 297 F. Supp. 2d at 962.

## II. Robeson does not have valid fear of prosecution because he was acting under the authorization of the FBI.

Robeson's circumstances are quite different from those that appear in *Ballard*. Robeson cannot intend to invoke the privilege in good faith for all questions posed to him. Furthermore, Robeson cannot meet the well-founded fear-of-prosecution prong as he was relying upon the statements and admonishments made to him by his handling agents that punishment would not attach to his actions.

As discussed earlier, Robeson was given authority and admonished to maintain his image in the group at the direction of FBI agents and handlers; he was acting under the authority of the Bureau and therefore any threat of prosecution towards him arising from his testimony would be prohibited under the doctrine of entrapment by estoppel. To the extent that Mr. Robeson intends to invoke relating to his illegal possession of a .50 caliber rifle or pending state fraud charges, the defense can simply give those issues a wide berth.

*United States v. Levin* is the seminal case on the defense of entrapment by estoppel. *Levin* establishes that entrapment by estoppel is available when "(1) a government must have announced that the charged criminal act was legal; (2) the defendant relied on the government announcement; (3) the defendant's reliance was

6

reasonable; and, (4) given the defendant's reliance, the prosecution would be unfair." *United States v. Levin*, 973 F.2d 463, 468 (6th Cir. 1992).

In *Levin*, the defendants were charged with Medicare fraud, mail fraud, false claims, and false statements for joining a sales campaign that gave defendants certain goods in connection with their industry. The Health Care Financing Administration signed off on this proposed sales campaign on three different occasions prior to charging. *Id.* at 464. Therefore, the court stated that all of the elements had been satisfied as "(1) HCFA and its duly designated representatives declared the sales promotion program, which was the predicate for the indictment, to be legal; (2) the appellees relied upon HCFA's announcement; (3) the defendants' reliance was reasonable; and (4) prosecution for violation of the controversial counts of the indictment would be unfair." *Id.* at 468.

Lastly, *United States v. Hathaway* sets the standard for "authoritative assurance" in the context of entrapment by estoppel. Hathaway stands for the proposition that citizens should not be punished for good-faith actions taken on "authoritative assurance" that they will not be punished for such actions. U.S. v. Hathaway, 2011 WL 3156075 at 1 (W.D. MI. 2011). There, the defendant was charged with drug crimes based upon the assurances of a state trooper that what he was doing was legal. The court explained that "[w]hen this defense is asserted with respect to a federal offense, representations or assurances by state or local officials lack the authority to bind the federal government to an erroneous interpretation of

7

federal law." *Id. Hathaway* shows that the maker of the statement must have the authority to represent or bind the controlling jurisdiction.

These cases show that when a witness is acting under the authorization and knowledge of the federal government through its agents and handlers, they have an affirmative defense against prosecution arising from their sanctioned activities when testifying. Here, Robeson was given authorization and direction by his handlers who had knowledge of his actions throughout the investigation. They sanctioned his activities; paid, reimbursed, and rewarded his actions; gave him otherwise-illegal-activity authorization in some instances; provided him with recording materials; and continued to allow him to continue in his ways.

Robeson now seeks to assist the government to avoid answering for their actions by hiding behind the pretense of self-incrimination despite being given nearly carte blanche authority by his agents and handlers to galivant across the country, parading himself as the leader of a national militia and being a significant link in the defendants' case. Therefore, any fear of prosecution that Robeson may assert is unfounded and would fall well below the threshold to constitute fear-of-prosecution. For these reasons, Robeson should not be able to avoid testifying and should be compelled to answer questions put to him regarding his efforts on behalf of the government.

Respectfully Submitted,<br>
**BLANCHARD LAW**

Dated: March 23, 2022          /s/ Joshua A. Blanchard
Joshua Blanchard
Attorney for Mr. Croft
309 S. Lafayette St., Ste. 208
Greenville, MI 48838
josh@blanchard.law
616-773-2945

Dated: March 23, 2022          /s/ Christopher Gibbons
Christopher Gibbons
Attorney for Mr. Fox

**Certificate of Compliance with LCrR 47.2(b)(ii)**

I certify that this motion and brief contains 1,855 countable words as defined by LCrR 47.2(b)(i) and as calculated by Microsoft Word 16.55.

Dated: March 23, 2022          /s/ Joshua A. Blanchard
Joshua A. Blanchard