UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
——————————

UNITED STATES OF AMERICA,

                Plaintiff,                  Case No. 1:20-cr-183

      vs.

                                              Hon. ROBERT J. JONKER

ADAM DEAN FOX and                    Chief U.S. District Judge
BARRY GORDON CROFT, JR.,

                Defendants.
————————————————/

**GOVERNMENT'S RESPONSE TO JOINT MOTION
TO COMPEL TESTIMONY**

**Introduction and Background**

The FBI terminated CHS "Steve" as an FBI confidential human source in October 2020.  The reason: Steve had been breaking the law without authorization and surreptitiously assisting the other conspirators.  When he became a confidential human source, Steve was supposed to be acting solely for the FBI.  He had been admonished by the FBI not to commit crimes unless FBI gave him authority to do so. Yet, notwithstanding that, he tried to assist the conspirators in several ways.  He failed to let his FBI handlers know that Kaleb Franks, Ty Garbin, and Brian Higgins had recorded their nighttime surveillance of the Governor's home on a dash-mounted camera.  When agents arrested Fox, Daniel Harris, and Brandon Caserta, agents told Steve not to notify anyone, including Croft, about the arrests; Steve did anyway, telling Croft he was wanted.  After warning Croft, Steve told another CHS (who Steve did not know was a CHS) to encrypt the training roster and that Steve would still

assist with the kidnapping.  Steve then called CHS "Dan" (who Steve also did not know was a CHS) and told him to destroy footage that Franks took casing the Governor's house.  Steve later told CHS Dan to throw Croft's firearm in the lake and get rid of a vehicle used during reconnaissance.  Steve dubiously claimed in a statement to agents that he did the above things to try and avoid being "outed" as a source.  He also admitted to lying to the FBI about Higgins' involvement.

Defendants Fox and Croft now seek to compel Steve's testimony over his threatened invocation of the Fifth Amendment privilege.

The Court should hold a hearing where the court and parties can voir dire Steve outside the presence of the jury; after that hearing, the government anticipates that the Court should bar Steve's testimony in its entirety.  The government believes that—at a minimum—Steve will invoke his privilege against self-incrimination in response to the government's questions on cross-examination.  Assuming he does, his refusal to testify will be based on a well-founded fear of incriminating himself arising from his obstructive and other potentially criminal actions outside the scope of his work as a CHS.

Defendants' arguments in support are unconvincing.  Their arguments are based on a faulty factual premise because they ignore Steve's actions outside the scope of his work as a CHS.  Further, Defendants fail to provide a basis to conclude that Steve's potential ability to assert an affirmative defense renders the threat of prosecution less real and substantial.  And even assuming an available defense would create a basis to say Steve does not face a real threat of prosecution, here that defense

2

lacks the certainty necessary to justify such a finding.  Therefore, the government believes the Defendants' motion should be denied after voir dire of Steve outside the presence of the jury.

## Argument

### A. Legal Principles

The Fifth Amendment permits a person to refuse to answer any question that could incriminate him as well as any question that "would forge links in a chain of facts imperiling" the witness with a criminal conviction.  *Hoffman v. United States*, 341 U.S. 479, 488 (1951); *see also In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983) ("A witness risks a real danger of prosecution if an answer to a question, on its face, calls for the admission of a crime or requires that the witness supply evidence of a necessary element of a crime or furnishes a link in the chain of evidence needed to prosecute.").

The Court must decide whether a witness's silence is justified.  *Hoffman*, 341 U.S. at 486.  The Court should make this determination through voir dire of the witness outside the presence of a jury.[1] The witness does not have to give the answer that would incriminate him at that hearing.  *Id.*  Instead, to uphold the privilege, it only needs to be evident "from the implications of the question, in the setting in which

---

[1] Defendant cites *United States v. Koubriti*, 297 F. Supp. 2d 955, 962 (E.D. Mich. 2004), to suggest this should be an in-camera proceeding.  *Koubriti* cites *United States v. Grable*, 98 F.3d 251, 257–58 (6th Cir. 1996).  *Grable* involved the invocation of the Fifth Amendment privilege related to documents, not testimony.  *Id.*  *United States v. Coleman*, 453 F. App'x 640, 643 (6th Cir. 2011), by contrast, involved testimony.  In that case, the Sixth Circuit implicitly approved the voir dire process.  *Id.* at 643–44.

it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might" incriminate the defendant or be a link in the chain that leads to a criminal conviction.  *Id.* at 486–87.  A court may require a witness to answer, notwithstanding his invocation, if "it clearly appears to the court that he is mistaken" that the question would potentially incriminate the witness.  *Id.* (cleaned up).  Though "the privilege protects against real dangers, not remote and speculative possibilities," *Zicarelli v. N.J. State Comm'n of Investigation*, 406 U.S. 472, 478 (1972), "[n]ot much is required . . . to show an individual faces some authentic danger of self-incrimination, . . . as the privilege extends to admissions that may only tend to incriminate." *United States v. Rivas-Macias*, 537 F.3d 1271, 1278 (10th Cir. 2008) (cleaned up).  A court should uphold an individual's invocation unless the witness's answers could not "possibly have" a tendency to incriminate.  *Hoffman*, 341 U.S. at 488.

