IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff                Case No. 1:20-CR-183

vs.                         HON. ROBERT J. JONKER
                                    Chief United States District Judge

ADAM FOX and
BARRY CROFT,

        Defendants

-----------------------------------------/

Joshua Blanchard          Lawrence J. Phelan (P37493)
Attorney for Mr. Croft      Attorney for Stephan Robeson
309 S. Lafayette Street, Suite 208  14080 Windemere NW
Greenville, MI 48838        Walker, MI 49534
(616) 773-2945              (616) 293-3070

Christopher Gibbons
Attorney for Mr. Fox
2404 Eastern Avenue SE
Grand Rapids, MI 49507
(616) 460-1587

-------------------------------------------------------------------------/

**MR. ROBESON'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO COMPEL TESTIMONY**

**1.  Overview**

Defendants Fox and Croft are on trial for their alleged conduct targeting the Governor of

the State of Michigan.  Stephen Robeson was involved in the government's investigation of the

conspiracy.  News reports refer to him as a "double agent" because a number of his activities allegedly occurred without the knowledge of the government and were allegedly designed to actually help the members of the conspiracy.  *E.g., Detroit Free Press*, 3/24/22,.pp.  4A and 11A; *See also,* ECF 419, Page ID 2881-2882; ECF 571, Page ID 4568-4570 (government's responses to defendant-motions).

Mr. Robeson was not a witness for the government during the government's case-in-chief..  However, the two defendants want to call him as a defense witness.

Undersigned counsel was appointed to represent Mr. Robeson.

Counsel informed Mr. Blanchard, the attorney for Mr. Croft, that Mr. Robeson would be asserting the Fifth Amendment if he is in fact called as a witness.  Attorneys  Blanchard and Gibbons responded by filing a "Joint Motion to Compel Testimony." ECF 566, Page ID 4555-4563.  The defendants are seeking a determination that Mr. Robeson "should be compelled to answer questions put to him regarding his efforts on behalf of the government." Id, Page ID 4562.

Mr. Robeson, through counsel, opposes this Motion and is respectfully asking this Court to deny the Defendants' Motion to Compel.

## 2.  The Prior Motions and this Court's Orders

### A.  Motion to Compel Immunity

The assertion of the Fifth Amendment has come up before in this case. On January 24, 2022, Kaleb Franks filed a Motion through counsel. (ECF 412, Page ID 2849-2851).  T*he motion* stated that "[i]t is now apparent that a number of both the agents and sources have reasons to refuse to testify by invoking their Fifth Amendment rights against self-incrimination." Page ID

2

2849-2850.  The motion opined that this testimony was critical to the defense and asked "for an order compelling the government to obtain orders for use immunity for its agents and sources." Page ID 2850.

The government opposed the Motion.(ECF 419, Page *ID* 280-2886)[1].  The gist of the opposition was that this Court did not have the authority to grant use immunity absent a request from the government.

Most relevant to this Motion is the fact that the government's brief spoke at length about Mr. Robeson.  Among other things, the government stated that:

A.  A Fifth Amendment claim by Mr. Robeson is "plausible."

B.  The Motion describes in detail facts about Mr. Robeson's actions.  Those actions could expose him to criminal charges because he was acting without the knowledge, consent, or authorization of his handlers;

C.  The Motion notes that Mr. Robeson had already pled guilty in a Wisconsin federal court to crimes related to his conduct.  The Wisconsin plea agreement only applies to Wisconsin and that agreement does not preclude charges in other jurisdictions.  Said differently, both state and federal prosecutors in other jurisdictions could bring charges despite the Wisconsin conviction;

D. If Mr. Robeson is called as a witness for the defense, the government will not seek to immunize him; and

---

[1]  While arguing that the government's allegations about his conduct give rise to a well-founded fear of criminal prosecution, Mr. Robeson is not admitting that any of the allegations are in fact true.  That is why he asserting his Fifth Amendment rights.   His reliance on the government's allegations only go to the question of whether he has a fear of future prosecution and is not any sort of admission of guilt.

3

E. The government stated that "the immunized testimony he seeks would be more likely to convict him than help him mount an effective defense."

