**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

THE UNITED STATES OF AMERICA,   Case No 1:20-CR-183-RJJ

        Plaintiff,   Hon. Robert J. Jonker
                                          Chief District Judge

V

ADAM FOX, et al.

        Defendants.

DEFENDANT ADAM FOX'S
REQUEST FOR JUDGMENT OF ACQUITTAL

NOW COMES the Defendant, Adam Dean Fox, by and through counsel, Christopher M. Gibbons, of the Law Offices of Gibbons & Boer, and requests that this Honorable Court grant Defendant Fox a Judgment of Acquittal as to Counts 1 and 2 of the Superseding Indictment pursuant to FRCP 29(c) and in support states as follows:

After weeks of testimony and the Government's admission of over four hundred exhibits of evidence into the record in the above referenced matter on April 8, 2022, the Jury failed to return a verdict on either Count 1, conspiracy to kidnap, or Count 2, conspiracy to use a weapon of mass destruction against Defendant Adam Fox. The Jury also failed to return a verdict as to Defendant Barry Croft on Count 1, Count 2, and Count 3 possession of an unregistered destructive device. Defendants Daniel Harris was acquitted on Counts 1, 2, 3, and 4 and Brandon Caserta was acquitted on Count 1. In sum, the Government failed to prove any charges alleged in the Superseding Indictment to the Jury beyond a reasonable doubt.

Defendant Adam Fox requests the Court to enter an order acquitting him on both Count 1 and Count 2, as the Government's evidence on both these counts specifically failed to establish that Adam Fox engaged in a conspiracy with any of the other defendants in the superseding indictment or any other person other than, arguably, a government informant or agent.

> A district court may enter a judgment of acquittal if the government's proofs are legally insufficient to sustain a conviction. Fed. R. Crim. P. 29. In resolving this question, the court must view the evidence "in the light most favorable to the prosecution," and may not enter a judgment of acquittal if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Paulus*, 894 F.3d 267, 274, 2018 (6th Cir)

While the evidentiary standard for a conspiracy is somewhat fluid, it does demand that the Government produce evidence of an actual *agreement* between the alleged conspirators. This is a specific and sharp distinction from evidence of a conspiracy with an undercover agent or informant. [1] The evidence presented at Trial, even when viewed in the light most favorable to the Government, did not establish that there was an agreement between Adam Fox and any of the other defendants to kidnap the Governor or to purchase and use a "weapon of mass destruction" in furtherance of that kidnapping. A government agent or informant cannot be a conspirator. See *United States v. Kuehne*, 547 F.3d 667, 678, 2008 (6th Cir).

### THE GOVERNMENT PRODUCED INSUFFICIENT EVIDENCE OF A CONSPIRACY BETWEEN ADAM FOX AND HIS CO-DEFENDANTS AND A JUDGMENT OF ACQUITTAL ON COUNTS 1 AND 2 SHOULD BE GRANTED

The Government produced evidence that Adam Fox attended the April 30, 2020, protest at the Capitol in Lansing wearing a Hawaiian floral shirt and open carrying an AR style rifle. On April 30th, Fox was one of many protesters who were lawfully admitted to Michigan Capitol Building in Lansing. Mr. Fox and the other citizens were lawfully present in the rotunda of the

---

[1] The Government did not present evidence of other known or unknown unindicted co-conspirators at Trial.

Michigan Capital Building on that day and were photographed by law enforcement. Fox was wearing a floral shirt, which the Government argues is a "Boogaloo" movement trademark. (Governments Exhibit 58)

At trial, the Government argued that Adam Fox and Barry Croft had developed a "plan" to kidnap Governor Whitmer. Fox and Croft were motivated by their devotion to the "boogaloo" ideology. The Government presented no evidence that established what any of the details of the alleged agreement were. There was no evidence presented that established when or where "the plan" was made. Numerous Federal Agents and CHS "Dan" repeatedly testified that there was agreement was to "kidnap and kill the Governor" but there was no evidence produced to support the reality of this repeated assertion.

> The unlawful combination being the gist of the conspiracy, it follows that there must be an agreement of some kind willingly entered into by the parties to it. There must be *unity of design or purpose, a concert of will and endeavor, comprising what has been agreed to*.

