IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

THE UNITED STATES OF AMERICA,

                Plaintiff,                Case No 1:20-CR-183-RJJ

V                                                    HON. ROBERT J. JONKER

ADAM FOX,

                Defendant.

BRIEF IN SUPPORT OF MOTION TO
MODIFY THE COURTS PRETRIAL ORDER TO ALLOW EVIDENCE
REGARDING SA CHAMBERS OWNERSHIP OF *EXEINTEL*, LLC

      Now Comes Defendant Adam Fox, by and through Counsel, Christopher M. Gibbons of the Law Offices of Gibbons & Boer, and in support of his motion to allow the presentation of evidence regarding SA Chambers ownership of *Exeintel*, LLC.

FACTS

      In December of 2021, the Government filed a motion to exclude any inquiry into several issues relating to the conduct of three Federal Agents that were involved in the investigation and indictment of the defendants in this matter. One of the issues raised was SA Jayson Chambers ownership of a private limited liability company, *Exeintel*, LLC. The Court issued an order granting the Governments motion on February 2, 2022.

      After the Court's order, the Government made a *Jencks* disclosure that contained the text messages between SA Chambers and CHS Dan, the primary CHS involved in the underlying

investigation. In addition, the disclosure contained text messages between SA Chambers and another FBI Agent assisting with the case. These text messages, and testimony at the trial, revealed that SA Chambers was the primary agent who controlled the entire direction of the investigation in this matter, including the creating and monitoring the daily activities and communications of CHS Dan. In addition, the messages show that on April 2, 2020, SA Chambers received a text stating:

"I heard dtos[1] denied?"

SA Chambers replied:

"I am pretty sure I said something along the lines of"

"I'm going to be working this as a TEI[2] whether you give me the paperwork or not"

(See Exhibit A). SA Chambers acknowledged that he had sent the texts apparently bragging about working this case as a TEI without authorization during the first Trial in this matter.

The February 2, 2022, Order prohibited any inquiry into Exeintel, LLC or SA Chambers relationship to it. This Court noted that the security consulting firm was "linked" to SA Chambers. In addition, the Court noted that there was "nothing to indicate Chambers has a financial stake in the outcome of this case" and stated that Chambers was seeking "to become a sub-contractor to an existing company in one narrow niche". This Court acknowledged that the materials provided to the Court showed SA Chambers "desire to grow into a full-scale business – but only after Chambers leaves the FBI." See ECF 439 Order 2/2/22 P 24-25. This Court held that the potential prejudice of delay and distraction substantially outweighed whatever evidentiary value SA Chambers interest in Exeintel may have.

---

[1] DTOS is believed to refer to the FBI's Domestic Terrorism Operations Section
[2] TEI refers to a "Terrorism Enterprise Investigation" – the most complex sort of terrorism investigation conducted by the FBI.

Based on the new understanding of Mr. Chambers' motivation that were disclosed in the *Jencks* material, Mr. Fox requests that the Court permit inquiry regarding SA Chambers ownership of Exeintel during the investigation and indictment of these Defendants. While this Court has broad discretion to limit or exclude the presentation of evidence to minimize delay or distraction these considerations should not outweigh the Defendants fundamental right to present a defense and to inquire of a witness. Defendant is requesting this Court to modify the 2/2/2022 pretrial order to permit a limited and defined inquiry: specifically, to establish on the trial record that SA Chambers owned, and was developing, a private internet security consulting business from April 4, 2019, until December 14, 2021. Second, to argue in defense that SA Chambers personal interest in Exeintel, LLC affected his judgement during the investigation of the defendants in this case.

Establishing SA Chambers interest in Exeintel, LLC is neither time consuming nor is it confusing or distracting. SA Chambers is not merely linked to Exeintel, LLC nor was he a subcontractor for the company in a narrow role. Exeintel, LLC was a single member limited liability company owned by SA Jayson Chambers. (See Exhibit B – Articles of Organization). His ownership of the company is a matter of public record. SA Chambers owned this private company throughout the entirety of the investigation, arrest, and indictment of the defendants in this case. The company was dissolved on October 29, 2021. (ECF 388-4 Page ID 2678 12/31/21). It is not time consuming or difficult to present this evidence to a Jury.

This Court relied on the conclusion that SA Chambers did not have a "financial stake" in the outcome of this case and that his resume did not specifically reference this specific federal case. However, SA Chambers resume did outline his work at the FBI describing himself as a "Senior Counter Terrorism Special Agent" and provided a list of "Notable Case Successes Utilizing Online Undercover Techniques" listing three separate closed cases that had successfully

ended in indictments. (See ECF 388-3 Page ID 2674 12/31/21). SA Chambers was clearly seeking to promote his private company based on his work as an FBI agent. If the *Muse* case referenced in his resume could be used to encourage a client to hire Exeintel, the successful disruption of a domestic terrorism plot to kidnap the Governor of Michigan would most certainly benefit SA Chambers effort to develop and promote his private business. SA Chambers was clearly using his role as an FBI agent to promote Exeintel, LLC and a jury should be permitted to decide if his unauthorized outside business interest impacted the investigation in this case.

