IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

THE UNITED STATES OF AMERICA,

      Plaintiff,      Case No 1:20-CR-183-RJJ

V                 HON. ROBERT J. JONKER

ADAM FOX,

      Defendant.

DEFENDANT ADAM DEAN FOX'S
BRIEF IN SUPPORT OF MOTION IN LIMINE TO ALLOW THE ADMISSION OF
CHS DAN'S OUT OF COURT STATEMENTS
PURSUANT TO FRE 801(d)(2)(d).

Now Comes Defendant Adam Fox, by and through Counsel, Christopher M. Gibbons of the Law Offices of Gibbons & Boer, and in support of his motion for the admission of confidential informant CHS Dan's statements, states as follows.

FACTS

In October of 2020 Adam Fox, Barry Croft, Daniel Harris, and Brandon Caserta were indicted for allegedly plotting to kidnap the Governor of Michigan. On December 29, 2021, the Defendant's collectively filed a pre-trial motion seeking the admission of various recorded and written statements including statements made by confidential human sources. See ECF 383 and 383-1. On February 2, 2022, the Court issued a written opinion limiting the use of any of the

statements of a CHS to statements that were "directly authorized and closely supervised by government agents." See ECF 439 Order 2/2/22 P19.

Later in February the Defendants were provided with *Jencks* materials that included the complete record of text messages exchanged between CHS Dan and Special Agent Jayson Chambers from March 16, 2020, until October 8, 2020. During that time CHS Dan and SA Chambers exchanged 3236 massages. A complete record of these messages had not been provided prior to the *Jencks* disclosure.

During the Jury Trial Adam Fox was not permitted to use, or admit into evidence, any of the statements made by CHS Dan to Adam Fox or anyone else pursuant to the pre-trial order.

Testimony elicited at Trial and the text messages between SA Chambers and CHS Dan show that all of the communications between CHS Dan and Adam Fox were, in fact, directly authorized and closely supervised by SA Chambers. The contact between CHS Dan and Adam Fox was directly authorized by SA Chambers. CHS Dan reported to SA Chambers via text message on June 17, 2020 that he had made contact with Adam Fox:

"I got sat afternoon off gonna push up on Facebook to Adam.

Everything is a go for sat. 415 Vac shack".

(Saturday was June 20, 2020, the date of the infamous "Vac Shack" meeting.) SA Chambers approved the activity by responding to CHS Dan:

"Boom."[1]

"You are the man"

CHS Dan responded:

---

[1] In context, this response by SA Chambers is clearly positive and ratifying of CHS Dan's efforts.

2

"If you guys need it to happen I'll make it happen." (Exhibit A)

Based on this close supervision, control, and approval, CHS Dan's contact with Adam Fox was clearly directly authorized by SA Jayson Chambers.

Thereafter, all of CHS Dan's text conversations, in-person contact, and his discussions with Adam Fox on the phone were closely supervised by SA Chambers. In addition, SA Impola also participated in the monitoring and review of these communications. All the in person contact between CHS Dan and Adam Fox was directly monitored over a live audio feed in real time. The text messages were reviewed as they were occurring. CHS Dan testified that he provided password access to the chat accounts, so SA Chambers was able to login to the accounts look at all the messages as they were occurring. (Transcript VI, ECF 624, Page ID 6048 4/12/2022.) SA Chambers regularly confirmed that he was monitoring Dan's text communications with Adam Fox as they occurred, for example on August 17, 2020, he texted:

"I am tracking on the conversation with Adam"

SA Chambers, a few minutes later gave CHS Dan the specific direction:

"Respond to his last"

"that he is the Boss". (Exhibit B)

CHS Dan, in turn, then text messaged Adam Fox:

"You're the boss, you're [sic] vision we can get the shit locked down" (Exhibit C)

SA Chambers often texted the word "tracking" to let CHS Dan know was monitoring the text messages. SA Chambers sent 83 texts which contained the word "tracking" from March to October. SA Chambers reviewed and supervised CHS Dans communications with Adam Fox in real time and created direction for CHS Dan daily. The text messages show that CHS Dan reported directly to SA Chambers by text, in person, or on the phone daily, at times multiple times a day.

3

CHS Dan's recorded calls and meetings with Adam Fox were reviewed and approved by SA Chambers throughout the investigation, often monitored in real time as they occurred, with Chambers listening contemporaneously to the personal interactions. The text messages reflect CHS Dan regularly confirming that the audio feed is working, and that SA Chambers was monitoring. On August 9, 2020, in a recorded call SA Chambers is clearly present in the room with Dan and is audibly giving him instructions. At trial CHS Dan confirmed that the FBI was monitoring his interactions with Adam Fox at his July 27, 2020, meeting with Fox:

> Q Did you advise Jayson Chambers when you left the Vac Shack that you had suggested these crimes to Adam Fox?
>
> A They could hear it all live feed
>
> Q They could hear it all live feed?
>
> A Yes.

See ECF 624 Page ID 6289 4/12/2022. CHS Dan testified that his drive with Adam Fox on August 29, 2020, to Elk Rapids was also on a live feed. See ECF 624 Page ID 6332 4/12/2022.

