UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ADAM DEAN FOX, and BARRY
GORDON CROFT, JR.,

    Defendants.

_____/

CASE No. 1:20-CR-183

HON. ROBERT J. JONKER

## ORDER

Mark Totten became the United States Attorney for the Western District of Michigan on May 5, 2022. Before that he was Chief Legal Counsel for the Governor of Michigan, the target of the alleged kidnapping conspiracy in this case. Soon after being sworn in as the United States Attorney, Mr. Totten recused himself from the case. Now, Defendants Adam Fox and Barry Croft seek to disqualify the entire United States Attorney's Office for the Western District of Michigan based on that. (ECF No. 656.) Because there is no authority for such an order, the Court **DENIES** the motion.

A court can disqualify an entire United States Attorney's office under limited circumstances that are "rarely, if ever, present." *Cope v. United States*, 272 F. App'x 445, 449 (6th Cir. 2008). Disqualification of the entire office "is a drastic measure," and "the proper remedy is to disqualify that individual from the case, not all of the attorneys in the district." *Id.* at 449-450; *see also United States v. Caggiano*, 660 F.2d 184, 190-91 (6th Cir. 1981) (reversing the district court's decision to disqualify an entire United States Attorney's office where an Assistant United

States Attorney had represented defendant during a previous case, on the same charges, that ended in a hung jury.).  "[D]isqualifying an entire United States Attorney's office is almost always reversible error, regardless of the underlying merits of the case."  *United States v. Bolden*, 353 F.3d 870, 876 (10th Cir. 2003).  In fact, "every circuit court that has considered the disqualification of an entire United States Attorney's office has reversed the disqualification."  *Id.* at 879.  Defendants cite no authority to the contrary.

Defendants do not suggest there is any actual prejudice or unfairness in having people other than United States Attorney Totten continue with the case.  Instead, they rely on imputed disqualification.  Defendants note that 28 U.S.C. § 530B provides that "[a]n Attorney for the Government shall be subject to State laws and rules, and local Federal court rules . . . to the same extent and in the same manner as other attorneys in that State."  *See also* 28 C.F.R. § 77.1(b) (DOJ rule that its attorneys must "comply with state and local federal court rules of professional responsibility . . . .").  Defendants then cite Michigan Rule of Professional Conduct 1.10, which states that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9(a), or 2.2."  Defendants therefore conclude that the entire office must be disqualified here.

Defendants are correct that the rules generally apply to DOJ lawyers.  And they are also correct that these rules have an imputed disqualification provision.  But Defendants are wrong that the rule applies here.  To the contrary, the Comment to Rule 1.10 states that where a lawyer represents the government after serving private clients, Rule 1.11 governs.  Rule 1.11(c) prohibits attorneys from serving as a public officer in matters that the attorney "participated personally and substantially while in private practice" without the client's consent.  And, the Comment goes on

expressly to state that this "does not disqualify other lawyers in the agency with which the lawyer in question has become associated."

Furthermore, the Sixth Circuit has noted that "[t]here is, of course, quite a difference in the relationship between law partners and associates in private law firms and lawyers representing the government." *Caggiano*, 660 F.2d at 190. "While a private attorney's conflict of interest may require disqualification of that attorney's law firm in certain cases, such an approach is not favored when it comes to the office of the United States Attorney." *United States v. Hasarafally*, 529 F.3d 125, 128 (2d Cir.2008) (internal quotation omitted). Moreover, "if the disqualification of one government attorney could serve as the predicate for the disqualification of the entire United States Attorney's Office, the administration of justice would be irreparably damaged." *Grand Jury Subpoena of Ford v. United States*, 756 F.2d 249, 254 (2d Cir. 1985). As such, federal courts have concluded that state model rules do not impute disqualification of one lawyer in a governmental office to all lawyers within the office. *See*, *e.g.*, *In re Grand Jury Investigation of Targets*, 918 F. Supp. 1374, 1378 (S.D. Cal. 1996); *Euell v. Rosemeyer*, 153 F.R.D. 576, 578–79 (W.D. Pa. 1993); *U.S. v. Huff*, No. 3:00CR-123-H, 2002 WL 1856910, at *3-4 (W.D. Ky. Aug. 13, 2002).

There is no evidence here of any prejudice to Defendants specifically, or to the administration of justice generally, in allowing others in the United States Attorney's Office to continue with the case. At most, Defendants have shown that Mr. Totten himself previously worked for the target of the alleged kidnapping plot. Even assuming that prevents him from working on or supervising the case, he has cured that risk by recusing himself. No further disqualification is necessary or appropriate. *See Caggiano*, 660 F.2d at 191 (holding office-wide disqualification is unnecessary because there is no prejudice); *United States v. Basciano*, 763 F. Supp. 2d 303, 314 (E.D.N.Y. 2011) (refusing to disqualify an entire U.S. Attorney's Office

because there was no assertion of bad faith or unethical conduct), *aff'd*, 634 F. App'x 832 (2d Cir. 2015).  Disqualifying the entire Office would be reversible error here, as it has been in every other federal appellate case to address the issue.

  **ACCORDINGLY,** Defendants' motion (ECF No. 656) is **DENIED.**


Dated:  July 15, 2022        /s/ Robert J. Jonker
                 ROBERT J. JONKER
                 CHIEF UNITED STATES DISTRICT JUDGE