UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ADAM DEAN FOX, et al.,

    Defendants.

_____/

CASE No. 1:20-CR-183

HON. ROBERT J. JONKER

## RESTRICTED ACCESS ORDER

### INTRODUCTION

This order supplements the record regarding the issue the Court addressed in an earlier Order (ECF No. 709). For the reasons that follow, the Court is satisfied on the present record that the jury as it is presently constituted can fairly and impartially decide this case.

### BACKGROUND

Jury selection in this case began on August 9, 2022. The Court conducted an extensive voir dire of all potential jurors called into the jury box, and counsel for the Government, Defendant Fox, and Defendant Croft all had a chance to question the jury array as well. At the end of the day, a jury consisting of twelve jurors and six alternates was sworn. During voir dire, all jurors indicated, under oath, that they could fairly and impartially decide this case, and put aside any preconceived biases, political or otherwise. Before recessing for the day, the Court gave the general admonitions it gives in all jury trials, including an instruction not to discuss the case with others, including other jurors.

The parties presented opening statements and the government began its proofs on August 10, 2022. Later that evening, Attorney Blanchard, counsel for Defendant Croft, alerted court staff to potential misconduct on the part of one of the jurors in this case. No other information was given at that time. But Attorney Blanchard noted that the Court may want to deal with the issue in a non-public way to limit the risk of publicity that could affect the fairness of the process as it unfolds.

The next day, August 11, 2022, the Court held an in chambers hearing with counsel present before the trial day began consistent with Attorney Blanchard's point about the sensitivity of the matter and consistent with the Court's past practice in similar matters. There Attorney Blanchard disclosed information that had been received by his office from a coworker of one Juror[1] the previous evening. According to the report as relayed by Attorney Blanchard, sometime before trial in this case began the subject Juror told a coworker about the summons for federal juror duty, and about the prospective juror's hope of being selected for jury duty and, more specifically, for the then-upcoming kidnapping trial involving Governor Whitmer. According to the report, the subject Juror expressed a strong opinion about the Defendants' guilt and indicated that if chosen, he or she would make sure that the Defendants were found guilty. The caller corroborated some of the known information about the subject Juror and gave Attorney Blanchard's office his own name and phone number. Attorney Blanchard disclosed this information to the Court and other counsel. The Court interpreted the report at the time as coming from an individual reporting a direct, firsthand conversation with the subject Juror.

After receiving input from the parties, the Court proceeded with the normal trial day on August 11. All parties and sitting jurors were present, and nothing in Attorney Blanchard's

---

[1] The Court and the parties know what particular Juror is the subject of the report. It is not necessary for purposes of this Order to identify the individual by name or number.

disclosure suggested any damage to the actual jury, which had been instructed not to discuss the case with each other.  There was also need to conduct some additional factual research because the subject Juror, like all the others, had sworn to do the job faithfully and had affirmed under oath an ability to be fair regardless of any views formed before coming into the box.  Before presenting a sworn and sitting juror with what amounts to a claim of false oath-taking, drilling down concrete facts is essential.  Accordingly, the Court's jury clerk followed up with the individual who had called Attorney Blanchard, using the name and number provided by Attorney Blanchard, while the case proceeded in the ordinary course.  It would have needlessly wasted the time of the jury, the witnesses, and the parties to delay trial under the circumstances.

The information received by the jury clerk included some similarities to that relayed by Attorney Blanchard, but the information was different in several material respects.  Notably, the jury clerk learned the reporting coworker had not directly spoken with the subject Juror or heard anything directly from the Juror.  Rather the information the reporting coworker provided had come secondhand through another coworker of both the reporting individual and the subject Juror.  The reporting coworker had no direct contact with the subject Juror about the Juror's feelings about this case, jury service, or anything about the instant matter.  He did not even know for sure if the subject Juror was serving on this case.  The caller was simply reporting a secondhand report from someone else about what that other person reportedly heard from the subject Juror.  Moreover, the jury clerk was unable to confirm the report with the other coworker because that coworker had reportedly expressed a desire not to speak or otherwise be identified, and the person who did call refused to identify the person.  The jury clerk did confirm that the entirety of the reported information involved a time before jury selection in this case began.

