# EXHIBIT A

(REDACTED VERSION)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ADAM DEAN FOX and
BARRY GORDON CROFT JR.,

        Defendants.
_____/

No. 1:20-cr-183

Hon. Robert J. Jonker
United States District Judge

Filed Under Restricted Access

## GOVERNMENT'S RESPONSE TO
## DEFENDANTS' MOTION FOR NEW TRIAL

The government opposes the defendants' motion for a new trial, a remedy appropriate only where there has been a manifest miscarriage of justice. The defendants' claim of "juror misconduct" lacks credible evidence, and their claim that the Count handled it improperly is unsupported by authority. The defendants' claim that the Court was biased against them is likewise contrary to the facts. The Court criticized both sides whenever it perceived the party was using the jury's time inefficiently. Finally, the Court imposed a reasonable and isolated time limit on the defendants' cross-examination of one witness only after the defendants had repeatedly disregarded its warnings that their cross-examination was causing undue delay, wasting time, and resulting in needless presentation of cumulative evidence. The defendants have not met their burden of establishing good cause for a new trial.

FACTS

1. The jury trial in the above-captioned case commenced on August 9, 2022. On August 23, 2022, the jury convicted defendants Fox and Croft of all counts charged against them in the Superseding Indictment. (R. 728: Minutes of Jury Trial, Day 11, PageID.9039.)

2. On September 6, 2022, the defendants filed a motion for new trial, complaining of: (1) "juror misconduct," (2) judicial bias, and (3) a time limit imposed on the cross-examination of one of the government's witnesses. (R. 745: Motion for New Trial, PageID.9726.)

3. According to Croft's attorney, "Person #1" called him the night of August 10, 2022, said he was the co-worker of a sitting juror, and that the juror told him before voir dire that ▮ had prejudged the case. (R. 745: Def's Mot., PageID.9727.) The next morning the Court conferred with the parties in chambers and rejected Croft's attorney's demand to examine the juror. (R. 711: Restricted Access Order, PageID.8981.) Court staff contacted "Person #1", who admitted that he had not actually talked to the juror. (*Id.*) He said he was passing along what someone else told him but declined to name the supposed source. (*Id.*) In the affidavit the defendants attached to their motion, they note Person #1 painted the juror as "far left leaning," and "said that people are also being protected against actions by BLM or similar organizations if their names get out." (R. 745-1, PageID.9753.)

4. On August 12, the Court questioned the juror in chambers. (R. 735-1: Transcript of In-Chambers Proceedings, PageID.9058.) According to the transcript, the juror appeared puzzled when asked about Croft's allegations, and denied ▓ had said the things alleged by Person #1. (*Id.,* PageID.9060-61.) The juror reaffirmed ▓ sworn promise to decide the case impartially, based on the evidence. (*Id.,* PageID.9059-60.) All parties were provided the opportunity to review the rough transcript of the Court's questioning of the juror. Neither defendant asked this Court to make additional specific inquiries of the juror to follow-up on any of the juror's responses to the Court's questions.

5. During the trial, the defendants' cross-examinations and re-cross examinations of government witnesses routinely exceeded the length of the government's direct examinations by a substantial margin. The defendants admit the Court warned them as early as August 12, 2022—the third day of proofs—that it was contemplating imposing time limits if they did not focus. (R. 745: Def's Mot., PageID.9732.) The court handed out copies of a case approving such limits, and reiterated the warning several times over the next several days. The Court did not actually impose a time limit until near the end of the trial, and only as to one witness. (R. 720: Minutes of Jury Trial, Day 7, PageID.9009.)

6. The defendants cite newspaper articles reporting their own complaints of judicial bias as evidence of judicial bias. (R. 745: Def's Mot., PageID.9735.) But they also admit the Court's most pointed criticism of the defense was leveled outside the hearing of the jury. (*Id.,* PageID.9736.) The defendants omit that the Court also

admonished the prosecution for delay. First, when it proffered an exhibit on redirect that would have occasioned a brief pause for defense review and, second, when it asked to approach the bench to report that its next witness might invoke the Fifth Amendment while testifying.

LAW AND ARGUMENT

A court may grant a motion for new trial when the jury's verdict was against the manifest weight of the evidence, or the interests of justice require it. *United States v. Wiggins*, 784 F. App'x 919, 921 (6th Cir. 2019); Fed. R. Crim. P. 33(a). Such motions are disfavored and granted only in extraordinary circumstances. *United States v. Bowens*, 938 F.3d 790, 796 (6th Cir. 2019). The decision to grant or deny a motion for new trial rests within the district court's sound discretion. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994). The defendant bears the burden of proving that a new trial should be granted. *Id*.