Under certain circumstances, the Court can bar a witness from testifying if the witness will invoke his Fifth Amendment privilege against self-incrimination.  For instance, if a witness will assert the Fifth-Amendment privilege on all questions, then the Court should bar his testimony. *See United States v. Ballard*, 280 F. App'x 468, 470 (6th Cir. 2008) (citing, e.g.*, United States v. Johnson*, 488 F.2d 1206, 1211 (1st Cir. 1973)). Likewise, the Court can bar a witness's testimony if the witness will assert the privilege against self-incrimination only on cross-examination. *Coleman*, 453 F. App'x at 643.  This includes defense witness testimony. *Id.* at 644.  "[T]he purpose of cross-examination is to test the credibility of the witness and the

4

truthfulness of his earlier testimony. Striking all of the testimony of the witness may be the only appropriate remedy when refusal to answer the questions of the cross-examiner frustrates the purpose of the process." *Lawson v. Murray*, 837 F.2d 653, 656 (4th Cir. 1988). Put differently, the invocation of the Fifth Amendment right cannot "emasculate" either party's right of cross-examination. *United States v. McClurge*, 311 F.3d 866, 873 (7th Cir. 2002). Where a witness refuses to answer questions on cross-examination related to non-collateral matters then some or all of the witness's testimony should be stricken. *United States v. Stephens*, 492 F.2d 1367, 1375 (6th Cir. 1974).

### B. Steve Would Be Subject to Cross-Examination on Matters that Could Incriminate Him.

If Steve testifies, even on discrete matters, the government may then cross-examine him on any matter within the scope of direct. *Coleman*, 453 F. App'x at 643. The scope of direct examination includes any question that would elicit testimony "reasonably related to the inferences that might reasonably be drawn from the direct" examination. *Id.* (cleaned up).

If the defense asks Steve whether he took action at the direction of the FBI or did something in furtherance of the FBI investigation, the government will cross examine Steve on the contours of his duplicitous and obstructive conduct. His conduct that led to his termination as a CHS informs whether the earlier actions that he took allegedly as a CHS were taken, in whole or in part, to further the aims of the Defendants and their co-conspirators. Further, his conduct as a CHS forms a link in the chain that could lead to a criminal conviction for his obstructive and unsanctioned

5

conduct. It explains how he met the conspirators and may help explain why he decided to engage in the criminal conduct. Steve's duplicitous and obstructive conduct, therefore, reasonably relates to every action that he took for the FBI, because it creates a question about who he was actually working for and for what reason.

Steve could incriminate himself if he admits to his obstructive acts or admits to offering to carry out the kidnapping notwithstanding the arrests of some defendants.  As questions regarding his duplicity would make up the majority of the government's cross-examination, the government anticipates that Steve will invoke his Fifth Amendment privilege against self-incrimination on most, if not all, questions posed during cross-examination.[2]   Such a complete denial of the government's ability to cross-examine a witness merits striking the entire testimony. *Coleman*, 453 F. App'x at 643 (affirming district court's decision to bar a defense witness's testimony where witness invoked Fifth Amendment privilege in response to questions within scope of direct).

---

[2] Steve would also likely invoke his privilege against self-incrimination in response to questions going to his credibility.  Steve's credibility could be impeached by his bias, for instance, any bias in favor of Croft, potentially creating liability under 18 U.S.C. § 1503 (corruptly endeavoring to obstruct justice). He may be impeached by his lies to investigators under Fed. R. Evid. 608(b)(1). The examination could lead to liability under 18 U.S.C. § 1001 (making a false statement to FBI). Further, he could be impeached based on his duplicitous conduct generally under Fed. R. Evid. 608(b)(1).   The statements could lead to liability under 18 U.S.C. § 1201(c) (kidnapping) or under Michigan criminal law. *See, e.g.*, Mich. Comp. Laws § 750.543k (providing material support for terrorist acts, a 20-year felony offense).

The Court and parties should voir dire Steve outside the presence of the jury. *See id.* at 642. If, as the government expects, Steve indicates he will invoke his Fifth Amendment right in response to the government's cross-examination (or on whatever matters defense intends to ask him about), then for the reasons outlined, the Court should bar the witness.