On January 26, 2022, this Court denied the motion to compel. (ECF 428. Page ID2928-2930). The components of the Court's ruling included:

A. A Court does not have the authority to grant immunity to a witness in the absence of a government request;

B. There was no showing that the government had granted"selective immunity," i.e. granted immunity to its own witnesses but not to the defendant's witnesses'

C. There was no showing, or even an attempt to show, prosecutorial misconduct.

**B. Rule 12 Motions to Dismiss**

The defendants filed a Rule 12 Motion seeking to dismiss the charges on the grounds that "egregious" conduct by the government constituted entrapment as a matter of law. (ECF 379 and 399). This Court denied the Motion. (ECF 421, Page ID 2899-2904). The components of that ruling included:

A. Entrapment requires evidence that "demonstrates a patently clear absence of predisposition," citing *United States v. Amawi*, 695 F.3d 457, 583 (6ᵗʰ Cir. 2012);

B. The fact that there was government inducement is not enough to establish entrapment. The key element of an entrapment defense is a lack of predisposition, citing numerous cases, e.g., *Amawi,* 695 F.3d at 483*; United States v. Tucker*, 28 F.3d 1420, 1422-1428 (6ᵗʰ Cir. 1994);

C. "The key question when determining predisposition is whether law enforcement planted a criminal design in the mind of an otherwise law-abiding citizen or whether the government merely provided an opportunity to commit a crime to one who was already

4

predisposed to do so," citing *United States v. Al-Cholan*, 610 F.3d 945 (6th Cir. 2010);

D.  The Sixth Circuit Model Jury Instructions set for six factors for the jury to consider when evaluating a defendant's predisposition. SIXTH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTION Sect. 603;

E.  The inducement prong generally requires "excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive," citing *United States v. Dixon*, 396 Fed. Appx. 183 (6th Cir. 2010).

The defendants had not made a sufficient showing to justify dismissal of the charges.

## 5.  The Two Defendants' Joint Motion

### A.  Overview

The "law-of-the-case doctrine states that "findings made at one stage in the litigation should not be reconsidered at subsequent stages of the same litigation." *Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016). The doctrine recognizes that for case to reach resolution, issues cannot be argued and reargued without end. *E.g., Messenger v. Anderson*, 225 US 436 (1912).

The Defendants' Joint Motion does not acknowledge this Court's prior rulings and does not explain how those rulings affect their current request. The Joint Motion also does not address the government's detailed list of possible acts which could lead to criminal charges against Mr. Robeson. The Joint Motion does not address the government's opinion that Mr. Robeson has a plausible Fifth Amendment claim. Finally, the defense does not assert that there has been any prosecutorial misconduct, e.g., a *Brady* violation. Mr. Robeson respectfully submits that this Court's prior rulings constitute the law of the case and that they are binding for purposes of deciding the Joint Motion. Among other things, there are two principles that particularly

apply: a) neither the defense nor the Court can immunize Mr. Robeson. If he is forced to testify and if he is denied his Fifth Amendment rights, anything he says could be used against him in a subsequent criminal proceeding in any state or federal jurisdiction other than federal court in Wisconsin; and b) the defense must demonstrate that the testimony would be relevant to the defendants' predisposition or lack thereof, i.e, the government's conduct is the least important of the two prongs of an entrapment defense.

### B. Discussion of the two Defendants' Arguments

The defendants discuss Mr. Robeson's history and as snitch and as an informant. (Br., pp. 1-2). The defendants characterize Mr. Robeson as a "direct link that the defendants have to the alleged conspiracy." (Br., p. 2). The defendants describe their version of Mr. Robeson's conduct within the conspiracy. (Br., p. 3). The defendants assert that the government or its handlers "were aware of his actions and continued to provide him with compensation." (Br., p. 3).

Counsel responds that:

A. The defendants ignore the actions which Mr. Robeson allegedly undertook without the knowledge of the government. According to the government, those actions actually aided the defendants and the alleged conspiracy. (ECF 419, Page ID 2881-2882). The government's descriptions of Mr. Robeson's possible illegal conduct is expanded in the government's opposition to the Joint Motion to Compel. (ECF 571, Page ID 4568-4577).

This is the conduct which apparently has already resulted in criminal charges and a conviction in Wisconsin and which could easily result in state or federal prosecutions in jurisdictions other than Wisconsin.

6

B.  The defendants focus is entirely on the inducement prong of the entrapment defense. They make no representation that Mr. Robeson could testify favorably about the predisposition prong.  If forced to testify, Mr. Robeson could well testify that the defendants were very predisposed to commit the crimes with which they are charged.  Such testimony would be consistent with the government's allegations that Mr. Robeson actually assisted the conspirators. Such testimony would also be consistent with the government's opinion, noted *supra*, that Mr. Robeson's testimony could be more harmful than helpful to the defendants.

C.  The defendants are not alleging any prosecutorial misconduct which would be allegedly hidden if Mr. Robeson successfully asserted his Fifth Amendment rights;

D.  The defendants have had ample opportunity to cross-examine government witnesses and to present the jury with reasons why they should be able to successfully argue entrapment. to the jury.  If Mr. Robeson were compelled to testify, it appears that his testimony (even assuming it was consistent with the defendants' expectations) would be at most cumulative; and

E.  The defendants allege that Mr. Robeson does not have a "well-founded fear of prosecution." (Br., p. 4).  This assertion ignores the fact that Mr. Robeson has already been federally prosecuted in Wisconsin and that, in the government's previous pleadings, the government explained why Mr. Robeson had a "plausible" Fifth Amendment claim, i.e., a well-founded fear of prosecution. (ECF 419, Page ID 2881-2882).  Moreover, in its opposition to the current motion to compel, the government is even more explicit in outlining reasons why Mr. Robeson has a well-founded fear of criminal liability. (ECF 571, Page ID 4568-4577).