*United States v. Bostic*, 480 F.2d 965, 968, 1973 (6th Cir) (emphasis added) The Government presented no evidence that established when the alleged agreement to kidnap the Governor was made, who took part in making the agreement or "what had been agreed to" specifically.

The Government introduced evidence that On June 6, 2020, that Fox attended a meeting in Dublin, Ohio. The meeting was organized and paid for by informant CHS Robeson, who recorded the meeting. Robeson specifically stated that they "train in kill houses" and urging the group to make a plan:

> I want to fucking go and ain't worried about nothing. We, we, we train in the fucking kill houses. That's what we do. But we still can't go somewhere, not have a plan, and then something to do afterwards. Okay, we go somewhere, we take something, then what are we doing? (Governments Exhibit 34)[2]

---

[2] It is troubling that CHS Robeson, who has a lengthy criminal history, was paid by the FBI to procure evidence which the Government presented at Trial against the defendants while Robeson

During the recorded meeting Fox stated that the militia was misunderstood, and steps should be taken to address the negative perception that they are violent, destructive, "domestic terrorists." (Governments Exhibit 41) There was no evidence of any agreement to kidnap the Governor was made by or between anyone, and more specifically, between the charged defendants. The meeting was staged with inflammatory anti-government rhetoric being provided by CHS Robeson and other informants. The meeting, though calculated to produce more than extreme rhetoric, failed.

On June 14, 2020, CHS Dan, the XO of the Wolverine Watchmen called Adam Fox and invited him to train with the group. Fox stated they needed to be working together to unite the militias. Again, there was no discussion or evidence or an agreement to kidnap the Governor. (Government's Exhibit 57) The Government presented a photograph of Adam Fox at a rally in Lansing on June 18, 2020, again legally carrying his AR style rifle and wearing a floral shirt. (Government's Exhibit 58) CHS Dan testified that from the photograph of Fox in Exhibit 58 he could determine that Fox's gun was loaded and that there was a "round in the chamber" of the gun. CHS Dan was wearing a wire on June 18, 2020, at that rally. No recordings of Fox from the rally were admitted. The Government's expert on firearms, Mike Jacobs, an ATF agent, testified on cross-examination that there was no way to determine from Exhibit 58 that Fox's firearm was loaded as testified to by CHS Dan.[3] On June 20, 2020, Fox hosted a meeting in his "bedroom" at the Vac Shack where he was living and working. Kidnapping the Governor was not discussed. In an excerpt from the meeting, defendant Fox characterized the meeting as a "brainstorming"

---

was permitted to assert the 5th amendment and refused to testify. The Government should not be permitted to hire criminals to obtain evidence in a manner that FBI Agents would not be permitted to employ, like providing marijuana and moonshine to their targets, and offering credit cards and weapons.

[3] This was one of several misleading statements made by CHS Dan, which included misleading statements about his injuries from military service and the nature of his employment.

session. The meeting was attended by CHS Dan, and two other persons Dan brought to the meeting. One other individual, who is of no consequence to the case was also present. The Government placed approximately four minutes of the nearly four-hour encounter into evidence. (Government Exhibits 64, 65, and 66)

The Government entered into evidence Adam Fox's III% Militia "business" card, the testimony was that the cards were located on October 7, 2020, in a cardholder by the cash register at the Vac Shack. (Governments Exhibit 420) On June 22, 2020, a recruit reached out to Adam Fox on Facebook. "Mark" from the Upper Peninsula wrote that his girlfriend "Elise" knew Amanda Keller. Mark was looking to get "more involved." "Elise" thereafter contacted Adam Fox on many occasions through Facebook messenger, telling Fox he had a "patriot heart of gold." (Defendant's Exhibit 2276) Both Mark and Elise were undercover FBI agents. On June 23, 2020, Special Agent Jayson Chambers sent two text messages to informant CHS Dan, "Got to get Adam focused" and "Get him in a leadership chat". (Defendants Exhibits 2286 and 2287)