      This Court acknowledged in its Opinion and Order that the documentation provided by the Defendants revealed that SA Chambers had a motive and desire to grow and expand Exeintel, LLC and to leave the FBI for a career at his private security consulting company. See ECF 439 Order 2/2/22 P25.  Adam Fox contends SA Chambers did in fact harbor this desire and that his personal ambition affected his judgment during this investigation. Specifically, that SA Chambers continued to pursue the investigation after there were clear indications that there was not a credible threat to the Governor Whitmer's safety.  The suggestion that SA Chambers personal ambition caused him to continue to pursue the indictment of these Defendants when the matter should have been abandoned is not time consuming or complex to present to a Jury. It is simple and it is plausible.  In fact, it is more plausible than the argument that a homeless man living in the basement of a vacuum repair shop without a working toilet was the leader of a domestic terrorist cell with a "kill sqad" at his command preparing to storm the home of a sitting governor. Adam Fox should be afforded some fraction of the latitude that the Government has when presenting the case against him. This evidence may have made a dispositive difference to the first Jury that deliberated without being able to reach a verdict on the two counts leveled against Adam Fox.

# **LAW**

Defendant Adam Fox, as an accused defendant in a United States courtroom, has the right to present a full defense, and the right to cross examine and confront witnesses. SA Chambers is the primary architect of the case against Adam Fox. Fox should be permitted to present evidence that SA Chambers judgment was affected by his personal ambitions. Adam Fox has a fundamental right to cross examine SA Chambers and to expose this motive, the ownership of Exeintel and the desire to develop it. In *Davis v. Alaska*, 415 U.S. 308 (1974) the Supreme Court held that the undue limitation of a defendant's right to cross-examine a witness was a violation of the Sixth Amendment.

> The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured for defendants in state as well as federal criminal proceedings under *Pointer* v. *Texas*, 380 U.S. 400 (1965). Confrontation means more than being allowed to confront the witness physically. "Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination. (Id at 315)
>
> Petitioner was thus denied the right of effective cross-examination which "'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it. (Id at 318)

While this Court clearly has the authority to limit and curtail the evidence that Adam Fox may present at this second trial, that curtailment should not occur at the expense of his Sixth Amendment right to confrontation. Prior to the first trial, this Court identified delay and distraction to be the factors that outweighed the value of presenting information on SA Chambers ownership of *Exeintel*, and for the same reasons precluded other lines of inquiry against two other involved FBI agents. Defendant seeks to present very specific facts and the facts relate directly to a primary figure involved in the investigation and indictments in this case. The Sixth Circuit in *Boggs v.*

*Collins*, 226 F.3d 728, 2000 (6th Cir.) held that a particular attack directed at revealing a possible motive that is related directly to a personality in the case at hand is, *in particular*, part of the constitutionally protected right of cross-examination.

> In particular, the Davis Court distinguished between a "general attack" on the credibility of a witness--in which the cross-examiner "intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony"--and **a more particular attack on credibility "directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand**." 415 U.S. at 316. The Court, concluding that "the partiality of a witness . . . is always relevant as discrediting the witness and affecting the weight of the testimony," found this latter type of attack to be part of the constitutionally protected right of cross-examination. (Id. at 736-737a)

Defendant Adam Fox is seeking to present this limited and specific evidence to show that SA Chambers solely owned an internet security company and that he harbored personal ambitions that affected his judgment when pursuing this case. Judgment that caused him to continue to pursue the matter when the evidence was indicating that there was not a realistic or credible threat to the Governor's safety. Again, this suggestion is not any farther fetched than the argument that Adam Fox had assembled and trained a kill squad that was prepared to kidnap Michigan's Governor because of their unwavering devotion to constitutional rights.

The information Adam Fox is seeking to present is not complex, time consuming to present, nor is it difficult for a jury to understand. The Court should not place the limited potential of delay or distraction over Adam Fox's fundamental constitutional right to confrontation under the Sixth Amendment. Fox's right to confrontation should outweigh the other concerns particularly given the gravity of the charges brought against him and the potential for a substantial term of incarceration in the event of a guilty verdict in this second trial.

Wherefore, Defendant Adam Fox requests this Court to modify the February 2, 2022, pretrial order and permit Adam Fox to raise SA Chambers ownership of *Exeintel*, LLC and to argue that

this ownership and his personal ambition to develop the business affected SA Chambers judgment during the investigation and indictment of these defendants.

Respectfully submitted,

Date: July 12, 2022.                    By: /s/ Christopher M. Gibbons
                                        Christopher M. Gibbons
                                        Attorney for Defendant Adam Fox