Not only did SA Chambers monitor the contact between CHS Dan and Adam Fox, but he also frequently expressed his approval to CHS Dan. The text messages and CHS Dan's testimony make clear that CHS Dan's communications were, at all times, authorized, supervised, monitored, and approved by SA Chambers through the entirety of the investigation from March to October 2020.

## LEGAL ARGUMENT

The statements of CHS Dan meet the standards imposed by the Court's Pretrial Order, *Brahman,* and *Reed* and should be admitted pursuant to FRE 801(d)(2)(D).

This Court issued a pre-trial order limiting the use of CHS to statements to those that were "directly authorized and closely supervised by government agents." See ECF 439 Order 2/2/22

4

P19. The order correctly states that the Sixth Circuit allows for the admission of CHS statements pursuant of FRE 801(d)(2)(D). The Court also noted that informants are often "implicated in criminal ventures and labor under a mix of motives that is hard to unravel" and that they often more closely resemble "independent contractors". ECF 439 Order 2/2/22 P19.  However, this is not the case with respect to CHS Dan. CHS Dan does not have any criminal history and he was not an otherwise criminally implicated cooperator or co-conspirator.  CHS Dan testified he was simply a concerned citizen.  The FBI paid CHS Dan in cash for his expenses and time, including purchasing a phone, a smart watch, and a $4307.00 laptop computer. CHS Dan was paid over $54,000.00[2] from March 2020 to October 2020. The messages between CHS Dan and SA Chambers show that Dan viewed his position as work for the FBI. On June 27, 2020, (the day before the FTX in Munith, MI) CHS Dan texted:

> "Awesome. Building my resume". (Exhibit D)

SA Chambers gave CHS Dan instructions and direction daily for example on August 27, 2020, texting:

> "Try to get as many as possible to go with for Saturday"

On August 30, 2020, the day after the drive through Elk Lake instructing CHS Dan:

> "Have him post his pictures."

On September 3, 2020, SA Chambers texted to CHS Dan:

> "Lets start talking details of the night op with Adam" (Exhibit E)

CHS Dan does not fall into the class of informants laboring under mixed motives that were of concern to this Court.   CHS Dan's communications with Adam Fox were directly authorized and monitored every day by SA Chambers. As a result, CHS Dan's text messages and statements to

---

[2] It is unknown how much CHS Dan was paid for or following his trial testimony.

Adam Fox were, *in fact,* directly authorized and closely supervised by government agents. Relevant statements made by CHS Dan to Adam Fox in text messages, in-person, and during phone conversations should be admitted as the statement of a party opponent, because the communications were directly authorized and closely supervised by SA Chambers.

The Sixth Circuit considers statements made by a CHS during the scope of their agency to be admissible under FRE 801(d)(2)(D). The Sixth Circuit held that conversations occurring between a CHS and a Defendant that were aimed at establishing a trusting relationship were within the scope of the CHS agency and were admissible under FRE 801(d)(2)(D).

> Whatever Cordle said during these conversations was in furtherance of that goal, and thus within the scope of the existing agency.
> *United States v. Branham*, 97 F.3d 835, 851 (6th Cir.)

Three years later the Sixth Circuit again affirmed that it construes what is within the scope of an informant's "agency" broadly stating:

> Sumpter and Maddox were acting as agents of the government, and this court has interpreted "a matter within the scope of the agency" broadly enough that "statements" of Sumpter or Maddox would be admissible against the government.
> *United States v. Reed*, 167 F.3d 984, 989 (6th Cir.)

In addition to the criteria set by this Court that admissible statements be directly authorized and closely supervised by a government agent, CHS Dan's statements to Adam Fox were monitored in real time by SA Chambers who in turn regularly expressed his approval to CHS Dan for example:

"Good Job" (6/23/20)

"You did a great job with both the leadership and adam today" (6/27/20)

"Great Answer" (8/17/20)

(Exhibit F) CHS Dan was clearly acting within his agency relationship with the Government when he was texting, meeting, and calling Adam Fox during this investigation. CHS Dan was instructed

to meet Adam Fox and others and he was specifically tasked to involve Fox with other targets. The contemporaneous tracking and monitoring of his in-person and online communications coupled with the regular accolades of approval from SA Chambers as he accomplished his tasking create a clear factual and legal basis for the admission of CHS Dan's texts and recorded statements to Adam Fox under FRE 801(d)(2)(D).

In addition to all the considerations above, from a policy perspective, it would be very dangerous for the Court to construct a model where the Government can act without accountability, using civilian "Informants" who are unconstrained by the laws and regulations which would apply to a Federal Law Enforcement Agent. The FBI should not be permitted to hire civilians to do what they cannot do and then be permitted to exclude it from scrutiny in a courtroom by calling it "hearsay". The Government should not to be able to hide the work of its informants behind the rules of evidence, whether that work be "good" or "bad". The public and the charged defendant have an interest in transparency.

Wherefore, Adam Fox requests that this Court allow the introduction of CHS Dan's relevant recorded statements and text messages to Adam Fox under FRE 801(d)(2)(D). CHS Dan's relevant text messages to Fox, his recorded in person statements, and statements made on recorded calls were directly authorized and closely supervised by SA Jayson Chambers and the statements are otherwise admissible under established Sixth Circuit law.

Date: July 12, 2020.                           Respectfully submitted,
             By: /s/ Christopher M. Gibbons
               Christopher M. Gibbons
               Attorney for Defendant Adam Fox