The Court disclosed the jury clerk's report to counsel both for the defense and the government at the conclusion of the trial day on August 11 during an on the record hearing in chambers. The Court expressed an intention to proceed with a conversation with the subject Juror in the same manner as the Court had proceeded when a similar issue arose during the first trial in this matter: the Court would speak with the subject Juror at the conclusion of the trial day about the report, and later give the parties a chance to review an unofficial transcript of the conversation. The Court would consult with counsel further if the interview suggested the need for additional follow up. The Government agreed with this approach but Attorney Blanchard, later joined with Attorney Gibbons, objected to not being present during the conversation with the subject Juror. Attorney Blanchard also expressed a concern that the subject Juror was somehow manipulating the jury during trial to ensure an allegedly desired outcome. Attorney Blanchard asked that the entirety of the jury be questioned on the matter with the parties present, or that the Court declare a mistrial. The Court overruled Attorney Blanchard's objections for the reasons stated on the record, and affirmed its intention to follow the approach it outlined.

That evening, Attorney Blanchard filed a brief entitled "Brief Regarding Possible Juror Issue" which is best characterized as an objection to the procedure the Court outlined at the end of the trial day. (ECF No. 707).[2] In it, Defendant Croft maintained that the defense was entitled to an evidentiary hearing in the parties' presence. The approach the Court outlined, the defense further insisted, would constitute both a constitutional violation, and a violation of Rule 43.

Contrary to Attorney Blanchard's recognition of the sensitivity of the matter in his initial disclosure; how a similar matter had been handled in an earlier trial in this case involving the same

---

[2] The brief recites that the Court learned of the issue on "June 11," but that actual date was August 11.

counsel; and how all parties had proceeded during the trial day on August 11, the brief was filed on the public docket.[3] Of course, the public filing created the risk of distorted publicity potentially affecting the fairness of the proceeding, which is exactly why the Court had expected non-public proceedings to address the matter until the jury is discharged. The Court first learned of the public filing in the early hours of August 12, 2022. At 6:14 a.m., the Court entered an Order placing Attorney Blanchard's brief under restricted access.

The Court proceeded with the trial day on August 12, 2022, and then interviewed the subject Juror in chambers with only court personnel present. This included the Court reporter who transcribed the conversation.[4]

## LEGAL STANDARDS

"The fair trial right secured by the Sixth Amendment guarantees, in pertinent part, that an accused is entitled to 'trial[ ] by an impartial jury.'" *English v. Berghuis*, 900 F.3d 804, 813 (6th Cir. 2013) (quoting U.S. Const. amend. VI). An impartial jury is one that is "capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). "It is well established that a district court may remove a juror for instances of misconduct,

---

[3] Indeed, all the parties have been concerned throughout this case about how publicity might affect fairness, to the point the defense sought a change of venue. This was front and center on juror issues too, in the first trial. Thus protecting the jury process, and shielding them from any external influence, has been central to all involved from the beginning of the case. It is also why the Court and counsel have been using only juror numbers, rather than names, in public proceedings.

[4] An official copy of the Court's interview with the subject Juror will not be available until the conclusion of trial. In the meantime, counsel for the government and counsel for both defendants may make arrangements with chambers staff to view an unofficial rough transcript of the interview in chambers. At this stage, counsel will simply be permitted to review the document in chambers, and will not be permitted to make or take a copy with them outside chambers, reproduce the rough transcript in their own hand, or take any notes while reviewing it in chambers. It is simply an opportunity for counsel to receive the same information available to the Court regarding the subject Juror. As the parties will see, the Court did not disclose to the Juror that the information originally came through any particular party or attorney in the case.

including bias, an inability to follow instructions, or a lack of candor under oath." *United States v. Ozomaro*, ___ F.4th ___, 2022 WL 3274122, at *4 (6th Cir. Aug. 11, 2022) (citing *Wofford v. Woods*, 969 F.3d 685, 701-05 (6th Cir. 2020). "The legal framework for a claim of juror bias such as the one asserted here comes from [*McDonough Power Equipment, Inc. v. Greenwood* 464 U.S. 548 (1984)]." *Id.* at 813; *see also United States v. Fulks*, 454 F.3d 410, 431 (4th Cir. 2006) (applying *McDonough* to criminal trials). "Under *McDonough*, for a prospective juror's nondisclosure to warrant a new trial, a defendant must show that (1) the juror 'failed to answer honestly a material question on *voir dire*,' and (2) 'a correct response would have provided a valid basis for a challenge for cause.'" *English*, 900 F.3d at 813 (quoting *McDonough*, 464 U.S. at 556). Under Rule 24(c)(1) of the Federal Rules of Criminal Procedure, the Court may "replace any jurors who are unable to perform or who are disqualified from performing their duties." FED. R. CRIM. P. 24(c)(1).