1. **The defendants' "juror misconduct" claim lacks credible evidence.**

A party seeking a new trial based on a juror's alleged concealment of information "must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *United States v. Solorio*, 337 F.3d 580, 595 (6th Cir. 2003); *English v. Berghuis*, 900 F.3d 804, 813 (6th Cir. 2018) (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)).

The defendants assert the Court was required to hold a hearing under *Remmer v. United States*, 347 U.S. 227 (1954). *Remmer*, which addresses jury

4

tampering by outside parties, is inapposite. *See id.*, at 229. The defendants attempt to shoehorn their claim into the *Remmer* precedent by arguing the juror "had undisclosed preexisting knowledge about the parties and an intent to convict them before hearing the evidence, therefore it was an extraneous influence on the jury." (R. 745: Def's Mot., PageID.9737.) This is sophistry—preexisting thoughts jurors bring to voir dire are the *opposite* of outside influences.

The defendants also misleadingly cite *United States v. Rugiero*, 20 F.3d 1387, 1390 (6th Cir. 1994), for the proposition that "a *Remmer* hearing applies in cases of juror misconduct as well as extraneous influence." (R. 745: Def's. Mot., PageID.9737.) *Rugiero* does not say that. Contrary to the defendants' insinuation, *Rugiero* also involved extraneous influence. In that case, the defendant claimed a juror viewed television news coverage about the defendant's attorney contrary to the trial court's instruction. *Rugiero*, 20 F.3d at 1390.

The defendants' allegations are properly analyzed under *McDonough*, not *Remmer*. The evidence they present fails to satisfy *McDonough*'s first prong—that a juror answered a voir dire question untruthfully. In support of their claim, the defendants proffer only unsworn, second-hand accounts of conversations with a person who declined to be identified.

The defendants cite no persuasive authority for their assertion that the Court was required to hold a hearing, either. They cite *United States v. Bailey*, 2022 U.S. App. LEXIS 18441 (6th Cir. July 5, 2022) (unpublished), for the proposition that a trial court presented with evidence of juror bias must hold a hearing with all

5

interested parties permitted to participate. (R. 745: Def's Mot., PageID.9738.) They omit the following language that appears immediately after their selected quote:

> To warrant a *Remmer* hearing, a defendant must do more than simply raise the possibility of bias. Instead, he must make a colorable claim of extraneous influence that has a likelihood of affecting the verdict. For example, it must involve claims of intentional improper contacts or contacts that had the obvious potential for improperly influencing the jury. What's more, a party's request for a *Remmer* hearing must be supported by credible evidence.

*Bailey*, 2022 U.S. App. LEXIS 18441, at *23-24.

The defendants also cite *United States v. Herndon*, 156 F.3d 629, 637 (6th Cir. 1998), for the proposition that "a district court abuses its discretion when it denies a defendant a meaningful opportunity to prove actual bias." (R. 745: Def's Mot., PageID.9739.) Like *Remmer* and *Rugiero*, both *Bailey* and *Herndon* involved outside influences on a juror and are inapposite. The defendants would not be entitled to a hearing in any event, because they do not support their claim with credible evidence. Moreover, when the defendants sought to develop and prove actual bias outside of court, their efforts to do so failed to discover any reliable evidence of juror misconduct or bias. The defendants admit that "Person #3" refused to speak to defense counsel and Person #1 "will now say that he does not know anything." (*Id.*, PageID.9753 ¶ 16.)

Their assertion that a hearing would have allowed them to "develop the record" (PageID.9739) is in fact unsupported by their own affidavit. First, they reason that because Person #1 could identify the juror (by among other things, the shape of ▮ head) he should be considered a "reliable reporter" in other things. (R.

6

745: Def's Mot., PageID.9728; R. 745-1, PageID.9752 ¶ 11.) On the contrary, his professed familiarity with the juror (and allegedly, the juror's politics) raises the distinct possibility that the *caller* was the one attempting to interfere with the jury, for his own partisan ends. The danger that an anonymous tip may be motivated by an unseen agenda has long been recognized in the search warrant context. *See Spinelli v. United States*, 393 U.S. 410 (1969); *Illinois v. Gates*, 462 U.S. 213, 237-38 (1983). Independent corroboration is less important where the informant is willing to be named and is subject to criminal penalties for fabricating evidence. *United States v. Miller*, 314 F.3d 265 (6th Cir. 2002).

Here, the Court appropriately weighed the sworn voir dire statements of the juror—who was subject to criminal penalties—more heavily than second-hand reports of a person who refuses to repeat his claims in a public forum with consequences for lying. Moreover, neither "Person #1" nor "Person #3" are willing to go on the record under oath to allow the Court and the parties to determine whether any of the information initially provided to the Court by Croft's attorney was truthful or credible. (R. 745-1, PageID.9753 ¶ 16.) A proffer of the putative testimony of unwilling witnesses—who say they would retract their initial statements if put under oath—does not qualify as credible evidence.