## C. Defendant's Arguments Do Not Undermine Steve's Real and Substantial Fear of Prosecution.

Defendants' arguments in support fall flat. They claim that because Steve was acting as a CHS, there is no substantial or real danger of criminal prosecution. Defendants claim that Steve cannot invoke his Fifth Amendment right because he has a viable defense of entrapment by estoppel.

That incorrectly assumes, however, that Steve was only acting as a CHS. Steve ignored the directions of his handlers and committed acts that appear to have been designed to endeavor to obstruct justice, provide false material information to the FBI, and to further the conspiracy to kidnap the Governor. Based on Steve's decision to ignore his admonition and ignore the directions of his handlers, the government does not see how Steve can meet the first element of the entrapment-by-estoppel defense—that the government announced that the charged conduct was legal. *United States v. Levin*, 973 F.2d 463, 468 (6th Cir. 1992). Because Steve cannot establish an entrapment-by-estoppel defense, that possible defense does not justify finding Steve's risk of prosecution is remote or speculative.

Further, a Defendant is not required to waive his constitutional rights because he might have a viable affirmative defense. Defendant cites no authority for that

7

proposition. A defendant may invoke his Fifth Amendment privilege against self-incrimination, while asserting an entrapment defense. *Cf. Matthews v. United States*, 485 U.S. 58, 62–64 (1988) (holding that a defendant does not have to admit elements of charged offense before invoking entrapment defense). Put differently, Steve could exercise his privilege against self-incrimination, while also arguing entrapment by estoppel, if he were charged. Steve does not have to give up his privilege against self-incrimination now because he might assert an affirmative defense later.

And, assuming Steve decided to assert an entrapment by estoppel defense (and that he made the initial showing required to submit the question to a jury), the jury would decide whether Steve had been entrapped by estoppel. *United States v. Hunter*, 4 F. App'x 295, 300 (6th Cir. 2001). Citing *Levin*, 973 F.2d 463, Defendants might claim that the Court can make that decision. In *Levin*, the Sixth Circuit affirmed a decision of the district court dismissing a case based on entrapment by estoppel on a Rule 12 motion. However, in *Levin*, the facts were not disputed, and those facts established the defense as a matter of law. *Id.* at 466–67. By contrast, the government's view of Steve's conduct appears to vary markedly from the view of Defendants.

Defendants' citation to *United States v. Koubriti*, 297 F. Supp. 2d 955 (E.D. Mich. 2004), does not assist Defendants. That case involved a potential *Brady* violation based on the government's failure to disclose a letter sent by an inmate (Jones) to Assistant United States Attorneys. *Id.* at 958. The letter included alleged jailhouse statements by a cooperating defendant (Hmimssa). *Id.* In a proceeding

8

related to the potential *Brady* violation, Jones sought to invoke his Fifth Amendment privilege citing his concern over a possible 18 U.S.C. § 1001 charge based on potential false statements in the letter to the Assistant United States Attorneys. *Id.* at 961. Jones also cited his concern over his testimony being used in his pending capital case to show the letter was being sent to curry favor. *Id.* First, the court found there was not a substantial or real risk of prosecution on the § 1001 charge because the government admitted that it thought the information in the letter was, among other things, absurd and a joke. *Id.* at 964. Therefore, the court found there was no real threat of prosecution: the government had represented that the statements were not material, undermining an essential element of a § 1001 charge. *Id.* at 965. Further, the Court found the letter, its contents, and Jones's testimony about them were superficially credible. *Id.* at 966. That also undermined the government's ability to prosecute Jones under § 1001. However, regarding why Jones sent those letters and why he kept information about his conversations with Hmimssa, that information could have incriminated Jones. *Id.* at 971. Specifically, the statements could go to Jones's efforts to curry favor with the government (and, thereby, speak to his consciousness of guilt). Jones could, therefore, validly invoke his Fifth Amendment rights as to questions on those matters. *Id.*

Unlike Jones in *Koubriti*, Steve has an uncertain affirmative defense based on disputed facts that a jury would have to decide (assuming Steve were charged, asserted the defense, and made the preliminary showing necessary to submit it to the

jury).  Such an uncertain defense does not undermine the threat of prosecution or Steve's right to assert his Fifth Amendment privilege against self-incrimination.

## Conclusion

The Court and parties should proceed to voir dire Steve outside the presence of the jury.  After doing so, the government anticipates the Court should bar his entire testimony based on his invocation of the Fifth Amendment's privilege against self-incrimination.

ANDREW BYERLY BIRGE
United States Attorney

Dated: March 25, 2022          */s/ Nils R. Kessler*
                               NILS R. KESSLER
                               JONATHAN C. ROTH
                               Assistant United States Attorneys
                               United States Attorney's Office
                               P.O. Box 208
                               Grand Rapids, MI 49501-0208
                               (616) 456-2404
                               nils.kessler@usdoj.gov