Mr. Robeson respectfully submits that all of these reasons support a decision by this Court to deny the motion to compel his testimony by depriving him of his Fifth Amendment

rights.  The defendants have simply not alleged facts which support forfeiture of one of a persons's most important constitutional protections.

The next section of the defendants' brief argues that Mr. Robeson does not have any substantial or real cause to fear prosecution.  (Br., pp  4-6).

At the threshold, the motion seeks to compel Mr. Robeson to testify by depriving him of his Fifth Amendment privilege.  Most of this section of the brief deals with the possible procedure to be followed if a witness is allowed to assert his privilege.  If this Court denies the Motion to Compel, Mr. Robeson will be asserting the Fifth Amendment as to all questions asked by the defense.  Mr. Robeson will leave the question of how the privilege will be asserted to the Court's discretion.  The government has weighed in on the issue by proposing voir dire outside the presence of the jury, followed by a decision to bar his testimony. (ECF 571, Page ID 4577). Mr. Robeson has no objection to this proposal, but defers to the Court as to the ultimate procedure.

This section of the brief also does not really address any reasons why Mr. Robeson would not have a well-founded fear of prosecution.  For example, the defendants do not discuss the fact that he has already been prosecuted and convicted or the government's recitation of the many reasons why additional criminal charges might be brought.  Mr. Robeson submits that both of these factors support his assertion of his Fifth Amendment rights and that, for that reason, the Motion to Compel should be denied.

None of the three cases cited by the government support the defendants' compulsion argument.  For example, in *United States v. Koubriti*, 297 F.Supp.2d 955 (E.D. Mich 2004), it was undisputed that the government had not provided the defense with Brady material.  There is

no such claim of prosecutorial misconduct in this case. The Court correctly decided that a letter and written notes made by the defendant were not shielded by the Fifth Amendment. However, the Fifth Amendment did protect the defendant in that he could not be compelled to testify about why he had written the letter, taken notes, and given the notes to his attorney. There are no documents at issue in this case, and, as in *Koubriti,* Mr. Robeson should be permitted to assert the Fifth Amendment because any testimony could be possibly used against him in future federal or state prosecutions, including prosecution for his alleged efforts to protect the defendants in the instant case.

In *United States v. Gibbs*, 182 F.3d 408 (6th Cir. 1999), the Court cited cases for the propositions that "[a] defendant's right to force a witness to testify must yield to that witness' assertion of his Fifth Amendment privilege against self incrimination, where it is grounded on a reasonable danger of prosecution," and that a district court "has broad discretion to determine whether or not the claim to the privilege has merit." The Sixth Circuit affirmed the district court's finding that the witnesses "had a reasonable fear of prosecution for federal crimes not encompassed by their plea agreements." 182 F.3d at 431. Similarly, Mr. Robeson has a reasonable fear of prosecution because he has already been prosecuted and because the government has taken the position that he both acted outside authorized parameters and assisted the defendants by so doing.

In *United States v. Ballard*, 280 Fed Appx 468 (6th Cir. 2008), the defendant was accused of being a felon in possession of a firearm. The firearm had been discovered in the grass after a police chase, and the government's position was that the defendant had discarded the firearm before being interrogated by the police. The witness at issue was the defendant's cousin who had

been a passenger in the automobile when it had been stopped.  The cousin had told conflicting stories, i.e., the firearm was not his and he had possessed the firearm and thrown it out the window of the car.  The cousin indicated that he would assert the Fifth Amendment if called as a witness.  The district judge prohibited the defendant from calling the cousin as a witness in his defense and the Sixth Circuit affirmed.  The Sixth Circuit concluded that the district judge had correctly balanced the prejudice to the defendant against the prejudice to the government and that the jury had bee correctly instructed that no inferences should be drawn for or against either the defendant or the government by the cousin's invocation of the Fifth Amendment.  Similarly, in this case, Mr. Robeson has a well-founded concern about his criminal risk and his testimony could well be adverse to the defendants on the predisposition prong.  This Court can give whatever instruction it deems appropriate to ensure that the jury does not draw improper inferences from Mr. Robeson's assertion of the Fifth Amendment.