On July 3, 2020, UCE Mark came to the Vac Shack in Grand Rapids to meet Adam Fox. The meeting was recorded in its entirety, over two hours. The Government played about four minutes of the meeting. While during that four minutes Fox's comments are hardly commendable, i.e., the Governor is a "bitch" and she should be "hog tied" on a table, unconstitutional tyranny, storming the Capital, and using "force." (Governments Exhibits 72-76). Fox did not discuss details of a developing plan to kidnap the Governor, nor did Fox indicate that he has any established goals or plans for action. In addition, Fox was making the statements to a Government Agent only, a government agent requested to meet with Fox and drove to his work meet with Fox. Contrary to the Superseding Indictment, Adam Fox had not been actively attempting to recruit men into a conspiracy to kidnap the Governor since June of 2020. (ECF 172 Page ID 963 Paragraph 2)

On July 11 and 12, 2020, Fox attended a training in Cambria, Wisconsin. All the defendants named in the superseding indictment were present. While the Government produced dozens of exhibits from the Cambria event showing the various defendants engaged in firearms training, flag waving, and statements of generalized anti-government feelings there was no evidence that Adam Fox or any other defendant engaged in any conspiratorial activity in Cambria.

Following the Cambria FTX, CHS Robeson held another meeting in Peebles, Ohio on July 18, 2020.  The participants were asked to put their names and current phone numbers on a "sign in sheet."  If Adam Fox had attended the meeting in order to plot the kidnapping of a sitting United States Governor, would he "sign in" leaving his legal name and telephone number? (Government's Exhibit 111) The Government introduced two recordings that included Adam Fox from the July 18, 2020, meeting, one stating that Governor Whitmer had a "palace" that she secretly maintained as an office somewhere outside of Lansing, that they should make "go boom" and "not be there anymore". On the second recording Fox states he is "fed up" but understands they are not ready, not trained, but could prepare for some undefined course of action or objective. (Government's Exhibits 113 and 115) While the statements are certainly not polite, they are not statements that evidence any active, credible, conspiracy to kidnap the Governor of Michigan from her home in Elk Rapids, Michigan.

On July 27, 2020, CHS Dan came to the Vac Shack took Adam Fox out for lunch and then sat with Fox at the Vac Shack. The entire visit lasted close to five hours. The Government introduced two audio clips, approximately 30 seconds each. (Governments Exhibits 127 and 128) In both, Fox is stating that he thinks "the snatch and grab" of the Governor is the "way to go", from her "Mansion" on Mackinac Island. On cross-examination CHS Dan admitted that at this same meeting he had suggested to Adam Fox that he fire rounds into the Governor's Lake House

and mail the bullet casings to her to her office. Dan suggested that Fox should arrange a multi-state coordinated attack to shoot rounds into the homes of multiple governors, or that he could fire rounds into a "sports resort."  Dan also admitted that when the Mackinac Island "snatch and grab" was discussed that the use of multiple boats. a Blackhawk helicopter, and a K-Iowa helicopter were discussed as well. CHS Dan admitted that on August 9, 2020, he suggested an "ambush" of the Governor on the way to her lake house and placing a Tannerite bomb next to the lake house property. CHS Dan also admitted that on at least five occasions he offered a free "credit card" to Fox that he could use to purchase weapons or conduct surveillance. Fox did not ever accept the Credit Card, despite being extremely poor, and living in a vacuum store basement with no running water. CHS Dan admitted that he did not ever suggest legal actions to Fox while acting on behalf of the FBI.

If Adam Fox were a part of an established active conspiracy to kidnap the Governor, why would CHS Dan be constantly suggesting other equally violent crimes? Fox's statements on July 27, 2020, clearly evidence that the whole idea of a "snatch and grab" had been raised at some point prior to when that recording was made. The brief audio clips clearly reference "snatching" the Governor, but they are statements made by Adam Fox to CHS Dan only, in complete isolation from any other context. As a result, these cannot be conspiratorial, unless there was some evidence introduced to show that Fox had made an agreement with one of the other Defendants. It is well settled that a government informant cannot be a conspirator. A conspiracy cannot be proven by an agreement between a defendant and an informant. See *United States v. Rogers*, 118 F.3d 466, 477 (6th Cir.) Fox is communicating only with a government informant. The Government produced no evidence that Fox was having independent communication of any kind with any of the other Defendants.