## DISCUSSION

### 1. Objections to Court's Approach

Counsel's objections to the Court's approach outlined after the trial day yesterday are unpersuasive. "[T]he scope of investigation into a juror's ability to remain impartial is committed to the sound discretion of the district court." *United States v. Ozomaro*, ___ F.4th ___, 2022 WL 3274122, at *3 (6th Cir. Aug. 11, 2022). There is no set mechanism here. "All that is needed [is] sufficient information to make an informed decision." *Id.* (quoting *United States v. Jones*, 747 F. App'x 348 (6th Cir. 2018)). Numerous cases have emphasized the broad range of discretion district courts with respect to these delicate matters. *See, e.g., id.* at 2022 WL 3274122, at *3; *United States v. Bart*, 888 F.3d 374, 379 (8th Cir. 2018); *United States v. Boylan*, 898 F.2d 230, 258 (1st Cir. 1990) (noting the "kaleidoscopic variety of possible problems counsels in favor of

flexibility."); *United States v. Caldwell*, 776 F.2d 989, 996-999 (11th Cir. 1985) (noting discretion where trial court questioned juror about anonymous report in private); *United States v. Copeland*, 51 F.3d 611, 613 (6th Cir. 1995) ("The trial judge is in the best position to determine the nature of the alleged jury misconduct . . . [and] is also in the best position to determine appropriate remedies[.]").  The approach the Court outlined to the parties best addresses the various concerns inherent in these types of situations. The approach is as follows: 1) continuing with trial as investigation proceeds; 2) a transcribed, private interview with the juror rather than full hearing with counsel; 3) no interviews of other jurors unless and until an evidentiary basis supports the need; and (4) ensuring a full record on a non-public basis until the jury is discharged.

This process allows gathering of the necessary information while minimizing disruption and risk to the overall process.  It ensures that the Court, and not any party, has contact with a sitting juror as the case is progressing, minimizing the risk that the inquiry itself will affect the juror or sour the juror on one side or the other.  The Court was careful not to indicate how the report of alleged misconduct reached the Court to ensure the subject Juror had no reason to blame one party over the other for the situation.  The process also ensured an incremental step process with minimal impact for the affected juror if the investigation turned up insufficient reason to believe the Juror had been or was being unfaithful to the oaths taken.

Attorney Blanchard's insistence that the parties, or at least the defense, needed to be present during the Court's questioning is not convincing. "[I]t is clear there is no constitutional right for a defendant to be present at a conference in chambers concerning dismissal of a juror." *United States v. Cornett*, 195 F.3d 776, 781 n.4 (5th Cir. 1999) (citing *United States v. Provenzano*, 620 F.2d 997, 997 (3d Cir. 1980)).  Moreover, as the Court stated earlier, "there is no constitutional right to be present at every interaction between the judge and a juror. *See Rushen v. Spain*, 464 U.S. 114,

125 (1983) (Stevens, J., concurring) ("I think it quite clear that the mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right."); *see also United States v. Gagnon*, 470 U.S. 522, 527 (1985) (finding no Fifth Amendment violation during misconduct conference); *United States v. Watchmaker*, 761 F.2d 1459, 1466 (11th Cir.), *reh'g denied*, 766 F.2d 1493 (1985) (no Fifth Amendment violation when judge met with juror and later provided transcripts to parties); *United States v. Yonn*, 702 F.2d 1341, 1345-46 (11th Cir. 1983) (use of *in camera* interviews did not prejudice defendants); *United States v. Patterson*, 587 F. App'x 878, 884-85 (6th Cir. 2014) (ex parte conversation with court and jurors did not amount to constitutional violation); *United States v. Caldwell*, 776 F.2d 989, 997 (11th Cir. 1985) (finding "some benefit" in the absence attorneys during court's investigation of juror misconduct and noting the "district court's procedure of reading the transcripts and soliciting suggestions as to the manner of proceeding provided all of the opportunity for participation that the appellant could have had short of direct questioning of the juror by his counsel."); *see also United States v. Peterson*, 385 F.3d 127, 138 (2d Cir. 2004) ("In sum, Judge Larimer's private on the record meeting with juror number three, followed by reading and discussing the transcript of that meeting with defense counsel, was neither a due process violation nor a violation of Federal Rule of Criminal Procedure 43;[5] it was an efficient way to assess the extent of any juror misconduct and formulate an appropriate response."). There was no error in the Court's private interview of the subject Juror.

---

[5] The Court agrees with the Second Circuit's conclusion that Rule 43 does not cover the kind of in chambers hearing at issue here, when the issue arises post-empanelment and involves potential pre-verdict juror misconduct. At a minimum, there is no clear error as long as there is no due process violation. *United States v. Caldwell*, 776 F.2d 989, 996-997 (1985).