Finally, the defendants say the Court erred by meeting with the juror ex parte, claiming Sixth Circuit precedent requires the presence of counsel at an in-chambers conference concerning the dismissal of a juror. (R. 745: Def's Mot., PageID.9742, citing *United States v. Brown*, 571 F.2d 980, 986 (6th Cir. 1978).) But

7

*Brown* did not actually address ex parte discussions with members of the jury.

*Brown,* 571 F.2d at 985. Once again, counsel omits important text from the authority cited. *Brown* says:

> The Constitution only grants to the criminal defendant the "right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." An in-chambers conference concerning the dismissal of a juror, while a stage of the trial within the meaning of Rule 43(a) and not excluded by Rule 43(b) or (c), is not a stage of the trial when the absence of the defendant would frustrate the fairness of the trial so long as counsel for the defendant is present.
>
> There was no violation of Rule 43(a) prejudicial to the substantial rights of the appellants. There is not the slightest doubt that appellants were not prejudiced by their absence from the conference, and because we have a record of the conference, any error under Rule 43(a) can be deemed harmless under Rule 52(a) of the Federal Rules of Criminal Procedure. Appellants' argument on this issue ignores the fact that counsel for appellants were present at the conference to protect appellants' rights. Defense counsel zealously defended the interests of their clients, and there is nothing before us to indicate that they were any less vigilant at this conference. There was simply no "reasonable possibility of prejudice" in the present case.

*Brown,* 571 F.2d at 986-87 (internal citations omitted).

In this case, as in *Brown*, defense counsel were present at the in-chambers conference, and the proceedings were recorded and transcribed. Additionally, defense counsel were provided the opportunity to review the transcript of the Court's ex parte questioning of the juror and, after being afforded that opportunity, neither defendant asked the Court to make additional specific inquiries of the juror. The only request counsel made was for the opportunity to be present for the Court's questioning (and perhaps ask their own follow-up questions of the juror). There was

8

no reasonable possibility of prejudice from Croft and Fox not personally attending the conference or this Court's questioning of the juror.

The defendants also proffer no authority for their proposition that a judge's ex parte communication with a juror is per se improper. The case they cite at PageID.9742 (*United States v. Gagnon*, 470 U.S. 522 (1985)) actually says: "In this case the presence of the four respondents and their four trial counsel at the *in camera* discussion was not required to ensure fundamental fairness … Respondents could have done nothing had they been at the conference, nor would they have gained anything by attending. Indeed, the presence of Gagnon and the other respondents, their four counsel, and the prosecutor could have been counterproductive." *Id.,* at 526-27. The notion that a "searching inquiry" by defense counsel might have compelled the juror to reverse ▬ sworn testimony is farfetched. (*Id.,* PageID.9740.) As in *Gagnon*, the Court reasonably concluded that subjecting the juror to an adversary interrogation might in fact create a bias where none previously existed.

### 2. The Defendants' claim of judicial bias is not grounded in fact.

The defendants cite a series of old cases for the unremarkable notion that judges should strive toward an atmosphere of impartiality, and their position gives their actions substantial weight with the jury. (R. 745: Def's Mot., PageID.9744-45, citing *Rocha v. Great American Ins. Co.*, 850 F.2d 1095, 1101 (6th Cir. 1988); *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir. 1979); *United States v. Hoker*, 483 F.2d 359, 368 (5th Cir. 1973); *United States v. Lanham*, 416 F.2d 1140, 1144 (5th

9

Cir. 1969).) The defendants fail to mention that *Hoker* and *Lanham* involved judges personally taking over the cross-examination of the defendant. *See, e.g., Lanham*, 416 F.2d at 1143. ("It seems clear that the trial judge determined in his own mind that Lanham was giving perjured testimony and set out to demonstrate this to the jury. In a word, he took over prosecution. This we may not permit.")

None of the cases the defendants cite involved a motion for a new trial, and their facts bear little resemblance to this case. In this case, the Court occasionally expressed impatience with the attorneys, but was equally direct in criticizing both parties whenever it perceived the party was not using the jury's time efficiently. Consistent with the Sixth Circuit's Pattern Criminal Instructions 1.02 and 8.09, the Court also appropriately cautioned the jury before its deliberations that nothing the Court said or did during the trial was meant to influence their decision on the facts in any way.