There is an additional principle that is pertinent.  Specifically, failure to assert the privilege in this proceeding could waive the privilege in any subsequent proceedings.  *E.*g., *Garner v. United States*, 424 US 648 (1976); *United States v. Kordel*, 397 US 1 (1970).  Because there is a real risk of subsequent prosecution, Mr. Robeson is compelled to assert the privilege.

In sum, the defendants have not given any persuasive reasons about why Mr. Robeson does not have a well-founded concern about prosecution and they have also not given any reasons why Mr. Robeson should be required to forfeit his Fifth Amendment rights.  None of the cases cited by the defendants require a different result.  Accordingly, Mr. Robeson, is respectfully asking the Court to deny the Motion to Compel.

The final section of the defendants' brief argues that Mr. Robeson has no concerns about

prosecution because he was acting under authorization from the FBI. (Br., pp. 6-8).  At the threshold, this assertion has been repeatedly denied by the government.  An example is the government's most recent filing which goes into great detail describing alleged actions taken by Mr. Robeson that were allegedly not authorized by the FBI and which were arguably designed to help the conspirators and not the FBI's investigation. (ECF 571, Page ID 4568-4577).  The defendants' contrary assertions appear to be without merit.

The two cases cited by the defendants are also distinguishable.

In *United States v. Levin,* 973 F.2d 463 (6th Cir. 1992), the defendants were medical professionals who had participated in a marketing program approved by a government agency. The evidence showed that: a) the government agency had in fact declared the sales promotion program to be legal; b) the defendants relied upon the government agency's approval; and c) that reliance was reasonable.  The Sixth Circuit upheld the dismissal of many criminal charges with prejudice.  The Sixth Circuit concluded that the evidence was undisputed and that, as a result, the government, as a matter of law, could not prove intent beyond a reasonable doubt.  Criminal intent was one of the elements of the charged offenses.

In the instant case, the government has repeatedly alleged that Mr. Robeson acted outside of the authority given to him by the FBI.  He also allegedly gave assistance to the targets of the investigation.  When the government learned about what Mr. Robeson was allegedly doing, his role as a confidential human source was terminated.  These facts are completely different from *Levin*.  The *Levin* defendants prevailed because they had acted in accordance with the approved program.  Mr. Robeson allegedly did not.

In *United States v. Hathaway,* 2011 WL 3156075 (W.D. Mich. 2011) (Bell, J), the

11

defendant was charged with manufacturing marijuana and conspiracy to manufacture marijuana. According to the defendant, a state police officer had told him that there was "not enough evidence of criminal activity to initiate a criminal case." The defendant moved to dismiss the indictment on the grounds of entrapment by estoppel. The district court denied the motion. At the threshold, a state official cannot bind the federal government. Thus, even if the state officer had made the statement, that statement was irrelevant to a federal prosecution. Moreover, the doctrine "cannot be based on retroactive permission to engage in criminal conduct." The defendant had been growing marijuana before speaking with the state officer and did not change his conduct based upon what the state officer had said to him. The defendant's motion to dismiss was denied.

Leaving aside the cases, it is Mr. Robeson's further position that he would likely not be able to assert the doctrine of entrapment of estoppel. As *Levin*, makes clear, a person must have received assurance from the government and must have reasonably relied upon that assurance. In the instant case, Mr. Robeson allegedly received no assurance that he could act outside of the authorized parameters. Nor had he been authorized to take actions that allegedly assisted the targets of the FBI's investigation. Thus, even if Mr. Robeson were to assert entrapment by estoppel in response to being prosecuted, he would, like *Hathaway*, likely fail to convince the Court to dismiss any criminal charges based on his unauthorized acts.

Defendants' arguments on page 8 of their brief are based on the assumption that Mr. Robeson's actions were authorized. While it is likely that at least some of his actions were authorized, the government's repeated position is that many of his actions were not. Possible prosecution would be based on the allegedly unauthorized actions rather than approved actions.

12

It is important to note that even though the defendants had the benefit of the government's previous pleadings about Mr. Robeson (ECF 419), the defendants do not acknowledge those pleadings or make any attempt to challenge the government's description of Mr. Robeson's allegedly unauthorized conduct.

Finally, the government has filed its own opposition to the Motion to Compel. (ECF 571). Mr. Robeson submits that the combination of his opposition and the government's opposition are sufficient to justify a denial of the defendants' Motion to Compel.

### Conclusion

For all of the reasons stated, Mr. Robeson is respectfully asking this Court to deny the Defendants' Motion to Compel and to uphold Mr. Robeson's right to assert the Fifth Amendment in response to any questions asked by either the defendants or the government.

Respectfully submitted,

Walker, MI
March 28, 2022

   /s/ Lawrence J. Phelan
Lawrence J. Phelan (P37493)
Attorney for Mr. Robeson
14080 Windemere NW
Walker, MI 49534
(616) 293-3070
lphelan.hp@gmail.com

13