According to the Government, Ty Garbin, Kaleb Franks, Daniel Harris, and Brandon Caserta were prepared to serve as a "kill squad" of "operators" who would be carrying out "Adams Plan" to kidnap the Governor. Both Garbin and Franks testified that they did not know the specific details of how the actual kidnapping was to be accomplished. Kaleb Franks testified he was not clear what "role" played. Both Garbin and Franks testified that they had agreed that they would participate in the "plan" when they were out on a nature hike with Daniel Harris in early August, three months after the superseding indictment alleges the conspiracy was formed. Harris denied that any such agreement had taken place. The Jury acquitted Daniel Harris and Brandon Caserta. This testimony was not accepted by the jury.

Both Garbin and Franks testified that they did not communicate with Fox directly by text or phone, they did not have in person meetings with Fox. Fox had never been to dinner with Garbin, or Franks and he had never been to their homes. Harris also testified that he did have any independent communication with Adam Fox. The Government did not produce any evidence that there was any communication between Adam Fox, Ty Garbin, or Kaleb Franks that occurred independently of the presence of or direction of CHS Dan. Adam Fox was invited into the Wire encrypted chats by CHS Dan, and CHS Dan was the creator of the encrypted group chat on Threema. The encrypted chat group was the exclusive method of communications between Adam Fox, Ty Garbin, Kaleb Franks, Daniel Harris, and Brandon Caserta. It is also important that there were several other unindicted individuals that belonged to the same chat group. It was well established that Barry Croft was not invited to and did not participate in any of the encrypted chat groups. The Government did not produce any group chat evidencing an agreement to kidnap the Governor or to use a bomb to blow up the interstate bridge in Elk Rapids. The Government produced a generic pie chart summary of "encrypted chats" showing the frequency of participation

in the group chat. (Government's Exhibit 422) The content and substance of the chats themselves did not reveal any agreement between Adam Fox with anyone to kidnap the Governor or purchase a weapon of mass destruction. Obviously, if such a chat had occurred the Government certainly would have featured in prominently within their case at Trial.

The Government did not produce any evidence that Adam Fox conceived or proposed the idea of kidnapping the Governor or the surveilling the Governor's house in Elk Rapids on August 29, 2020, or September 12, 2020. From August 18 to August 28, 2020, Special Agent Jayson Chambers sent informant CHS Dan the following text messages, "Might need to eventually start bugging people to find the locations for Sunday.", "If Adam is out of town this weekend, we should re-schedule the north trip", "Try to get as many as possible to go with for Saturday", "Also include a drive by location 1 if possible", "Discuss swinging by location 1 on the way back" (Defense Exhibits 2289-2293) It is clear that Agent Chambers was instructing CHS Dan to create the drive by "recon" of the lake house and to get "as many as possible" to go, but most importantly Adam Fox.

CHS Dan admitted that he had suggested looking for the Governor's vacation house on August 9, 2020, and that he had invited Adam Fox to go along on the ride. Dan also admitted that he had the "realtor app" on his phone to find the Governors address, not Fox. Dan admitted that he had provided the paper and pen to Fox on which Fox drew the infamous "map." Dan admitted that Fox did not draw the Governors home on the map or write her address on it. Dan also admitted that Adam Fox did not keep the map, and that he had personally taken the map and given it to the FBI. On August 30, 2020, Special Agent Jayson Chambers sent informant CHS Dan the following text message "Have him post his pictures". (Defense Exhibit 2295) When he was prompted, Adam Fox shared the pictures of the Governors Lake House with CHS Dan, but no evidence was entered

9

that Fox shared them with anyone else, including the named Defendants. There was no evidence that Adam Fox ever shared the address of the Governor's house with anyone in the group.

On September 3, 2020, Agent Jayson Chambers sent informant CHS Dan the following text message "Let's start talking details of the night op with Adam". Ty Garbin testified that he hosted an FTX at his property on September 11, 12, and 13. Ty Garbin testified that on September 12, 2020, it was CHS Dan who invited him to go on the night ride to find the Governor's Lake house, not Adam Fox. The evidence showed that group did not find the governor's home on September 12, 2020, because they were looking for the *wrong* address. Fox never provided the group with the correct address. The Government admitted Exhibit 263, a recording of Kaleb Franks the following day stating he did not know that Dan and Adam Fox had driven past the Governor's home, further evidence that Fox was not conspiring with the other Defendants, and he was not sharing information about the Governor's Lake House.