Finally, to the extent Attorney Blanchard requests the Court individually question other jurors on whether there has been any taint based on the subject Juror's presence on the jury, the Court declines to do so. There has been no information at all to suggest that the subject Juror is somehow tainting the jury process. There is nothing in the report, either as relayed by Attorney Blanchard or to the jury clerk, that addresses the issue at all. Indeed, the observation of both the Court and court staff during the brief occasions before ushering the jury into the courtroom is that the subject Juror sits apart from the rest of the jury in the jury room and immediate adjoining hallway, which is not what one would expect of someone intent on tainting the jury. And as other courts have observed in investigating potential juror misconduct "[i]n this endeavor, sometimes less is more." *United States v. Cox*, 324 F.3d 77, 88 (2d Cir. 2003). Asking every juror whether a particular juror in the box was breaking the rules—in the absence of any information at all suggesting that—would needlessly plant suspicion and create the risk of dissention, potentially making it impossible to continue with the group as empaneled.

For all these reasons, the objections contained in the brief (ECF No. 707) are overruled.

### 2. The Subject Juror's Impartiality

Applying *McDonough*, the Court is eminently satisfied that the present record does not provide a basis for removing the subject Juror for bias. "*McDonough* first 'requires a determination of whether the juror's answers [during voir dire] were honest.'" *United States v. Carpa*, 271 F.3d 962, 957 (11th Cir. 2001) (quoting *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1473 (11th Cir. 1992)). "Then, there must be a showing of bias that would disqualify the juror." *Id.* "A juror's dishonesty is a strong indication of bias." *Id.*

The record at present does not demonstrate dishonesty. During the interview, the Court squarely presented the report of the subject Juror's alleged statements. The Juror repeatedly and

9

consistently denied making any such statements. Based on the Court's observation of the Juror's demeanor and behavior, these responses were credible. They are also consistent with the Juror's statements during voir dire that the Juror could put aside any preconceived views and decide the case based just on the evidence and law presented—assurances the Juror repeated in chambers. The subject Juror's behavior during trial buttresses this conclusion. Interactions with other jurors, to the extent court personnel can observe it, evince no hushed whispers or other indicia of a desire to manipulate. And the Juror's behavior in the jury box is entirely inconsistent with someone who has a made a predetermined decision to find the defendants guilty. The Juror has consistently been attentive and engaged during both the government's presentations and each defendant's cross.[6]

---

[6] Indeed, the Juror has been engaged at times when other jurors have checked out of what, in the Court's view, has sometimes been needlessly long and repetitive lines of cross examination.

 Regarding the Rule 403 concerns of "undue delay, wasting time, or needlessly presenting cumulative evidence," the Court advised counsel that it would be considering over the weekend whether to impose time limits or other restrictions similar to those describe and imposed by Judge Bertelsman in *United States v. Reaves*, 636 F.Supp. 1575 (E.D. Ky. 1986). The Court highlighted, in particular, Judge Bertelsman's presumptive time limit on cross-examination limiting all crossing parties combined to the time used with the witness on direct exam. *Id.,* at 1581. The Court still thinks Judge Bertelsman's limit is a good rule of thumb, and one that actually tends to improve the impact a cross-examination. But the Court has decided not to impose it by Order—at least not yet—because defense counsel has recently observed and at least tacitly endorsed the underlying rationale in a public tweet:



Josh Blanchard (@joshuablanchard), TWITTER (Aug. 3, 2022, 6:09 PM), https://twitter.com/joshuablanchard/status/1554952545587568640?s=20&t=rM3sqSGmBlw4CSfvG-sivw. Yes, it's hard. But it can be done—and with powerful effect. The Court observes that similar principles apply to re-direct examinations.

The Juror has taken notes when defense counsel have made what were, in the Court's mind, especially good points, or broke new ground—and even when in the Court's view the points were not particularly strong.

Against these observations, the subject Juror's statements under oath during voir dire, and the Juror's responses during the in chambers interview, the Court has only the double hearsay report of an individual given to Attorney Blanchard, and the partially consistent report later given to the jury clerk. But the reporting individual did not hear any statements from the subject Juror and did not even know personally if the Juror was on the case. And the coworker who allegedly did hear the remarks is unidentified and unwilling to be identified or to speak with the Court's jury clerk. Nor would the reporting caller identify this person.

For these reasons, the Court is satisfied on the present record, after investigating the matter and conducting the analysis required of *McDonough*, that the subject Juror can remain in office and fairly and impartially decide this case, as the Juror promised to do. Accordingly, to the extent the defense has requested the Court dismiss the subject Juror and proceed with an alternate under Rule 24, the request is denied on the present record.

The Clerk shall file a copy of this Order on a restricted access basis, available for now only to the parties and the Court.

**IT IS SO ORDERED.**


Dated:   August 14, 2022            /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    UNITED STATES DISTRICT JUDGE