### 3. *The Court acted within its discretion when it imposed a reasonable time limit.*

The defendants cite *Dorsey v. Parke*, 872 F.2d 163 (6th Cir. 1989), for the proposition that any curtailment of the cross-examination of a "star" government witness must be "carefully scrutinized." (R. 745: Def's Mot., PageID.9746.) Once again, the defendants omit key text:

> "The importance of [cross-examination] to the truth-seeking process of the criminal trial is undeniable. But the Sixth Amendment has not been construed to give criminal defendants absolute control over cross-examination. Rather, courts have striven to distinguish between the core values of the confrontation right and more peripheral concerns which remain within the ambit of the trial judge's discretion. Beyond certain 'essentials of cross-examination,' the right to cross-examine is

10

subject to limits imposed by the trial court in the exercise of its discretion.

*Dorsey*, 872 F.2d at 166 (internal citations omitted).

The Rules of Evidence specifically provide that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to: (1) make the interrogation and presentation effective for the ascertainment of the truth; [and] (2) *avoid needless consumption of time. …*" Fed. R. Evid. 611(a) (emphasis added). Additionally, the Rules empower courts to exclude relevant evidence if its probative value is outweighed by a danger of "undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. While defense counsel must be afforded an ample opportunity to test the credibility and veracity of adverse witnesses, the district court must also be afforded wide discretion to restrict the scope of cross-examination. *United States v. Faymore*, 736 F.2d 328, 334 (6th Cir. 1984). The Confrontation Clause "does not guarantee the defense the right to conduct a completely unfettered examination," and the court may restrict repetitive and unintelligible questions. *Taylor v. Bradshaw*, No. 1:09CV1829, 2011 U.S. Dist. LEXIS 39482, at *69 (N.D. Ohio Mar. 14, 2011).

The defendants cite *Miller v. Genovese*, 994 F.3d 734, 742 (6th Cir. 2021), for the proposition that "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." (R. 745: Def's Mot., PageID.9746.) *Miller* did not involve time limits at all. In that case, the trial judge barred defense counsel from exploring whether the

11

witness' testimony was motivated by "fear or favor growing out of incarceration." *Miller*, 994 F.3d at 742-43.

Here, the Court placed no limit on the topics the defendants could cover during their cross-examination of cooperating co-conspirator Kaleb Franks. On the contrary, the Court gave the defendants the same amount of time used by the prosecution in its direct examination of Franks and encouraged them to prioritize subjects they had not already covered exhaustively with prior witnesses.

The defendants disingenuously claim the Court imposed the time limit on Franks' cross-examination with "virtually no notice," giving them no chance to prioritize. (R. 745: Def's Mot., PageID.9747.) But by their own admission, the Court warned them for four consecutive days that time limits might be imposed if they did not focus. The Court did not impose the noticed restriction until day seven of the trial, and even then imposed a time limit with regard to only one witness.

The defendants' claim that Franks was the government's "star" witness is equally overblown. His testimony was of course important, but he covered the same ground as Garbin, and the Court placed no time limit on the cross-examination of Garbin. Moreover, the Court imposed no limits on the cross-examination of CHS Dan or the undercover FBI agents, who were objectively more important witnesses. As counsel recalls, the Court permitted the defendants to cross-examine CHS Dan for approximately five hours. It was only after the defendants had repeatedly disregarded the Court's warnings that the Court imposed a reasonable time limit in

12

one instance and only for a witness that covered the same ground as an earlier witness.

CONCLUSION

New trials are reserved for cases in which a "manifest injustice" has been done such that an innocent person may have been convicted. *United States v. Genao*, 361 F. Supp. 2d 224, 226-27 (S.D.N.Y. 2005) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992). Croft and Fox have preserved their arguments for appeal, but have fallen far short of demonstrating the "manifest injustice" requisite for a new trial under Rule 33.

WHEREFORE, the government requests the Court deny the defendants' motion for new trial.

                                          Respectfully submitted,

                                          ANDREW BYERLY BIRGE
                                          Attorney for the United States,
                                          Acting under Authority Conferred by
                                          28 U.S.C. § 515

Dated:  September 19, 2022           /s/ Nils R. Kessler          
                                          NILS R. KESSLER
                                          CHRISTOPHER M. O'CONNOR
                                          Assistant United States Attorneys
                                          P.O. Box 208
                                          Grand Rapids, MI 49501-2404
                                          (616) 456-2404
                                          *nils.kessler@usdoj.gov*

CERTIFICATE OF COMPLIANCE

      Pursuant to LCrR 47.2(b)(ii), the undersigned certifies that this brief complies with the type-volume limitation and contains no more than 4,300 (Nondispositive) words as provided by LCrR 47.2(b). A word count was made using Office 365 and the brief contains 3,277 words.

      */s/ Nils R. Kessler*
      NILS R. KESSLER
      Assistant United States Attorney
      P.O. Box 208
      Grand Rapids, Michigan 49501-0208
      (616) 456-2404
      Nils.kessler@usdoj.gov