CHS Dan admitted that when the time arrived for Adam Fox to go on the night ride along, he did not know where Fox was and could not reach him by phone. CHS Dan admitted to calling and texting Fox, eventually getting him on the phone and instructing him to return to Luther and retrieve more participants and to meet Dan, Red, Robison, and Croft at the Walmart in Cadillac. One vehicle was driven by FBI Agent UCE Mark, one by CHS Dan, paid informant, and one by Brian Higgins from Wisconsin who came with CHS Robeson, paid informant. The three vehicles managed to make it to Elk Rapids around midnight, but the group had an incorrect address for the Governors vacation home and could not find it, so that was as far as the "surveillance" went.[4]

---

[4] A notable exception was the testimony of UCE "Red" who testified that Garbin and Franks found the address and signaled the group on the other side of the lake with the illuminator, in contradiction to the testimony of "Dan," UCE "Mark", Ty Garbin, and Kaleb Franks. This testimony was directly contradicted by CHS Dan, UCE Mark, Ty Garbin and Kaleb Franks, who all testified that the cottage was *not* located, and no lights were used to mark the residence.

FBI Agent UCE Red was posing that weekend as a retired Army Ranger who could provide "explosives" to the group. UCE Red admitted on cross-examination that on the "night-recon" he told Adam Fox to bring his phone and come with him under the bridge in Elk Rapids, and that he instructed him to take a picture of the bridge, photographing Fox as he did so. UCE Red also admitted that Adam Fox did not take his phone number when he offered it, that Fox made no attempt to contact or communicate with him following that event, and that Fox did not attempt to share the picture of the bridge with him. In addition, there was no evidence that Fox attempted to contact anyone else following the weekend in Luther.

By the weekend of the Luther "FTX" Adam Fox was with a Federal Agent or paid Federal Informant being recorded for every waking moment for the entire weekend. FBI Agent UCE Red admitted that he had offered Adam Fox explosives on an "IOU" basis and that Fox had qualified any commitment to purchase explosives by stating that he had to make sure "everyone was on board" (Defense Exhibit 2304) There was no evidence of a group agreement to purchase explosives from UCE Red. The Government did not establish that there was any bomb purchase made in Luther nor did they establish that Adam Fox went with Dan on October 7, 2020, to purchase explosives. The evidence showed that CHS Dan had invited everyone to go to BW3 and get free gear from Red. The Evidence showed that Adam Fox had received a large payment of back unemployment from the State of Michigan on October 1, 2020. On October 7, 2020, Adam Fox had over four thousand dollars in the bank and six-hundred dollars in cash at the Vac Shack. (Defense Exhibit 2305, Governments Exhibit 375) UCE Red testified Adam Fox never made any attempt to contact him and he did not accept Red's phone number when he offered it to Fox.

Government agents may not originate a criminal design. See *Jacobson v. United States*, 503 U.S. 540, 548, (1992) Yet that is precisely what occurred here. In this case, the Government

11

produced evidence that Adam Fox was prone to speaking offensively, making objectively anti-government statements, and juvenile remarks casually advocating violence. The Government produced hundreds of Facebook posts, inflammatory memes, political rants, flags, Hawaiian shirts, legal weapons, legal ammunition, legal body armor, legal helmets, and books with "suspect titles." All of this "evidence" was intended to create the inference that Adam Fox was engaged in a sophisticated, paramilitary exercise designed to kidnap the Governor. The Government did not provide any evidence that Fox was even communicating with any of the other Defendants to agree, plan, or otherwise pursue the kidnapping of the Governor. The evidence presented by the Government was insufficient.

      Wherefore, Defendant Adam Fox, requests that this Court grant him a Judgement of Acquittal pursuant to FRCP 29(c) on both Count 1 and Count 2 of the Superseding Indictment in the above referenced matter.

Dated April 22, 2022,                                Respectfully Submitted,

                                                  /s/*Christopher M. Gibbons*
                                                  GIBBONS & BOER
                                                  Christopher M. Gibbons
                                                  2404 Eastern Ave SE
                                                  Grand Rapids MI 49507
                                                  616-460-1587
                                                  cgibbons0003@gmail.com

13